IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ABDULLAH WAZIR ZADRAN, *et al.*, | : |
| *Petitioners/Plaintiffs*, | : Civ. Case No. 05-02367 |
| v. | : ORAL ARGUMENT REQUESTED |
| GEORGE W. BUSH, *et al.*, | : |
| *Respondents/Defendants*. | : |

PETITIONERS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR IMMEDIATE ISSUANCE OF A WRIT OF HABEAS CORPUS
OR ORDER TO SHOW CAUSE UNDER 28 U.S.C. § 2243

Petitioners Abdullah Wazir Zadran, through his next friend Zahir Shah; Abdul Haq, through his next friend, Abdul Barri; Mohammad Wabi Umari, through his next friend Gul Hyat Khan; Abdullah Mujahid Haq, by his next friend Farid Ahmed; Mohammad Rahim, through his next friend Mohammad Karim; Mohammad Zahir, through his next friend Abdul Wahab; Ghulam Roohani, through his next friend Ghulam Jeelani; Dr. Hiyatullah, through his next friend Dr. Abdul Zahir; and Chaman Gul Khialigol, through his next friend Honorgol Khialigol, respectfully submit the following Memorandum in Support of their Motion for Immediate Issuance of a Writ of Habeas Corpus or Order to Show Cause Under 28 U.S.C. § 2243, returnable by Respondents in three (3) days, or at most twenty (20) days, as provided in the cited statute. In support of this motion, Petitioners rely on the following points and authorities.

## INTRODUCTION

On December 9, 2005, undersigned counsel filed a Petition for Writ of Habeas Corpus and Complaint for Injunctive and Declaratory Relief (the "Petition") on behalf of Petitioners under 28 U.S.C. § 2241, contending that they are being detained in violation of the common law, various statutes, the Constitution, the laws and treaties of the United States, and customary international law. The Petition alleges that Petitioners are being held virtually *incommunicado* in military custody at the United States Naval Station at Guantanamo Bay, Cuba ("Guantanamo"), without lawful basis, charge, access to counsel, or any fair process by which they might challenge their designation and potentially indefinite detention as "enemy combatants."

Petitioners have been detained for years. Respondents have, for years, been aware of the purported bases for the detentions, although they have not subjected their understandings to the test of meaningful process. Absent the present proceedings, there is no indication that Respondents will ever afford Petitioners meaningful due process in any form. Accordingly, Petitioners respectfully request that the Court grant Petitioners' Motion for Immediate Issuance of a Writ of Habeas Corpus or Order to Show Cause, returnable promptly, so that counsel can proceed to prepare Petitioners' representation even if the Court determines to grant the stay order sought by Respondents on December 22, 2005.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

In or around October 2001, a coalition of military forces led by the United States ("Coalition Forces") defeated Taliban government forces and deposed the Taliban regime in Afghanistan. Petition ¶ 29. On dates unknown to counsel for Petitioners, but known to

---

[1] The facts described herein are as alleged in the Petition.

Respondents, Coalition Forces took custody of Petitioners. *Id.* ¶ 31. After Petitioners were taken into custody Coalition Forces transferred them to Guantanamo, where they have been held ever since with little or no outside contact. *Id.* ¶ 32.

Petitioners are not and have never been unlawful belligerents or "enemy combatants" as that term has been interpreted pursuant to the Executive Order issued by President Bush on November 13, 2001. *See* Petition ¶¶ 28, 30, 36, and 100; *see* Detention, Treatment, and Trial of Certain Non-Citizens in the War Against Terrorism, 66 Fed. Reg. 57, 833 (Nov. 13, 2001). They have never been part of, or supported, forces hostile to the United States or Coalition Forces in Afghanistan. *See* Petition ¶¶ 28, 30, 36, and 100. They have never engaged in armed conflict against Coalition Forces or attempted to harm Coalition Forces personnel or property. *Id.* On December 9, 2005, Petitioners, acting through their next friends, filed the Petition that initiated this proceeding. Petitioners now file a Motion for the Immediate Issuance of a Writ of Habeas Corpus or Order to Show Cause Under 28 U.S.C. § 2243. Under § 2243, the writ or order to show cause "shall be returned within three days unless for good cause additional time, not exceeding twenty days, is allowed." Petitioners respectfully request that the writ or, alternatively, the order to show cause, be returnable within three (3) days as provided by statute.

## ARGUMENT

A.  <u>Petitioners May Challenge Their Detention Under 28 U.S.C. § 2241</u>

In *Rasul v. Bush*, the Supreme Court held that allegations such as those in the Petition – specifically, claims of innocence of any wrongdoing and detention without charge or access to counsel – "unquestionably describe 'custody in violation of the Constitution or laws or treaties of the United States.'" 124 S. Ct. 2686, 2698 n.15 (2004) (*quoting* 28 U.S.C. § 2241(c)(3)). *Rasul*

establishes that Petitioners may challenge their incarceration via an application for the Great Writ. *See* 124 S. Ct. at 2699 (upholding the jurisdiction of federal courts "to determine the legality of the Executive's potentially indefinite detention of individuals who claim to be wholly innocent of wrongdoing").

Under 28 U.S.C. § 2243, a "court . . . entertaining an application for a writ of habeas corpus shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto." The language of the habeas statute is clear: "The person to whom the writ or order is directed shall make a return certifying the true cause of the detention." 28 U.S.C. § 2243.

That issuance of a writ or an order to show cause is appropriate in proceedings brought on behalf of detainees at Guantanamo such as Petitioners has already been recognized by this Court, who along with other members of the Court has issued orders to show cause in other pending Guantanamo habeas cases. *See, e.g., Chaman v. Bush*, No. 05-887 (RWR), Order dated May 12, 2005, at 5, Declaration of Rebecca P. Dick ("Dick Decl."), Ex A; *Tumani v. Bush*, No. 05-526 (RMU), Order dated Apr. 19, 2005, Dick Decl., Ex. B.

B. <u>The Order to Show Cause Should be Issued Immediately</u>

Review of a factual return describing Respondents' basis for holding each Petitioner is essential to counsel's ability to provide Petitioners with effective representation from this point in the proceedings forward. Respondents' arguments to the contrary are baseless. First, Respondents concede that even if the Court enters an order to stay these proceedings, Petitioners' counsel will be permitted to travel to Guantanamo and meet with their clients. *Zadran v. Bush*,

No. 05-2367 (RWR), Respondents' Motion to Stay Proceedings Pending Related Appeals, dated December 22, 2005, at 4 ("Dec. 22, 2005 Motion to Stay"). If those meetings are to be productive, counsel must have had a prior opportunity to review and consider the factual returns relating to Petitioners. Since counsel may meet with certain of the Petitioners as soon as late January 2006, the factual returns should be completed within the statutory period.

The classified nature of some of the information likely to be contained in the factual returns is no impediment to their production. In commercial litigation as well as other types of cases, courts routinely enter protective orders that limit disclosure of sensitive information to outside counsel. *State of New York v. Microsoft Corp.*, No. 98-1233 CKK, 2002 WL 31628219, Order dated Nov. 18, 2002 (refusing to modify protective order that limited disclosure of commercially sensitive third-party documents to outside counsel), Dick Decl., Ex. C; *Perkins v. U.S.*, No. 99-3031 AK, 2001 WL 194928, Order dated Feb. 21, 2001 (text of Stipulated Protective Order limiting disclosure of sensitive documents to outside counsel and government personnel), Dick Decl., Ex. D. Thus, Respondents' observation that counsel will not be able to share the classified portions of the factual returns with Petitioners is irrelevant to whether Petitioners are entitled to have their counsel read such returns. That certain information may not appropriately be disclosed to a party does not affect the right of the party to have his counsel review the information and use the understanding gained therefrom to develop the legal representation.

Most importantly, the burden on Respondents of producing factual returns must be weighed against the burden imposed on Petitioners and their counsel by the absence of returns. Respondents' claim that it would be "an immense logistical burden" to produce factual returns

5

for Petitioners, Dec. 22, 2005, Motion to Stay at 15, – in practical effect, an argument for delaying any possible fair review of the bases for holding the Petitioners – is arrogant in the extreme when weighed against the ongoing harm to the Petitioners of their indefinite detention in inhumane conditions. The cost to Petitioners of further delays is incalculable.

The purported burden of preparing factual returns is also substantially lighter than the burden on Petitioners' counsel of representing Petitioners without any information about why Respondents are holding them. There is simply no way for counsel effectively to prepare to litigate the reasonableness of Petitioners' detentions without knowing anything about the bases for Respondents' detention decisions.

Finally, Respondents' assertion that their burden would be "immense" does not withstand scrutiny. The factual returns they have produced to date are rudimentary and based on existing files. They should not have taken long to prepare. Respondents try to hide behind the need to observe bureaucratic niceties, but creation of an informal, inter-agency working group or some other procedural arrangement would solve any such problems in short order should Respondents truly wish to do so.

The number of detainees for whom Respondents say they may have promptly to prepare factual returns – 275 – is not large for an agency with the resources of the Department of Justice. Dec. 22, 2005, Motion to Stay at 9. Moreover, even this figure is artificially inflated. Not all of the detainees they reference will move for entry of factual returns. Among other things, it is likely that at least some of these detainees are named in more than one petition, an issue that is being corrected. Further, some detainees, such as one of the original Petitioners in this action, have been released and are no longer parties to habeas litigation. Moreover, Respondents

6

uniformly oppose detainees' motions to show cause, and it is not likely that all of these motions will be granted. The number of returns the Respondents will have to prepare will be reduced accordingly. Respondents' conclusory assertions of burden do not outweigh Petitioners' fundamental interests, after years in detention, in having their counsel apprised in at least general terms of the bases for their detentions so that counsel can prepare their representation. *See, e.g., Tumani v. Bush*, No. 05-526 (RMU), Order dated Apr. 19, 2005, at 2 ([T]he government's generic references to the expenditures of its resources and logistical burden does not persuade the court to delay ordering the returns; the court is confident that the government can handle this task."), Dick Decl., Ex. B. Respondents' effort to delay production of factual returns is simply another means by which Respondents seek to delay these proceedings indefinitely.

This Court, along with other members of the Court, has ordered the production of factual returns relating to similarly situated Guantanamo detainees. *See, e.g., Chaman v. Bush*, No. 05-887 (RWR), Order dated May 12, 2005, Dick Decl., Ex. A. *See also El-Banna v. Bush*, No. 04-1144 (RWR), Order dated July 23, 2004, Dick Decl., Ex. E; *Abdah v. Bush*, No. 04-1254 (HHK), Order dated Aug. 6, 2004, Dick Decl., Ex. F; *El-Mashad v. Bush*, No. 05-270 (JR), Order dated Apr. 7, 2005, Dick Decl., Ex. G; *Al Joudi v. Bush*, No. 05-301 (GK), Order dated Mar. 7, 2005, Dick Decl., Ex. H; *Ameziane v. Bush*, No. 05-392 (ESH) Order dated Mar. 10, 2005, Dick Decl., Ex. I; *Batarfi v. Bush*, No. 05-409 (EGS), Order dated Mar. 9, 2005, Dick Decl., Ex. J; *Al-Oshan v. Bush*, No. 05-520 (RMU), Order dated Mar. 22, 2005, Dick Decl., Ex. K.[2]

---

[2] *Cf. In re Guantanamo Detainee Cases*, Nos. 02-299 (CKK), *et al.*, Order of Coordinating Judge Joyce Hens Green dated Oct. 29, 2004, Dick Decl., Ex. L. Judge Green ordered Respondents to produce factual returns in seven cases, concluding that "[m]ost, if not all, of the petitioners who have not yet received factual returns were initially detained nearly three years

Access by counsel to factual returns describing the bases on which Respondents are continuing to detain the Petitioners is essential to the Petitioners' effective representation. This Court should immediately order that Respondents file a factual return for each Petitioner.

C. <u>The Order to Show Cause Should be Returnable Within the Statutory Period</u>

*1. Respondents have at hand the factual information for the returns.* The factual returns should be returnable within the statutory period – three days, or up to twenty days in appropriate circumstances. 28 U.S.C. § 2243. Respondents already have at the ready the information they need to prepare factual returns: they publicly claim to have completed no fewer than four factual reviews of the status and reasons for ongoing imprisonment of each Guantanamo detainee. *See* Briefing on Detainee Operations at Guantanamo Bay (Feb. 13, 2004), *available at* http://www.defenselink.mil/ transcripts/2004/tr20040213-0443.html (last visited December 20, 2005). Former Deputy Secretary of Defense Paul Wolfowitz confirmed that all Guantanamo detainees "ha[ve] been determined to be . . . enemy combatant[s] though multiple levels of review by officers of the Department of Defense." Memorandum for the Secretary of the Navy, July 7, 2004, at ¶ a, *available at* http://www.defenselink.mil/news /Jul2004/20040707 review.pdf (last visited December 20, 2005). These "multiple levels of review" involve at least three assessments by military personnel, civilian officials, and legal advisors, including: (1) an initial combatant screening and assessment; (2) a "general officer" review; and (3) a Department of Defense review. *See* Briefing on Detainee Operations at Guantanamo Bay (Feb. 13, 2004), *supra.* Furthermore, Respondents have, since July 2004, conducted hearings to review the status

---

ago and have remained in custody since that time. Respondents must be able to provide forthwith the factual bases for the initial detention and continued custody . . . ." *Id.* at 3.

of persons incarcerated at Guantanamo. *See* Combatant Status Review Tribunals Update (Jan. 19, 2005), *available at* http://www.dod.mil/releases/2005/ nr20050119-1996.html (last visited December 20, 2005). Each hearing, known as a Combatant Status Review Tribunal ("CSRT"), "reviews and assesses relevant and reasonably available documents about each detainee to make a determination to confirm or reclassify the status of each individual." *Id.* Respondents have now completed CSRT reviews for every detainee at Guantanamo. *See* DOD News Briefing with Secretary Rumsfeld and General Pace (June 14, 2005), *available at* http://www.defenselink.mil/transcripts/2005/tr20050614-secdef3042.html (last visited December 20, 2005). Respondents claim to have already reviewed to their own satisfaction the basis for continuing to hold each individual Petitioner. Petitioners are entitled – after years of detention – to know what it is.

Respondents have taken the position in this and other Guantanamo *habeas corpus* cases that "[i]t makes no sense for proceedings related to the merits of these cases, such as the submission of factual returns . . . , to go forward when decisions from the D.C. Circuit . . . will determine the legal analyses applicable to the cases[.]" December 22, 2005, Motion to Stay at 13. These contentions are meritless. In *Tumani v. Bush*, No. 05-526 (RMU), Judge Urbina rejected Respondents' arguments:

> The fact that the D.C. Circuit has not yet issued its decision in the related appeals . . . does not prevent the government from processing the returns. On the contrary, the court determines that petitioners' counsel should be able to review the returns now so that they can develop their case and prepare for any consultation with their clients.

Order dated Apr. 19, 2005, at 2, Dick Decl., Ex. B.

2. *Filing of factual returns is particularly urgent where the conditions of confinement are inhumane.* While a *habeas corpus* petitioner should always receive "a swift, flexible, and summary determination of his claim," *Preiser v. Rodriguez*, 411 U.S. 475, 495 (1973), this case requires especially expeditious adjudication, as Petitioners have been held under conditions that violate their rights to freedom from cruel, unusual, or degrading treatment or punishment. *See* Petition at ¶¶ 33, 46, 50-55, 61, 89, and 91-98.

Recently declassified and released federal agency and military documents[3] confirm reports that persons incarcerated at Guantanamo have been subjected to widespread and systemic abuse, including brutal beatings, *see, e.g.*, Interview (page stamped 5016), Dick Decl., Ex. M (translated interview of Guantanamo detainee describing being "beaten unconscious" by guards); forced violations of fundamental tenets of faith through a deliberate pattern of abuse targeted at Muslim religious beliefs; *see* Petition at ¶ 94; sexual abuse, and routine degradation and humiliation. *See* Petition at ¶¶ 54 and 94; *see also* Carol D. Leonnig and Dana Priest, *Detainees Accuse Female Interrogators: Pentagon Inquiry Is Said to Confirm Muslims' Accounts of Sexual Tactics at Guantanamo,* Wash. Post at A1 (Feb. 10, 2005), Dick Decl., Ex. N.

Detainees in Guantanamo have also been repeatedly subjected to a range of physically and psychologically abusive interrogation tactics, including denial of food or water, isolation, the use of dogs, and prolonged exposure to extreme temperatures (hot and cold), bright lights, and loud music. *See* Petition at ¶¶ 51, 53 and 89; *see, e.g.*, Dick Decl., Exs. O and P.

---

[3] These documents, attached as Exhibits M and O-R to the Smith Declaration, were released under a court order entered in litigation brought under the Freedom of Information Act by civil rights, humanitarian, and veterans' organizations. *See American Civil Liberties Union v. Department of Defense*, No. 04-4151 (AKH) (S.D.N.Y).

The government has acknowledged the mishandling of the Koran, the Islamic holy book, by Guantanamo personnel on at least five occasions. *See* DOD News Briefing on Koran Mishandling Allegations (May 26, 2005), *available at* http://www.defense link.mil/transcripts/2005/tr20050526-2921.html (last visited December 20, 2005).

Many of the abuses exposed at the United States-controlled Abu Ghraib prison in Iraq initially arose at Guantanamo. Dick Decl., Ex. Q. Army and Pentagon investigations into the torture of prisoners in Iraq have revealed that U.S. military officials successfully sought to "gitmotize" Abu Ghraib, Dick Decl., Ex R, by implementing as a baseline practices already being used in interrogation and detention at Guantanamo. Dick Decl., Ex. R. at 2 ¶ 1.

Given that Respondents already possess all of the facts that, they believe, support Petitioners' detention, they could without undue difficulty provide factual returns for each Petitioner within days, as provided by 18 U.S.C. § 2243. Moreover, the well-documented torture and abuse of individuals detained at Guantanamo necessitates an expeditious response to the Petition. In prior detainee cases, Respondents have been able to file a factual return within a week of being ordered to do so. *See, e.g., Abdullah v. Bush*, No. 05-0023 (RWR), Order dated April 8, 2005, Dick Decl., Ex. S, and Respondents' Response dated April 15, 2005, Dick Decl., Ex. T.[4]

---

[4] Respondents also suggest, unconvincingly, that requiring the production of factual returns will "increas[e] the risks of inadvertent or other disclosure or compromise of [classified] information." December 22, 2005 Motion to Stay, at 15. On the day of the filing of this Memorandum, Petitioners are filing an unopposed motion for entry in this case of Judge Green's November 8, 2004 Amended Protective Order and Procedures for Counsel Access to Detainees at the United States Naval Base in Guantanamo Bay, Cuba, as supplemented by the November 10, 2004 Order Addressing Designation Procedures for "Protected Information," and the December 13, 2004 Order Supplementing and Amending Filing Procedures Contained in November 8, 2004 Amended Protective Order. Judge Green issued the Amended Protective

11

## **CONCLUSION**

For the foregoing reasons, Petitioners respectfully urge the Court to grant Petitioners' Motion for Immediate Issuance of a Writ of Habeas Corpus or Order to Show Cause under 28 U.S.C. § 2243 and issue a writ of habeas corpus or an order to show cause, returnable by Respondents in three days, or at most twenty days, as provided by § 2243.

Dated: January 3, 2006

Respectfully submitted,

DECHERT LLP
*Counsel for Petitioners*

By: /s/ Rebecca P. Dick
Rebecca P. Dick
D.C. Bar No. 463197
R. Michael Smith
D.C. Bar No. 372654
1775 Eye Street, N.W.
Washington, D.C. 20006
202.261.3300

Daniel C. Malone
30 Rockefeller Plaza
New York, New York 10112
212.698.3500

George G. Gordon
Peter M. Ryan
Juliet Sarkessian
Cira Centre
2929 Arch Street
Philadelphia, PA 19104-2808
215.994.4000

---

Order after carefully balancing national security interests with the detainees' right to legal representation. Entry of the Amended Protective Order in this case should allay Respondents' concerns about the security of classified information in factual returns. *See Tumani v. Bush*, No. 05-526 (RMU), Order dated Apr. 19, 2005, at 2 ("[T]he protective orders entered in this case will guard against inadvertent disclosures."), Dick Decl. Ex. B.