IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ABDULLAH WAZIR ZAFRAN, *et al.*, | : |
| Petitioners/Plaintiffs, | : No. 05-02367 (RWR) |
| v. | : ORAL ARGUMENT REQUESTED |
| GEORGE W. BUSH, *et al.*, | : |
| Respondents/Defendants. | : |

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITIONERS'
MOTION FOR PRELIMINARY INJUNCTION DIRECTING RESPONDENTS TO PROVIDE
THE COURT AND PETITIONERS' COUNSEL WITH THIRTY
DAYS' ADVANCE NOTICE OF ANY PETITIONER'S REMOVAL FROM
<u>GUANTANAMO FOR A PURPOSE OTHER THAN RELEASE</u>

Petitioners Abdullah Wazir Zadran, through his next friend Zahir Shah; Abdul Haq, through his next friend, Abdul Barri; Mohammad Wabi Umari, through his next friend Gul Hyat Khan; Abdullah Mujahid Haq, by his next friend Farid Ahmed; Mohammad Rahim, through his next friend Mohammad Karim; Mohammad Zahir, through his next friend Abdul Wahab; Ghulam Roohani, through his next friend Ghulam Jeelani; Dr. Hiyatullah, through his next friend Dr. Abdul Zahir; and Chaman Gul Khialigol, through his next friend Honorgol Khialigol, rely on the following points and authorities in support of their motion under Rule 65 of the Federal Rules of Civil Procedure, LCvR 65.1, and the All Writs Act, 28 U.S.C. § 1651(a), requesting that the Court enter an order preliminarily enjoining Respondents from removing any Petitioner from the United States Naval Station at Guantanamo Bay, Cuba ("Guantanamo") for any purpose other than release, unless the Court and counsel for Petitioners receive thirty (30) days' advance notice of such removal.

I.  INTRODUCTION

Petitioners' request for injunctive relief arises from circumstances that may directly affect this Court's jurisdiction over and practical ability to adjudicate Petitioners' pending habeas corpus petition. On March 11, 2005, *The New York Times* reported Respondents' intention to transfer hundreds of detainees from Guantanamo "to prisons in Saudi Arabia, Afghanistan and Yemen." Douglas Jehl, "Pentagon Seeks to Transfer More Detainees from Base in Cuba," *New York Times* (Mar. 11, 2005).[1] The *New York Times* report stated that "[a] Feb. 5 memorandum from Defense Secretary Donald H. Rumsfeld calls for broader interagency support for the plan, starting with efforts to work out a significant transfer of prisoners to Afghanistan." *Id.* On April 26, 2005, the Department of Defense announced that 65 Guantanamo detainees have thus far been transferred to the control of other governments, and that "the department expects that there will be other transfers . . . ." U.S. Department of Defense, *News Release*, Apr. 26, 2005; Dick Decl., Ex. B.

On August 4, 2005, the governments of the United States and Afghanistan jointly announced their intentions that Afghani citizens currently being held at Guantanamo be transferred to detention facilities in Afghanistan. *See* Press Release of Embassy of United States, Kabul, Afghanistan: *Detainee Transfers to Afghanistan* (August 4, 2005) *available at* http://www.state.gov/r/pa/prs/ps/2005/50748.htm (last visited January 3, 2005). The *Washington Post* reported in August that these transfers of Guantanamo detainees to Afghanistan could begin

---

[1] *See* Exhibit A to the Declaration of Rebecca P. Dick in Support of Petitioners' Motion for Preliminary Injunction Directing Respondents to Provide the Court and Petitioners' Counsel with Thirty Days' Advance Notice of Any Petitioner's Removal From Guantanamo for A Purpose Other Than Release ("Dick Decl.").

"in the next six months," that is, by February, 2006. "Afghanistan Agrees to Accept Detainees," *Washington Post* at A1 (August 5, 2005). Dick Decl., Ex. C.

On December 28, 2005, counsel for Petitioners sought assurance from Respondents that they would provide thirty days' advance notice to the Court and counsel of any transfer of a Petitioner from Guantanamo for purposes other than release. Dick Decl. ¶ 2. Respondents refused to provide such assurance and indicated that they will oppose any motion seeking such relief. *Id.*

Absent injunctive relief, Respondents could transfer Petitioners to the custody of another country without notice to the Court or counsel. In addition to exposing Petitioners to the substantial risks of torture and continued indefinite detention without charge, such a transfer could as a practical matter eliminate Petitioners' ability to obtain habeas relief in this Court. Alternatively, Respondents could transfer Petitioners from Guantanamo to another U.S.-operated detention center overseas, possibly beyond the reach of this Court, for continued indefinite detention.

Petitioners seek narrowly tailored relief that will cause no harm to Respondents. The motion requests thirty days' notice of any transfer of any Petitioner from Guantanamo for purposes other than release – *i.e.*, in those circumstances in which Respondents lack an agreement with the receiving country that the Petitioner will immediately be released from custody by that country; or in the event that Respondents intend to transfer Petitioners to another U.S. detention facility overseas. Such relief would allow a Petitioners' counsel timely opportunity to challenge the transfer, if appropriate.

Accordingly, Petitioners respectfully request that the Court preliminarily enjoin Respondents from removing Petitioners from Guantanamo for any purpose other than release, unless the Court and counsel for Petitioners receive thirty days' advance notice of such removal.

## II. STATEMENT OF FACTS

On December 9, 2005, undersigned counsel filed a Petition for Writ of Habeas Corpus and Complaint for Injunctive and Declaratory Relief (the "Petition") under 28 U.S.C. § 2241, along with other claims, on behalf of the Petitioners. Petitioners are citizens of Afghanistan who were detained by Coalition Forces in Afghanistan or Pakistan on dates unknown to counsel for Petitioners but known to Respondents. Petition ¶¶ 4, 6, 8, 10, 12, 14, 16-18. The Petition alleges that Petitioners are being held virtually incommunicado in military custody at Guantanamo without lawful basis, charge, access to counsel, or any fair process by which they might challenge their designation and multi-year detention as "enemy combatants."[2]

Based on statements by the U.S. government and on credible news reports, there is reason to believe that Respondents, without prior notice to the Court or counsel, may transfer some or all Petitioners to: (a) the custody of Afghanistan or another foreign country where they may be detained indefinitely without due process of law and may be subjected to torture; or (b) a U.S.-

---

[2] On or about December 22, 2005, Respondents filed a motion to stay all proceedings in this case pending the resolution of all appeals in *In re Guantanamo Detainees Cases*, Nos. 02-299, *et al.*, 355 F. Supp. 2d 443 (D.D.C. 2005), *petition for interlocutory appeal granted*, No. 05-8003 (D.C. Cir. Mar. 10, 2005), and *Khalid v. Bush*, No. 04-1142 (RJL), 355 F. Supp. 2d 311 (D.D.C. 2005), *appeals docketed*, Nos. 05-5062, 05-5063 (D.C. Cir. Mar. 2, 2005). On January 3, 2006, Petitioners filed a Motion for the Immediate Issuance of a Writ of Habeas Corpus or Order to Show Cause Under 28 U.S.C. § 2243 ("Order to Show Cause"). On this date, Petitioners also filed an unopposed motion for entry of the November 8, 2004 Amended Protective Order and Procedures for Counsel Access to Detainees at the United States Naval Base in Guantanamo Bay, Cuba. Because Respondents only allow counsel to travel to Guantanamo and engage in privileged communications with detainees upon the entry of provisions similar to those described in the Amended Protective Order, undersigned counsel have not yet met or corresponded with Petitioners.

operated detention facility in Afghanistan or elsewhere outside the United States for continued indefinite detention without due process of law.

In January 2005, the *Washington Post* reported that the U.S. government was considering a proposal to "transfer of large numbers of Afghan, Saudi and Yemeni detainees from the military's Guantanamo Bay, Cuba, detention center into new U.S.-built prisons in their home countries." Dana Priest, "Long-Term Plan Sought for Terror Suspects," *Washington Post* at A1, Jan. 2, 2005; Dick Decl., Ex. D. The report noted that:

> One approach used by the CIA has been to transfer captives it picks up abroad to third countries willing to hold them indefinitely and without public proceedings. The transfers, known as "renditions," depend on arrangements between the United States and other countries, such as Egypt, Jordan and Afghanistan, that agree to have local security services hold certain terror suspects in their facilities for interrogation by CIA and foreign liaison officers.

In February 2005, the *New Yorker* reported that the U.S. government has repeatedly transferred detainees into the custody of foreign governments that employ brutal interrogation techniques. The process of "extraordinary rendition" was originally "a program aimed at a small, discrete set of suspects – people against whom there were outstanding foreign arrest warrants," but since September 11, 2001, the government has greatly expanded the practice to include "a wide and ill-defined population that the Administration terms 'illegal enemy combatants.' Many of them have never been publicly charged with any crime." The article reported in some detail the abuse suffered by one such "rendered" detainee, who was eventually released. Jane Mayer, "Outsourcing Torture," *New Yorker* (Feb. 14, 2005), *available at* http://www.newyorker.com/fact/content/articles/050214fa_fact6 (last visited December 30, 2005).

In March 2005, The New York Times reported that the U.S. Department of Defense was planning "a significant transfer" of detainees from Guantanamo to prisons in Afghanistan. Douglas Jehl, "Pentagon Seeks to Transfer More Detainees from Base in Cuba," *New York Times*, Mar. 11, 2005; Dick Decl., Ex. A. At a May 23, 2005, press conference with Afghan President Hamid Karzai, President Bush stated that it was U.S. policy to send Guantanamo detainees back to their "home countries" for continued detention:

> Our policy, as you know, has been to work our way through those who are being held in Guantanamo and send them back to the host countries, and we will do so over time, with the Afghan government. Part of the issue is to make sure there is a place where the prisoners can be held. As I explained to [President Karzai], that our policy is one where we want the people to be sent home, but, two, we've got make sure the facilities are there – facilities where these people can be housed and fed and guarded.

*President Welcomes Afghan President Karzai to the White House*, Transcript of May 23, 2005 Press Conference, *available at* http://www.whitehouse.gov/news/releases/ 2005/05/print/ 20050523.html (last visited December 30, 2005). The Joint Declaration of the United States-Afghanistan Strategic Partnership, issued on May 23, 2005, states that "the Afghan Government intends to maintain capabilities for the detention, as appropriate, of persons apprehended in the War on Terror." *See* White House Press Release (May 23, 2005), *available at* http://www.whitehouse.gov/news/releases/2005/05/print/20050523-2.html (last visited December 30, 2005).

Late this summer, the governments of the United States and Afghanistan formalized an agreement that Afghani citizens currently being held at Guantanamo would be transferred to detention facilities in Afghanistan. *See* Press Release of Embassy of United States, Kabul, Afghanistan: *Detainee Transfers to Afghanistan* (August 4, 2005) *available at* http://www.state.gov/r/pa/prs/ps/2005/50748.htm (last visited January 3, 2005). At the time, the *Washington Post* reported that these transfers could begin "in the next six months" – which

6

means by February, 2006. "Afghanistan Agrees to Accept Detainees," *Washington Post* at A1 (August 5, 2005). Dick Decl., Ex. C.

Respondents are well aware that prisoners detained in Afghanistan are at risk of indefinite detention without due process and torture in prisons that are beyond the reach of the regular Afghan criminal justice system. According to the U.S. State Department, in 2004, the Afghan intelligence agency operated at least two private prisons, "and there were unconfirmed reports of private detention facilities around Kabul and in northern regions of the country. Representatives of international agencies and the [Afghan Independent Human Rights Commission] were unable to gain access to these prisons during the year. . . . There were credible reports that some detainees were tortured to elicit confessions while awaiting trial." U.S. Dep't of State, *Country Reports on Human Rights Practices, Afghanistan (2004)* § 1(d) (Feb. 28, 2005), *available at* http://www.state.gov/g/drl/rls/hrrpt/2004/41737.htm (last visited December 30, 2005); *see also id.* § 1(c) ("Prisoners reportedly were beaten, tortured, or denied adequate food."). Human Rights Watch has also documented "numerous cases of torture, beatings, and other mistreatment of persons in the custody of local Afghan military officials." *Enduring Freedom: Abuses by U.S. Forces in Afghanistan*, Human Rights Watch at 42-43 (Mar. 2004), *available at* http://hrw.org/ reports/2004/afghanistan0304 (last visited December 30, 2005).

The U.S. government already maintains several detention centers in Afghanistan. Human Rights Watch's 2005 World Report for Afghanistan reports "numerous claims of human rights abuses" against U.S. forces at these detention centers, including "mistreatment of detainees, many of whom are held outside the protection of the Geneva Conventions." *World Report 2005;*

*Afghanistan*, Human Rights Watch, *available at* http://hrw.org/english/docs/2005/01/13/afghan9827_txt.htm (last visited December 30, 2005).[3]

On March 12, 2005, the *New York Times* reported that two Afghan prisoners died in U.S. custody at the Bagram detention center in December 2002 after being "chained to the ceiling, kicked and beaten by American soldiers in sustained assaults that caused their deaths." Douglas Jehl, "Army Details Scale of Abuse in Afghan Jail," *New York Times* at A1, Mar. 12, 2005; Dick Decl., Ex. E. According to an Army report, the attacks on one detainee were so severe that "even if he had survived, both legs would have had to be amputated." *Id.*; *see also* Tim Golden, "In U.S. Report, Brutal Details of 2 Afghan Inmates' Deaths," *New York Times* at A1, May 20, 2005; Dick Decl., Ex. F. On May 12, 2005, the *New York Times* also reported a former Afghan police colonel's claim – made long before the abuses at Abu Ghraib in Iraq came to light – of being subjected to beating, kicking, sleep deprivation, taunts, and sexual abuse while detained in U.S. detention centers in Afghanistan in July 2003. Carlotta Gall, "Afghan Gives Own Account of U.S. Abuse," *New York Times* at A1, May 12, 2005; Dick Decl., Ex. G.

III.   ARGUMENT

In *Rasul v. Bush*, the Supreme Court held that 28 U.S.C. § 2241 "confers on the District Court jurisdiction to hear petitioners' habeas corpus challenges to the legality of their detention at the Guantanamo Bay Naval Base." 124 S. Ct. 2686, 2698 (2004). If Respondents transfer Petitioners to the custody of another country without notifying the Court or counsel, Petitioners may lose the opportunity to contest their detention in a United States court.

---

[3] Human Rights Watch has also reported claims that detainees in U.S. military detention facilities in Afghanistan have been subjected to extreme sleep deprivation, exposure to freezing temperatures, and severe beatings. *Enduring Freedom: Abuses by U.S. Forces in Afghanistan*, Human Rights Watch (Mar. 2004), *available at* http://hrw.org/reports/2004/afghanistan0304 (last visited December 30, 2005).

This Court has the power under the All Writs Act, 28 U.S.C. § 1651(a), "to issue injunctions to protect its jurisdiction." *S.E.C. v. Vision Comm'ns, Inc.*, 74 F.3d 287, 291 (D.C. Cir. 1996); *Environmental Def. Fund, Inc. v. E.P.A.*, 485 F.2d 780, 784 n.2 (D.C. Cir. 1973) (appellate court has inherent power under All Writs Act to enjoin non-parties to protect jurisdiction over appeal). This Court may also issue a preliminary injunction under Rule 65 of the Federal Rules of Civil Procedure "to preserve the status quo between the parties before the court pending a decision on the merits of the case at hand." *In re Baldwin-United Corp.*, 770 F.2d 328, 338 (2d Cir. 1985).

Here, Petitioners seek minimal and non-intrusive relief – 30 days' notice of any Petitioner's removal from Guantanamo for a purpose other than release – to allow an opportunity to be heard in this Court should Respondents seek a potentially irreversible change in Petitioners' detention status. "[F]ederal courts may and should take such action as will defeat attempts to wrongfully deprive parties entitled to sue in the Federal courts for the protection of their rights in those tribunals." *Abdah v. Bush*, No. 04-1254 (HHK), 2005 WL 711814, at *4, Order dated Mar. 29, 2005 (granting preliminary injunction requiring 30 days' notice of transfer) (internal quotation and citation omitted) Dick Decl., Ex. H.

The weight of authority in this District strongly favors entry of Petitioners' requested relief. Three Judges of this District have granted preliminary injunctive relief in a total of seven Guantanamo detainee cases.[4] These decisions grant broader relief than Petitioners request here,

---

[4] *See Alhami v. Bush*, No. 05-359 (GK), Order dated June 9, 2005 (granting preliminary injunction); *Anam v. Bush*, No. 04-1194 (HHK), Order dated May 9, 2005 (same); *Al-Adahi v. Bush*, No. 05-280 (GK), Order dated Apr. 28, 2005 (same); *Al-Joudi v. Bush*, No. 05-301 (GK), 2005 WL 774847, Order dated Apr. 4, 2005 (same); *Al-Marri v. Bush*, No. 04-2035 (GK), 2005 WL 774843, Order dated Apr. 4, 2005 (same); *Al-Mohammed v. Bush*, No. 05-247 (HHK), Order dated Mar. 30, 2005 (same); *Abdah v. Bush*, No. 04-1254 (HHK), 2005 WL 711814, Order dated Mar. 29, 2004 (same); *Abdah v. Bush*, No. 04-1254 (HHK) (RMC), 2005 WL 589812, Order

requiring notice even in cases of outright release. In fifteen other Guantanamo cases, four Judges of this District, including this Court, have entered non-injunctive orders requiring 30 days' notice of transfer.[5] Finally, in four Guantanamo cases, Judge Robertson has entered stay orders restricting all transfers pending the resolution of the appeals in *In re Guantanamo Detainees Cases*, No. 05-8003 (D.C. Cir.), and *Khalid v. Bush*, Nos. 05-5062, 05-5063 (D.C. Cir.).[6]

An unannounced transfer of Petitioners from Guantanamo to Afghanistan, Pakistan, or another country for continued, indefinite detention without charge would threaten this Court's ability to adjudicate Petitioners' challenge to the legality of their indefinite detention under *Rasul*. For this reason, and because Petitioners satisfy the requirements for a preliminary

---

dated Mar. 12, 2005 (granting temporary restraining order). *But see Al-Anazi v. Bush*, No. 05-345 (JDB), 2005 WL 1119602, Order dated Apr. 21, 2005 (denying motion for preliminary injunction); *Almurbati v. Bush*, No. 04-1227 (RBW), Order dated Apr. 13, 2005 (denying preliminary injunction but requiring government, upon transfer, to certify that transfer was not for purposes of continued detention on behalf of U.S. or to extinguish jurisdiction). Collected in alphabetical order in Ex. H to Dick Decl.

[5] *See Mokit v. Bush*, No. 05-621 (PLF), Order dated June 16, 2005 (requiring 30-days' notice prior to transfer); *Adem v. Bush*, No. 05-723 (RWR), Order dated June 6, 2005 (same); *Al Daini v. Bush*, No. 05-634 (RWR), Order dated June 6, 2005 (same); *Al-Hela v. Bush*, No. 05-1048 (RMU), Order dated June 3, 2005 (same); *Al Shamri v. Bush*, No. 05-551 (RWR), Order dated May 11, 2005 (same); *Kurnaz v. Bush*, No. 04-1135 (ESH) and *Ameziane v. Bush*, No. 05-392 (ESH), 2005 WL 839542, joint Order dated Apr. 12, 2005 (same); *El Banna v. Bush*, No. 04-1144 (RWR), *Abdullah v. Bush*, No. 05-23 (RWR), and *Al Rashaidan v. Bush*, No. 05-586 (RWR), joint Order dated Apr. 8, 2005 (same); *Qayed v. Bush*, No. 05-454 (RMU), Order dated Apr. 6, 2005 (same); *Tumani v. Bush*, No. 05-526 (RMU), Order dated Apr. 6, 2005 (same); *Al-Shiry v. Bush*, No. 05-490 (PLF), 2005 WL 1384680 (D.D.C. Apr. 1, 2005) (same); *Al-Wazan v. Bush*, No. 05-329 (PLF), Order dated Apr. 1, 2005 (same); and *Al-Oshan v. Bush*, No. 05-520 (RMU), Order dated Mar. 31, 2005 (same);  Collected in alphabetical order in Ex. I to Dick Decl.

[6] *See Aziz v. Bush*, No. 05-492 (JR), Order dated Apr. 20, 2005 (entering stay applicable to release, rendition or transfer); *Salahi v. Bush*, No. 05-569 (JR), Order dated Apr. 15, 2005 (same); *Quassim v. Bush*, No. 05-497 (JR), Order dated Apr. 13, 2005 (same); and *El-Mashad v. Bush*, No. 05-270 (JR), Order dated Apr. 7, 2005 (same). Collected in alphabetical order in Ex. J to Dick Decl.

10

injunction, the Court should enjoin Respondents from removing Petitioners from Guantanamo for any purpose other than release, unless they provide the Court and counsel with 30 days' prior notice of the transfer.

    A.    *PRELIMINARY INJUNCTION STANDARD*

A court considering a preliminary injunction request must examine four factors: (1) whether Petitioners will be irreparably harmed if an injunction is not granted; (2) whether there is a substantial likelihood Petitioners will succeed on the merits; (3) whether an injunction will substantially injure Respondents; and (4) whether the public interest will be furthered by the injunction. *Al-Fayed v. CIA*, 254 F.3d 300, 303 (D.C. Cir. 2001). "These factors interrelate on a sliding scale and must be balanced against each other." *Serono Labs. v. Shalala*, 158 F.3d 1313, 1317-18 (D.C. Cir. 1998). "If the arguments for one factor are particularly strong, an injunction may issue even if the arguments in other areas are rather weak." *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 746 (D.C. Cir. 1995).

Where the balance of hardships tips decidedly toward the movant, it will "ordinarily be enough that the [movant] has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberative investigation." *Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 844 (D.C. Cir. 1977). "An order maintaining the status quo is appropriate when a serious legal question is presented, when little if any harm will befall other interested persons or the public and when denial of the order would inflict irreparable harm on the movant." *Id.*

Here, Petitioners will unquestionably suffer irreparable harm if Respondents transfer them to a country where they are at great risk of being tortured and over which this Court has no jurisdiction. Respondents, in contrast, will suffer no harm if required to provide thirty days' notice of an impending transfer, during which Petitioners would simply remain where

Respondents took them. The balance of hardships test heavily favors Petitioners. Further, Petitioners can show a substantial likelihood of success on the merits of their Petition, based on the Supreme Court's *Rasul* decision and Judge Joyce Hens Green's decision in *In re Guantanamo Detainees Cases*, Nos. 02-299, *et al.*, 355 F. Supp. 2d 443 (D.D.C. 2005), that Guantanamo detainees have enforceable rights under the Due Process Clause of the Fifth Amendment and the Geneva Conventions. At the very least, Petitioners' claims raise serious questions going to the merits that are a fair ground for litigation. The Court should therefore grant Petitioners' request for a preliminary injunction.

    B.    *A PRELIMINARY INJUNCTION IS WARRANTED REQUIRING RESPONDENTS TO PROVIDE THIRTY DAYS' ADVANCE NOTICE OF REMOVAL OF A PETITIONER FROM GUANTANAMO FOR A PURPOSE OTHER THAN RELEASE*

        1.    Petitioners Will Suffer Irreparable Harm If A Preliminary Injunction Is Not Granted

Petitioners stand to suffer immeasurable and irreparable harm – ranging from cruel, inhuman, or degrading treatment to torture and possible death – if they are transferred for continued detention to certain third countries, including Afghanistan or Pakistan. Such a transfer would also thwart their rights under *Rasul* to adjudicate the legality of their detention in this Court.

In *Al-Joudi v. Bush*, No. 05-(GK), Judge Kessler found these harms to be "obvious and substantial":

> First [Petitioners] face the possibility of transfer to a country where they might be tortured or indefinitely confined, which undeniably would constitute irreparable harm. While the Government presents declarations that attempt to mitigate these concerns, they neither refute nor render them frivolous. . . . In short, the threatened injury is not merely remote and speculative; it is a serious potential threat. Second, Petitioners face the threat of irreparable harm based on the potential elimination of their habeas claims. . . . Since such a turn of events would certainly constitute a threat of irreparable harm, an

> order preserving the status quo in this case is appropriate. . . . [T]he
> Government is clearly maintaining its right to transfer [Petitioners]
> at any time . . . . Thus, the threats are not distant or speculative,
> and transfer could occur in the near future.

2005 WL 774847, at *4 (D.D.C. Apr. 4, 2005).

In granting an application for a temporary restraining order in *Abdah v. Bush*, No. 04-1254 (HHK) (RMC), Judge Collyer concluded that the loss of the right to adjudicate *habeas* claims could constitute irreparable harm:

> Were the Petitioners to be transferred to the control of a foreign
> country, they would effectively lose their rights to pursue their
> *habeas* claims in this country. The Court finds that their injury
> would be continued detention outside the jurisdiction of the U.S.
> courts – courts that are actively reviewing the constitutionality of
> that very detention. While the Supreme Court has granted them a
> right of access to our court system, such a transfer would terminate
> that right, insofar as it sounds in *habeas corpus*, because U.S.
> courts would no longer have control over their warden.
> Presumably, the Petitioners would suffer no harm if the
> Government were to transfer them to Yemen for release; that is the
> goal of their *habeas* petitions. A transfer with continued
> indeterminate detention with no right of review or further court
> access poses a very different set of parameters. . . .
> [A] continuation of their detention without redress to assess its
> legality could constitute irreparable harm to the Petitioners.

2005 WL 589812, *4, Order dated Mar. 12, 2005. In granting the *Abdah* petitioners' subsequent request for a preliminary injunction, Judge Kennedy agreed that "[s]uch transfers would eliminate any opportunity for Petitioners to ever obtain a fair adjudication of their fundamental right to test the legitimacy of [their] executive detention." *Abdah v. Bush*, 2005 WL 711814, at *4, Order dated Mar. 29, 2004 (internal quotation omitted). Dick Decl., Ex. H.

As in *Al-Joudi* and *Abdah*, this Court should find that the transfer without notice of Petitioners to Afghanistan, Pakistan or another country for continued detention would constitute irreparable harm. In addition, Petitioners are likely to succeed on the claim that their detentions are illegal and unconstitutional, *see infra* Part III.B.3. The fact that transfer for purposes other

13

than release would potentially eliminate their meritorious claims is further evidence of irreparable harm. *See United States v. Bogle,* 855 F.2d 707, 710-711 (11th Cir. 1988) ("[U]nnecessary deprivation of liberty clearly constitutes irreparable harm."); *Jolly v. Coughlin,* 76 F.3d 468, 482 (2nd Cir. 1996) (unconstitutional confinement raises presumption of irreparable harm).

    2.    Any Burden on Respondents Resulting from the Requested Injunction Is Far Outweighed by the Harm to Petitioners

In contrast to the harm Petitioners will suffer, Respondents can suffer no conceivable harm from complying with a request for 30 days' prior notice of transfer. A preliminary injunction here would merely maintain the status quo that Respondents have created and enforced for years.

In *Al-Joudi*, Judge Kessler found that the balance of harms heavily favored Petitioners:

> The Court fails to see any injury whatsoever that the Government would suffer from granting the requested preliminary injunction. Petitioners request only 30 days' notice of transfer – a narrow and discrete request that would impose no burden on the Government. Beyond "vague premonitions" that such relief would harm the executive's ability to conduct foreign policy, there is no concrete evidence that such notice actually will intrude upon executive authority. . . . For example, granting Petitioners' request for 30 days' notice of transfer would not require the Court to second-guess foreign policy decisions of the Executive, would not require the Government to divulge information relating to its negotiations with foreign governments, and would not prevent the Government from speaking with one voice. In weighing the respective hardships imposed upon the parties, the balance clearly tilts in favor of Petitioners.

*Al-Joudi*, 2005 WL 774847, at *5 (internal citation omitted); *see also Abdah*, 2005 WL 711814, at *6 ("While the injunction Petitioners seek might restrict or delay Respondents with respect to one aspect of managing Petitioners' detention, such a consequence does not outweigh the

imminent threat facing Petitioners with respect to the *entirety* of their claims before the court."). Dick Decl., Ex. H.

Because any potential harm to Respondents from entry of the requested injunction is vague, speculative, and vastly outweighed by the potential harm to Petitioners, the Court should require Respondents to provide 30 days' prior notice of any intended transfer for purposes other than release.

3. <u>Petitioners Are Likely to Succeed on the Merits of Their Claims</u>

The Court should also find that Petitioners are likely to succeed on the merits of their habeas corpus claims. They have properly invoked the jurisdiction of this Court. *See Rasul*, 124 S. Ct. at 2698. In *Rasul*, the Supreme Court strongly suggested that Guantanamo detainees had substantive rights that could be redressed under § 2241:

> Petitioners' allegations – that, although they have engaged neither in combat nor in acts of terrorism against the United States, they have been held in Executive detention for more than two years in territory subject to the long-term, exclusive jurisdiction and control of the United States, without access to counsel and without being charged with any wrongdoing – unquestionably describe "custody in violation of the Constitution or laws or treaties of the United States."

*Id.* at 2698 n.15 (quoting 28 U.S.C. § 2241(c)(3)). In concluding that Guantanamo detainees have stated actionable claims under the Due Process Clause of the Fifth Amendment and the Geneva Conventions, Judge Green stated that "it is difficult to imagine that the Justices would have remarked that the petitions 'unquestionably describe custody in violation of the Constitution or laws or treaties of the United States' unless they considered the petitioners to be within a territory in which constitutional rights are guaranteed." *In re Guantanamo Detainees Cases*, 355 F. Supp. 2d at 463. For Respondents to transfer Petitioners for continued detention in

countries that afford no such protections would flout Judge Green's ruling and defeat the Court's jurisdiction.

Respondents argue in the appeals of Judge Green's and Judge Leon's conflicting rulings that *Rasul* is an empty vessel – that the Court of Appeals should interpret that decision as merely granting the right to file an entirely meaningless piece of paper. The Supreme Court, however, indisputably expected the district courts to adjudicate the merits of the detainees' claims. *Id.* at 2699 (remanding "for the District Court to consider in the first instance the merits of petitioners' claims"). Respondents also argue in the appeals that the district courts must defer to the results of the Department of Defense's Combatant Status Review Tribunals ("CSRTs") and dismiss the detainees' petitions. Again, the Supreme Court has already resolved this issue. In *Hamdi v. Rumsfeld*, 124 S. Ct. 2633 (2004), the Supreme Court held that due process required, at a minimum, "notice of the factual basis for [a petitioner's] classification, and a fair opportunity to rebut the Government's factual assertions before a neutral decision maker." *Id.* at 2648. By design and in practice, the CSRT proceedings lack these basic protections. *See In re Guantanamo Detainee Cases*, 355 F. Supp. 2d at 468-78.

In *Abdah v. Bush,* Judge Collyer found that:

> Petitioners have at least a fifty-fifty chance of prevailing on their constitutional claims before the Court of Appeals and . . . they raise serious arguments that require more deliberative consideration concerning whether removing them from the Court's jurisdiction, while insisting on continued detention, is within the province of the Executive.

2005 WL 589812, at *4. In granting a preliminary injunction in *Al-Joudi v. Bush*, Judge Kessler agreed, finding that "even though the mathematical probability of success is impossible to assess, there can be no doubt that the questions raised here are so 'serious, substantial, difficult, and

16

doubtful,' as to make them a 'fair ground for litigation.'" 2005 WL 774847, at *5 (quoting *Washington Metro. Area Transit Comm'n*, 559 F.2d at 844). Dick Decl., Ex. H.

In a case such as this, where the risk of irreparable harm to the Petitioners is so great, this Court should find that Petitioners have made a sufficient showing of likelihood of success on the merits.[7]

### 4. The Public Interest Favors Injunctive Relief

Finally, public policy favors requiring Respondents to provide advance notice to the Court and counsel of any intended removal of Petitioners from the Court's jurisdiction for purposes other than release. "[I]t is always in the public interest to prevent the violation of a party's constitutional rights." *G&V Lounge, Inc. v. Michigan Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994).

---

[7] Because Respondents have moved to stay this case pending resolution of the appeals in *In re Guantanamo Detainees Cases* and *Khalid v. Bush*, the Court should also grant the requested injunction to prevent the harm that Federal Rule of Appellate Procedure 23(a) seeks to avoid. Rule 23(a) provides:

> Pending review of a decision in a habeas corpus proceeding commenced before a court, justice, or judge of the United States for the release of a prisoner, the person having custody of the prisoner must not transfer custody to another unless a transfer is directed in accordance with this rule.

Rule 23(a) "was designed to prevent prison officials from impeding a prisoner's attempt to obtain habeas corpus relief by physically removing the prisoner from the territorial jurisdiction of the court in which a habeas petition is pending." *Hammer v. Meachum*, 691 F.2d 958, 961 (10th Cir. 1982) (citation omitted). While Petitioners' case is not on appeal, Respondents have argued in moving for a stay that the pending appeals will address "the core issues" in their Petition. Mot. to Stay, at 3. Having directly linked Petitioners' claims with those on appeal, Respondents should not be permitted to extinguish Petitioners' claims by transferring them beyond the Court's jurisdiction. This Court has the power to issue an injunction to prevent such an unjust result. *See* 28 U.S.C. § 1651(a); *cf. Abdah v. Bush*, 2005 WL 711814, at *5 ("[Rule 23(a)'s] application here is consistent with both the text of the rule and its underlying purpose."). Dick Decl., Ex. H.

17

In *Al-Joudi v. Bush*, Judge Kessler found that "the public interest undeniably is served by ensuring that Petitioners' constitutional rights can be adjudicated in an appropriate manner. . . . Retaining jurisdiction over this case is essential to protecting that public interest." 2005 WL 774847, at *6. Likewise, in *Abdah v. Bush*, Judge Kennedy concluded:

> Petitioners' current designation as enemy combatants is not a foregone conclusion; challenges to the accuracy and legitimacy of the government's determination that Petitioners have engaged in hostilities against the United States, or aided those who have, are the very core of Petitioners' underlying habeas claims. . . . [T]he public has a strong interest in ensuring that its laws do not subject individuals to indefinite detention without due process.

2005 WL 711814, at *6. Dick Decl., Ex. H. No matter how satisfied Respondents may be that their actions are lawful, the public good requires that federal litigants – properly before the Court and represented by counsel – be provided with a meaningful opportunity to contest their transfer into the hands of those who might torture them or detain them indefinitely. Accordingly, the public interest favors the entry of the requested injunction.

## CONCLUSION

Fair notice and an opportunity to be heard are the bedrock principles of due process. Petitioners' requested relief is concrete, narrow, and minimally burdensome. For the reasons set forth above, Petitioners respectfully request that the Court grant their application for a preliminary injunction prohibiting Respondents from removing a Petitioner from Guantanamo for a purpose other than release without 30 days' advance notice to the Court and counsel.

Dated: January 4, 2006

Respectfully submitted,

DECHERT LLP
*Counsel for Petitioners*

By: /s/ Rebecca P. Dick
Rebecca P. Dick
D.C. Bar No. 463197
R. Michael Smith
D.C. Bar No. 372654
1775 Eye Street, N.W.
Washington, D.C. 20006
202.261.3300

Daniel C. Malone
30 Rockefeller Plaza
New York, NY 10112
212.698.3500

George G. Gordon
Peter M. Ryan
Juliet Sarkessian
Cira Center
2929 Arch Street
Philadelphia, PA 19104-2808
215.994.4000