*PREVIOUSLY FILED WITH CSO AND
CLEARED FOR PUBLIC FILING*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **ABDULLAH WAZIR ZADRAN,** *et al.,* | : | |
| | : | |
| *Petitioners/Plaintiffs,* | : | **Case No. 05-CV-2367 (RWR)** |
| | : | |
| v. | : | |
| | : | |
| **GEORGE W. BUSH,** *et al.,* | : | |
| | : | |
| *Respondents/Defendants.* | : | |

---

## PETITIONERS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO RESPONDENTS' MOTION TO STAY PROCEEDINGS

Petitioners Abdullah Wazir Zadran, through his next friend Zahir Shah; Abdul Haq, through his next friend Abdul Barri; Mohammad Wabi Umari, through his next friend, Gul Hyat Khan; Abdullah Mujahid Haq, through his next friend, Farid Ahmed; Mohammad Rahim, through his next friend, Mohammad Karim; Mohammad Zahir, through his next friend, Abdul Wahab; Ghulam Roohani, through his next friend, Ghulam Jeelani; Dr. Hiyatullah, through his next friend, Dr. Abdul Zahir; and Chaman Gul Khialigol, through his next friend, Honorgol Khailigol, respectfully submit the following Memorandum of Points and Authorities in Opposition to Respondents' Motion to Stay Proceedings.

## I.    INTRODUCTION

On December 9, 2005, undersigned counsel filed a Petition for Writ of Habeas Corpus and Complaint for Injunctive and Declaratory Relief (the "Petition") on behalf of Petitioners under 28 U.S.C. § 2241.  The Petition alleges that the Petitioners are being held virtually *incommunicado* in military custody at the United States Naval Station at Guantanamo Bay, Cuba ("Guantanamo"), without lawful basis, charge, access to counsel, or any fair process

by which they might challenge their designation and potentially indefinite detention as "enemy combatants."

On December 22, 2005, Respondents filed a motion to stay all proceedings in this case pending the resolution of all appeals in *In re Guantanamo Detainees Cases*, Nos. 02-CV-299, *et al.*, 355 F. Supp. 2d 443 (D.D.C. 2005), *petition for interlocutory appeal granted*, No. 05-8003 (D.C. Cir. Mar. 10, 2005), and *Khalid v. Bush*, No. 04-CV-1142 (RJL), 355 F. Supp. 2d 311 (D.D.C. 2005), *appeals docketed*, Nos. 05-5062, 05-5063 (D.C. Cir. Mar. 2, 2005). Respondents argue that, because the "core claims" of the Petition are at issue in the appeals, "[i]t makes no sense for proceedings related to the merits . . . to go forward when decisions from the D.C. Circuit on the related Guantanamo detainee appeals will determine the legal analyses applicable to [the Petition] and, indeed, whether and how this case should proceed." Mot. to Stay, at 4, 13.

Under the principles established in this circuit, there is insufficient legal basis for a stay. First, Respondents have not and cannot show that they are likely to prevail on the merits of the appeals of the related cases. The arguments they advance in those appeals fail fully to acknowledge the holding of the Supreme Court in *Rasul v. Bush*, 124 S. Ct. 2686 (2004), that federal district courts have jurisdiction to hear the *habeas corpus* claims of Guantanamo detainees. The Supreme Court in *Rasul* stated that the detainees' allegations "unquestionably describe custody in violation of the Constitution or laws or treaties of the United States." *Id.* at 2698 n.15 (internal quotation omitted). Respondents' contention on appeal that the detainees essentially have no rights thus will not succeed. Second, Respondents have made no credible argument that they will suffer any injury absent a stay, and, third, they fail to address the irreparable injury Petitioners continue to suffer from their illegal and possibly brutal detention.

Finally, the public's interest in preserving the practical effectiveness of constitutional rights weighs heavily against entry of a stay.

Accordingly, Petitioners respectfully request that the Court deny Respondent's motion to stay.

## II.     FACTUAL AND PROCEDURAL BACKGROUND[1]

In or around October 2001, a coalition led by United States military forces ("Coalition Forces") defeated Taliban government forces and deposed the Taliban regime. Petition ¶ 29.  On dates unknown to counsel for Petitioners, but known to Respondents, Coalition Forces took custody of Petitioners.  *Id.* ¶ 31.  After Petitioners were taken into custody, Coalition Forces transferred them to Guantanamo, where they have been held ever since, with little or no outside contact.  *Id.* ¶ 32.

Petitioners are not and never have been enemy combatants.  *Id.* ¶ 30.  They have never been part of, or supported, forces hostile to the United States or its coalition partners in Afghanistan.  *Id.*  They have never engaged in armed conflict against Coalition Forces or attempted to cause any harm to Coalition Forces personnel or property.  *Id.*

On December 9, 2005, Petitioners, acting through their next friends, filed the Petition, alleging that they are being detained in violation of the common law, various statutes, the Constitution, the laws and treaties of the United States, and customary international law.  On January 3, 2005, Petitioners filed:  (1) a Motion for the Immediate Issuance of a Writ of Habeas Corpus or Order to Show Cause Under 28 U.S.C. § 2243; (2) a Motion for Entry of a Preservation Order; and (3) an Unopposed Motion for Entry of the November 8, 2004 Amended Protective Order and Procedures for Counsel Access to Detainees at the United States Naval

---

[1]     The facts described herein are as alleged in the Petition.

Base in Guantanamo Bay, Cuba, 344 F. Supp. 2d 174 (D.D.C. 2004). On January 4,

2005, Petitioners filed: (4) a Motion for Preliminary Injunction Directing Respondents to

Provide the Court and Counsel with Thirty Days' Advance Notice of Any Intended Transfer

from Guantanamo for a Purpose Other Than Release.

       Respondents have moved to stay all proceedings in this case. Respondents assert

that Petitioners, who have already been held without charge for years, should further await the

outcome of all appeals in other Guantanamo *habeas corpus* cases now pending in the Court of

Appeals and ultimately to be decided in the United States Supreme Court. As a practical matter,

that would add years to the length of Petitioners' wait for a fair review of the basis for their

detention.

## III.   <u>ARGUMENT</u>

### A.   <u>RESPONDENTS HAVE NOT EVEN ATTEMPTED TO SATISFY THE REQUIREMENTS FOR A STAY PENDING APPEAL</u>

       In *Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc.*, 559

F. 2d 841 (D.C. Cir. 1977), the District of Columbia Circuit described the four well-established

requirements that Respondents must satisfy in order to justify a stay pending appeal.

Respondents must show that: (1) they are likely to prevail on the appeal; (2) they will be

irreparably injured absent a stay; (3) the issuance of such a stay will not substantially harm

Petitioners; and (4) the public interest favors a stay. *Id.* at 843 (citing *Virginia Petroleum

Jobbers Association v. FPC*, 259 F.2d 921, 925 (D.C. Cir. 1958)). Respondents' motion to stay

cannot and does not seriously attempt to satisfy these requirements.

### 1.   <u>Under the U.S. Supreme Court's Decision in *Rasul v. Bush*, Respondents Are Not Likely to Prevail on Appeal</u>

       The Respondents are not likely to prevail on the pending appeals of the

Guantanamo *habeas* cases, because the "core legal issue" in those appeals has already been

decided by the Supreme Court against the position taken by Respondents.  In *Rasul v. Bush*, 124

S. Ct. 2686 (2004), the Supreme Court held that Guantanamo detainees have a statutory right to

seek *habeas* relief from federal district courts.  Five justices concluded that this right was

"clear":

> In the end, the answer to the question presented is clear.
> Petitioners contend that they are being held in federal custody in
> violation of the laws of the United States.  No party questions the
> District Court's jurisdiction over petitioners' custodians.  Section
> 2241, by its terms, requires nothing more.  We therefore hold that
> § 2241 confers on the District Court jurisdiction to hear
> petitioners' habeas corpus challenges to the legality of their
> detention at the Guantanamo Bay Naval Base.

*Id*. at 2698 (citation omitted).  Indeed, the Supreme Court repeatedly affirmed the role of the

district courts in cases such as Petitioners':

> Whether and what further proceedings may become necessary *after
> respondents make their response to the merits of petitioners'
> claims* are matters that we need not address now.  What is
> presently at stake is only whether the federal courts have
> jurisdiction to determine the legality of the Executive's potentially
> indefinite detention of individuals who claim to be wholly innocent
> of wrongdoing.  Answering that question in the affirmative, we
> reverse the judgment of the Court of Appeals and remand *for the
> District Court to consider in the first instance the merits of
> petitioners' claims*.

*Id*. at 2699 (emphasis added).

Further, the majority strongly suggested that the Guantanamo detainees had

substantive rights that could be redressed under § 2241:

> Petitioners' allegations – that, although they have engaged neither
> in combat nor in acts of terrorism against the United States, they
> have been held in Executive detention for more than two years in
> territory subject to the long-term, exclusive jurisdiction and control
> of the United States, without access to counsel and without being
> charged with any wrongdoing – unquestionably describe "custody
> in violation of the Constitution or laws or treaties of the United
> States."

*Id.* at 2698 n.15 (quoting 28 U.S.C. § 2241(c)(3)). The meaning of footnote 15 in *Rasul* is undeniable. "[I]t is difficult to imagine that the Justices would have remarked that the petitions 'unquestionably describe custody in violation of the Constitution or laws or treaties of the United States' unless they considered the petitioners to be within a territory in which constitutional rights are guaranteed." *In re Guantanamo Detainees Cases*, 355 F. Supp. 2d at 463.

Respondents argue in the appeals that *Rasul* was an empty vessel – that the Court of Appeals should interpret that decision as merely granting a right to file a meaningless piece of paper. Not only is this argument nonsensical, the Supreme Court in *Rasul* stated the opposite position – that the Court expected the district courts to adjudicate the merits of the detainees' claims.

Respondents also argue in the appeals that the district courts must defer to the results of the Department of Defense's Combatant Status Review Tribunals ("CSRTs") and dismiss the detainees' petitions. Again, this contention ignores a clear holding of the Supreme Court. In *Hamdi v. Rumsfeld*, 124 S. Ct. 2633 (2004), the Court held that due process requires, at a minimum, "notice of the factual basis for [a petitioner's] classification, and a fair opportunity to rebut the Government's factual assertions before a neutral decision maker." *Id.* at 2648. By design and in practice, CSRT proceedings to date lack these basic protections. *See In re Guantanamo Detainee Cases*, 355 F. Supp. 2d at 468-78.

Respondents cannot make the required "strong showing" of the first element of establishing the basis for a stay pending appeal – that they are likely to prevail on the appeal. *Washington Metropolitan Area Transit Comm'n*, 559 F.2d at 843. *Rasul* and *Hamdi* foreclose Respondents' contention that Petitioners' only right is to file a moribund petition for relief.

Indeed, Respondents do not address this first element in their papers. Nor do the "other three factors [governing issuance of a stay] strongly favor interim relief." *Id.*

### 2. Respondents Have Entirely Failed to Show That They Will Suffer Irreparable Harm Absent a Stay

In order the establish the basis for a stay pending appeal, Respondents must show that they will suffer "irreparable injury" in the absence of a stay. But the phrase "irreparable injury" never appears in Respondents' motion to stay. Respondents do claim that requiring them to prepare brief factual returns in response to the Petition would impose "an immense logistical burden" on the government. Mot. to Stay, at 15. Not only is Respondents' claim incredible on its face and wholly unsubstantiated, it would be legally insufficient even if established. Simple administrative burden is not irreparable injury. "The key word in this consideration is irreparable. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough." *Virginia Petroleum Jobbers Ass'n*, 259 F.2d at 925. Respondents have not – and cannot – show that they will suffer irreparable injury absent a stay.

In *Landis v. North American Co.*, 299 U.S. 248 (1936), the Supreme Court held that "[o]nly in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Id.* at 255. The movant for such a stay "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else." *Id.* at 255. Here, Respondents' claim of hardship is more than a little suspect. In ordering Respondents to produce factual returns in seven other detainee cases, Judge Green noted that "[m]ost, if not all, of the petitioners who have not yet received factual returns were initially detained three years ago and have remained in custody since that time. Respondents

must be able to provide forthwith the factual bases for the initial detention and continued custody

. . . ." *See In re Guantanamo Detainee Cases*, No. 02-CV-299 (CKK), *et al.* (Order dated

Oct. 29, 2004); *see also Tumani et al. v. Bush et al.*, No. 05-CV-526 (RMU) (Order dated

Apr. 19, 2005, finding that "the government's generic references to the expenditures of its

resources and logistical burden does not persuade the court to delay ordering the returns"),

attached as Exh. A to the Declaration of Peter M. Ryan in Support of Petitioners' Memorandum

of Points and Authorities in Opposition to Respondents' Motion to Stay Proceedings ("Ryan

Decl.")[2]

       By contrast, a stay of all proceedings in this case promises far greater than a "fair

possibility" of damage to Petitioners. As is described below, the balance of harms weighs

decidedly against the entry of a stay.

### 3.    Petitioners Will Suffer More Irreparable Harm In the Event of a Stay of All Proceedings

       Any balancing of harms must begin with the recognition that Petitioners have

been incarcerated virtually *incommunicado* for years without charge, access to counsel, or any

meaningful due process protections. Further, the government has recently released military and

other federal agency documents confirming reports from released detainees and news

---

[2] Numerous Judges in this District have issued Orders to Show Cause in other Guantanamo *habeas corpus* cases. *See, e.g., El-Banna v. Bush*, No. 04-CV-1144 (RWR) (Order dated July 23, 2004); *Abdah v. Bush*, No. 04-CV-1254 (HHK) (Order dated Aug. 6, 2004); *El-Mashad v. Bush*, No. 05-CV-270 (JR) (Order dated Apr. 7, 2005); *Al Joudi v. Bush*, No. 05-CV-301 (GK) (Order dated Mar. 7, 2005); *Ameziane v. Bush*, No. 05-CV-392 (ESH) (Order dated Mar. 10, 2005); *Batarfi v. Bush*, No. 05-CV-409 (EGS) (Order dated Mar. 9, 2005); *Al-Oshan v. Bush*, No. 05-CV-520 (RMU) (Order dated Mar. 22, 2005). *See* Exs. A-G to Petitioners' Motion for the Immediate Issuance of a Writ of Habeas Corpus or Order to Show Cause Under 28 U.S.C. § 2243 (filed January 3, 2006). Moreover, the factual returns filed to date by Respondents have been very brief and cannot have taken long to prepare.

organizations that Guantanamo detainees have been subjected to systematic physical and mental

abuse that can only be described as torture.[3]

Some of the abuses known to have occurred include:

- A detainee was made to "sit[] on the floor of the interview room with an Israeli flag draped around him, loud music being played and a strobe light flashing." Ryan Decl., Ex. B;

- Detainees have been "chained hand and foot in a fetal position to the floor, with no chair, food, or water. Most times they had urinated or defacated [sic] on themselves, and had been left there for 18, 24 hours or more." *Id., Ex. C;*

- Detainees have been exposed to extreme cold: "[T]he air conditioning had been turned down so far and the temperature was so cold in the room, that the barefooted detainee was shivering with cold. When I asked the MP's what was going on, I was told that the interrogators from the day prior had ordered this treatment, and the detainee was not to be moved." *Id.;*

- Detainees have been exposed to extreme heat: "[T]he A/C had been turned off, making the temperature in the unventilated room probably well over 100 degrees. The detainee was almost unconscious on the floor, with a pile of hair next to him. He had apparently been literally pulling his hair out throughout the night." *Id.;*

- Detainees have been subjected to physical and sexual abuse from female interrogators: "The detainee was shackled and his hands were cuffed to his waist. SA [REDACTED] observed [REDACTED] apparently whispering in the detainee's ear, and caressing and applying lotion to his arms (this was during Ramadan when physical contact with a woman would have been particularly offensive to a Moslem male). On more than one occasion the detainee appeared to be grimacing in pain . . . . [REDACTED] asked what had happened to cause the detainee to grimace in pain. The marine said [REDACTED] had grabbed the detainee's thumbs and bent them backwards and indicated that she also grabbed his genitals. The marine also implied that her treatment of that detainee was less harsh than her treatment of others by indicating that he had seen her treatment of other detainees result in the detainees curling into a fetal position on the floor and crying in pain." *Id.* Ex. D.

Because undersigned counsel have been unable to confer directly with Petitioners,

only Respondents know whether Petitioners are subject to continuing abuse. Given the apparent

---

[3]  These documents, attached as Exhibits B through D to the Ryan Declaration, were released under a court order entered in litigation brought under the Freedom of Information Act by civil rights, humanitarian and veterans' organizations. *See American Civil Liberties Union v. Department of Defense*, No. 04-CV-4151 (AKH) (S.D.N.Y.).

prevalence of the practices described above, and Respondents' unwillingness to file factual returns to the Petition, the burden of any such uncertainty must fall on Respondents.

Respondents bear the burden of showing that the balance of harms favors a stay. *Washington Metropolitan Area Transit Comm'n*, 559 F.2d at 843; *id.* at 844 (stay is appropriate "when little if any harm will befall other interested persons"). "[U]nnecessary deprivation of liberty clearly constitutes irreparable harm." *United States v. Bogle,* 855 F.2d 707, 710-711 (11th Cir. 1988); *see also Jolly v. Coughlin,* 76 F.3d 468, 482 (2nd Cir. 1996) (unconstitutional confinement raises presumption of irreparable harm). In the face of the virtual certainty that a stay "will work damage" to Petitioners by needlessly perpetuating their illegal and possibly still-brutal confinement, Respondents have entirely failed to present the "clear case of hardship" that the Supreme Court required in *Landis.* 299 U.S. at 255.

The District of Columbia Circuit has held that staying one case until the completion of proceedings in another requires a finding that the movant's "need overrides the injury to the parties being stayed." *Dellinger v. Mitchell*, 442 F.2d 782, 787 (D.C. Cir. 1971) (invalidating total stay of proceedings pending completion of related appeals). Respondents cannot satisfy this requirement. "This consideration is of particular importance where the claim being stayed involves a not insubstantial claim of present and continuing infringement of constitutional rights." *Id.* Here, Petitioners allege present and continuing violations of the most fundamental constitutional and legal protections.[4]

---

[4] Respondents argue that the Court would retain jurisdiction to intervene in "emergency" circumstances (Mot. to Stay, at 12 n.7). First, given Petitioners' inability to communicate on a regular basis with their counsel it is not clear that any emergency would become known to counsel while there was still time to seek legal relief. Moreover, Petitioners' years of indefinite confinement and exposure to abuse in themselves constitute an emergency.

Should a stay be granted, Petitioners' confinement will continue at least another full year without redress. The District of Columbia Circuit's decisions will be appealed to the Supreme Court.[5] At the earliest, the Supreme Court could consider the cases during October Term 2006. Even assuming expedited briefing and consideration, the Supreme Court would not likely issue a decision until sometime in 2007. In the meantime, some of the Petitioners will have entered their fifth year of illegal detention, with only limited access to counsel. Indeed, if Respondents succeed in avoiding their duty under 28 U.S.C. § 2243 to provide a factual return, *see* Mot. to Stay, at 14, neither counsel nor Petitioners will know by the end of 2006 the alleged cause for their detention.

In *Landis*, the Supreme Court held that a stay may not be "immoderate in extent" or "oppressive in its consequences." 299 U.S. at 256. Given the brutal conditions of Petitioners' years of incarceration – and its potentially indefinite duration – it is difficult to conceive of a delay more immoderate or consequences more oppressive than to require them to wait at least another full year before learning why they are being imprisoned. In *Landis*, the Supreme Court vacated a stay in a securities case intended to last through intermediate and Supreme Court appeals, holding that "[r]elief so drastic and unusual overpasses the limits of any reasonable need." *Id.* at 257. Here, without any substantial showing of need, Respondents seek a stay of similar duration regarding present and continuing violations of the most fundamental legal and human rights. Because of the undeniably irreparable harm that Petitioners will suffer as a result of the requested stay, the Court should deny Respondents' motion.

---

[5]  Although Respondents' motion to stay does not mention the Supreme Court, Respondents request a stay "pending resolution of all appeals." Mot. to Stay, at 3.

### 4.    The Public Interest Strongly Disfavors a Stay of All Proceedings

The public interest in the vitality of the writ of *habeas corpus* weighs strongly against the entry of a stay, as "it is always in the public interest to protect the violation of a party's constitutional rights." *G & V Lounge, Inc. v. Mich. Liquor Control Comm'n,* 23 F.3d 1071, 1079 (6th Cir. 1994). While the Guantanamo detainee cases are of "extraordinary public moment," as Respondents indicate*, see* Mot. to Stay, at 12 n.7 (quoting *Landis*, 299 U.S. at 256), their singular importance lies in whether the *habeas* remedy will remain a practical safeguard against arbitrary and indefinite executive detention.

If Petitioners are forced to wait for months and possibly years for general legal issues to be litigated before they can begin to develop and present evidence regarding their individual cases, their *habeas* rights will have been crippled even if they ultimately prevail. The issue presented by the Petition is whether there is a legal basis for the individual Petitioners' continued imprisonment, and having to wait years in confinement for their particular cases even to be taken up by the courts would in itself constitute a significant failure of constitutional *habeas* protections. This failure would harm not only the individual Petitioners, but also the public interest in the preservation of effective constitutional rights.

Because of the great public interest in a prompt and fair adjudication of this issue, the Court should deny Respondents' motion.

## CONCLUSION

For the foregoing reasons, Petitioners respectfully request that the Court deny

Respondent's motion to stay all proceedings in this case.


Dated: January 5, 2006                    Respectfully submitted,

                                          DECHERT LLP
                                          *Counsel for Petitioners*


                                          By: _____
                                          Rebecca Dick
                                          D.C. Bar No. 463197
                                          R. Michael Smith
                                          D.C. Bar No. 372654
                                          1775 Eye Street, N.W.
                                          Washington, D.C.  20006
                                          202.261.3300

Daniel C. Malone
DECHERT LLP
30 Rockefeller Plaza                      George G. Gordon
New York, NY  10112                       Peter M. Ryan
212.698.3500                              DECHERT LLP
                                          Cira Centre
                                          2929 Arch Street
                                          Philadelphia, PA  19104-2808
                                          215.994.4000

*PREVIOUSLY FILED WITH CSO AND*
*CLEARED FOR PUBLIC FILING*

## CERTIFICATE OF SERVICE

I, Peter M. Ryan, hereby certify that on January 19, 2006, I cause to be served via email a true and correct copy of (1) the foregoing Petitioners' Memorandum of Points and Authorities in Opposition to Respondents' Motion to Stay Proceedings; and (2) the Declaration of Peter M. Ryan in support thereof on the following counsel of record for Respondents:

Preeya M. Noronha
Preeya.Noronha@usdoj.gov
United States Department of Justice
Civil Division - Federal Programs Branch
20 Massachusetts Avenue, N.W., Room 7226
Washington, D.C.  20530
(202) 514-3338

Terry M. Henry
Terry.Henry@usdoj.gov
Senior Trial Attorney
United States Department of Justice
Civil Division - Federal Programs Branch
20 Massachusetts Avenue, N.W., Room 7144
Washington, D.C.  20530

Peter M. Ryan