*PREVIOUSLY FILED WITH CSO AND
CLEARED FOR PUBLIC FILING*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **ABDULLAH WAZIR ZADRAN, et al.,** | : | |
| | : | |
| *Petitioners/Plaintiffs,* | : | **Case No. 05-CV-2367 (RWR)** |
| | : | |
| **v.** | : | |
| | : | |
| **GEORGE W. BUSH, et al.,** | : | |
| | : | |
| *Respondents/Defendants.* | : | |
| | : | |

## DECLARATION OF PETER M. RYAN IN SUPPORT OF PETITIONERS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO RESPONDENTS' MOTION TO STAY PROCEEDINGS

I, Peter M. Ryan, make the following statements to the best of my personal knowledge and belief:

1.     I am an attorney at the law firm of Dechert LLP, Cira Centre, 2929 Arch Street, Philadelphia, Pennsylvania 19104-2808. I am licensed to practice law in the Commonwealth of Pennsylvania and the State of New York. Dechert LLP represents Petitioners Abdullah Wazir Zadran, Zahir Shah, Abdul Haq, Abdul Barri, Mohammad Wabi Umari, Gul Hyat Khan, Abdulla Mujahid Haq, Farid Ahmed, Mohammad Rahim, Mohammad Karim, Mohammad Zahir, Abdul Wahab, Ghulam Roohani, Ghulam Jeelani, Dr. Hiyatullah, Dr. Abdul Zahir, Chaman Gul Khialigol, and Honorgol Khailigol in the above-captioned action. I make this declaration in support of Petitioners' Memorandum of Points and Authorities in Opposition to Respondents' Motion to Stay Proceedings.

2.     Attached hereto as Exhibit A is a true and correct copy of an Order to Show Cause issued in *Tumani v. Bush*, No. 05-CV-526 (RMU) (Order dated Apr. 19, 2005).

3.      Attached hereto as Exhibits B through D are true and correct copies of government documents released under a court order entered in litigation brought under the Freedom of Information Act. *See American Civil Liberties Union v. Department of Defense*, No. 04-CV-4151 (AKH) (S.D.N.Y.).

I declare under penalty of perjury that the foregoing is true to the best of my knowledge and belief. Executed on January 5, 2006.

PETER M. RYAN

# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MUHAMMED KAHN TUMANI,
*et al.*,                                        :
                                                 :
                                                 :
          Petitioners/                           :
          Plaintiffs,                            :          Civil Action No.:      05-0526 (RMU)
                                                 :
                                                 :
          v.                                     :
                                                 :
GEORGE W. BUSH *et al.*,                          :
                                                 :
          Respondents/                           :
          Defendants                             :

## ORDER

### DIRECTING THE DEFENDANTS TO SHOW CAUSE AND SUBMIT FACTUAL RETURNS

Before the court is the plaintiffs' petition for a writ of habeas corpus. "A court, justice or judge entertaining an application for a writ of habeas corpus shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto." 28 U.S.C. § 2243. In addition, "[t]he person to whom the . . . order is directed *shall* make a return certifying the true cause of the detention." *Id.* (emphasis added).

The government takes the position that "[i]t makes no sense for proceedings related to the merits of these cases, such as submission of factual returns in response to orders to show cause regarding the issuance of habeas writs, to go forward when decisions from the D.C. Circuit . . . will determine the legal analyses applicable to the cases[.]" Defs.' Mot. to Stay at 9. Furthermore, the government argues that requiring submission of factual returns burdens the

government's resources and risks the inadvertent disclosure of classified information. *Id.* at 12-13.

The fact that the D.C. Circuit has not yet issued its decision in the related appeals (or that this case is stayed pending the D.C. Circuit's decision on those appeals) does not prevent the government from processing the returns. On the contrary, the court determines that petitioners' counsel should be able to review the returns now so that they can develop their case and prepare for any consultation with their clients. As to the government's concerns regarding classified information, the protective orders entered in this case will guard against any inadvertent disclosures. Finally, the government's generic references to the expenditures of its resources and logistical burden does not persuade the court to delay ordering the returns; the court is confident that the government can handle this task.

Accordingly, it is this 19th day of April, 2005,

**ORDERED** that the defendants shall show cause why the writ should not be granted and submit factual returns within 90 days of this order.

**SO ORDERED.**

RICARDO M. URBINA
United States District Judge

# EXHIBIT B



‹ {{MSG001 RTF                                                                          Page 1

b6 -1
b7C -1

From  Caproni, Valene E  (OGC) (FBI)
To                              (INSD) (FBI)
b6 -1
b7C -1    cc
Subject  RE GTMO

SENSITIVE BUT UNCLASSIFIED
NON-RECORD

b5 -3

-----Original Message-----
b6 -1    From                        (INSD) (FBI)
b7C -1    Sent  Monday, August 16, 2004 2 49 PM
To  Caproni, Valene E  (OGC) (FBI)
Subject  FW  GTMO

SENSITIVE BUT UNCLASSIFIED
NON-RECORD

This should be the last one   Let me know followup or not

-----Original Message-----
b6 -1    From                      (OM) (FBI)
b7C -1    Sent  Friday, July 30, 2004 1 56 PM
To                          (INSD) (FBI)
Subject  RE  GTMO

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 11-03-2004 BY 61579

SENSITIVE BUT UNCLASSIFIED
NON-RECORD

b6 -1
b7C -1

Following a detainee interview exact date unknown,  while leaving the interview building at Camp Delta
at approximately 8 30 p m  or later, I heard and observed in the hallway loud music and flashes of light   I
walked from the hallway into the open door of a monitoring room to see what was going on   From the
monitoring room,  I looked inside the adjacent interview room   At that time I saw another detainee
sitting on the floor of the interview room with an Israeli flag draped around him, loud music being played
and a strobe light flashing   I left the monitoring room immediately after seeing this activity   I did not see
any other persons inside the interview room with the Israeli flag draped detainee, but suspect that this
was a practice used by the DOD DHS since the only other persons inside the hallway near this particular
interview room were dressed in green military fatigues, similar to the ones worn by DOD DHS and the
DOD MP Unformed Reservists   At no time did I observe any physical assaults take place of this
detainee nor any others while assigned to GTMO
    I understood prior to deployment to GTMO, that such techniques were not allowed, nor approved by
FBI policy   While at GTMO no such techniques were never conducted to my knowledge by any of the

DETAINEES-1414

1414

4737



{{MSG001 RTF                                                                Page 2

b6 -1
b7C -1

CITF personnel assigned at GTMO
    Approximately one or two days later,  DHS tactics were discussed at a weekly held CITF staff meeting
Many of the CITF investigators discussed how some of the DHS tactics had  been counterproductive in
building rapport with detainees who were being interviewed by CITF members  Acting FBI SSA

b6 -1                        advised that no CITF personnel including FBI agents were to take part in any such
b7C -1          interviews or interrogations which fell outside the FBI's policy of interviewing detainees  ASSA
                            also advised us that if we became aware of any similar instances where agressive DHS
                tactics had been observed to notify him, provide details, and he would make these instances known to
                appropriate GTMO DOD and DOJ officials  It should be noted that while at GTMO, ASSA
                acted in an exemplary manner and represented the FBI as a consumate professional  This summary
                details the only incident I have to report regarding observing a non-FBI approved tactic being used on a
                detainee at GTMO

b6 -1
b7C -1          FBI Omaha
                Des Moines R A
b2 -1

b6 -1           -----Original Message-----
b7C -1          From                          (INSD) (FBI)
                Sent  Thursday, July 29, 2004 9 59 AM
                To                        (OM) (FBI)
                Subject  RE  GTMO


                SENSITIVE BUT UNCLASSIFIED
                NON-RECORD


                Could you please provide a short summary of what you observed   Thanks

                -----Original Message-----
b6 -1           From               (OM) (FBI)
b7C -1          Sent  Friday, July 09, 2004 4 20 PM
                To                          (INSD) (FBI)
                Subject  RE  GTMO


                SENSITIVE BUT UNCLASSIFIED
                NON-RECORD


b6 -1
b7C -1              While at GTMO I observed some non-FBI policy treatment which was conducted by non-Bureau and
                non-CITF personnel being used on one detainee  I did not observe any physical mistreatment of any
b6 -1           detainee
b7C -1
                FBI Omaha
                Des Moines R A
b2 -1
                -----Original Message-----


                                                        DETAINEES-1415

                                                                                        1415

                                                                            4738

# EXHIBIT C

{{MSG016 RTF     SECRET                                                          Page 1

b6 -1
b7C -1

From                          (INSD) (FBI)     b6 -1
To  Caproni, Valerie E ,(OGC) (FBI)           b7C -1
cc
Subject  FW  GTMO

SENSITIVE BUT UNCLASSIFIED
NON-RECORD

Here is the second summary  One more to go
-----Original Message-----
From                          BS) (FBI)       b6 -1
Sent  Monday, August 02, 2004 10 48 AM        b7C -1
To                          (INSD) (FBI)
Subject  RE  GTMO

SENSITIVE BUT UNCLASSIFIED
NON-RECORD

Mr                                            b6 -1
                                              b7C -1

As requested, here is a brief summary of what I observed at GTMO

On a couple of occasions, I entered interview rooms to find a detainee chained hand and foot in a fetal
position to the floor, with no chair, food, or water  Most times they had urinated or defecated on
themselves, and had been left there for 18, 24 hours or more  On one occasion, the air conditioning
had been turned down so far and the temperature was so cold in the room, that the barefooted detainee
was shaking with cold  When I asked the MP's what was going on, I was told that interrogators from the
day prior had ordered this treatment, and the detainee was not to be moved  On another occasion, the
A/C had been turned off, making the temperature in the unventilated room probably well over 100
degrees  The detainee was almost unconcious on the floor, with a pile of hair next to him  He had
apparently been literally pulling his own hair out throughout the night  On another occasion, not only
was the temperature unbearably hot, but extremely loud rap music was being played in the room, and
had been since the day before, with the detainee chained hand and foot in the fetal position on the tile
floor

Any questions, feel free to call or ask via email                              b2 -1
-----Original Message-----                                                     b6 -1
From                          (INSD) (FBI)                                     b7C -1
Sent  Thursday, July 29, 2004 10 58 AM        b6 -1
To                          (BS) (FBI)        b7C -1
Subject  RE  GTMO

SENSITIVE BUT UNCLASSIFIED
NON-RECORD

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED EXCEPT
WHERE SHOWN OTHERWISE

DATE: 11-09-2004
CLASSIFIED BY  6154 DMG/KCF/RSC 05-CV-4151
REASON: 1.4 (C)
DECLASSIFY ON:  XXXXXXXXXX

SECRET

# EXHIBIT D

OCT 27 2004    9 24AM    SECRET    NO 254    P 2



U S Department of Justice

Federal Bureau of Investigation

Washington, D C 20535-0001

July 14, 2004

Major General Donald J. Ryder
Department of the Army
Criminal Investigation Command
6010 6th Street
Fort Belvoir, Virginia 22060-5506

Re. Suspected Mistreatment of Detainees

Dear General Ryder

      I appreciate the opportunity I had to meet with you last week. As part of a follow up on our discussion on detainee treatment, I would like to alert you to three situations observed by agents of the Federal Bureau of Investigation (FBI) of highly aggressive interrogation techniques being used against detainees in Guantanamo (GTMO). I refer them to you for appropriate action

b6 -1,2
b7C -1,2

    1 During late 2002, FBI Special Agent ▢▢▢▢▢▢ was present in an observation room at GTMO and observed ▢▢▢▢▢ (first name unknown) ▢▢▢▢ conducting an interrogation of an unknown detainee. (SA ▢▢▢▢▢ was present to observe the interrogation occurring in a different interrogation room ) ▢▢▢▢▢ entered the observation room and complained that curtain movement at the interrogation window was distracting the detainee, although no movement of the curtain had occurred. She directed a marine to duct tape a curtain over the two-way mirror between the interrogation room and the observation room SA ▢▢▢▢▢ characterized this action as an attempt to prohibit those in the observation room from witnessing her interaction with the detainee Through the surveillance camera monitor, SA ▢▢▢▢▢ then observed ▢▢▢▢▢ position herself between the detainee and the surveillance camera The detainee was shackled and his hands were cuffed to his waist. SA ▢▢▢▢▢ observed ▢▢▢▢▢ apparently whispering in the detainee's ear, and caressing and applying lotion to his arms (this was during Ramadan when physical contact with a woman would have been particularly offensive to a Moslem male). On more than one occasion the detainee appeared to be grimacing in pain, and ▢▢▢▢▢ hands appeared to be making some contact with the detainee. Although SA ▢▢▢▢▢ could not see her hands at all times, he saw them moving towards the detainee's lap He also observed the detainee pulling away and against the restraints Subsequently, the marine who had previously taped the curtain and had been in the interrogation room with ▢▢▢▢▢ during the interrogation re-entered the observation room

66F-HQ-A1234210          DETAINEES-3823
TJH.tjh (2)





SECRET

4622

SECRET

General Donald J. Ryder

b6 -1,2
b7C -1,2

SA [    ] asked what had happened to cause the detainee to grimace in pain. The marine said [    ] had grabbed the detainee's thumbs and bent them backwards and indicated that she also grabbed his genitals. The marine also implied that her treatment of that detainee was less harsh than her treatment of others by indicating that he had seen her treatment of other detainees result in detainees curling into a fetal position on the floor and crying in pain.

2. Also in October 2002, FBI Special Agent [    ] was observing the interrogation of a detainee when [    ] a civilian contractor, came into the observation room and asked SA [    ] to come see something. SA [    ] then saw an unknown bearded, long-haired detainee in another interrogation room. [    ] SA [    ] asked Mr. [    ] whether the detainee had spit at the interrogators. Mr. [    ] laughed and stated that the detainee had been chanting the Koran and would not stop. Mr. [    ] did not answer when SA [    ] asked [    ]

b1
b6 -1,2,5
b7C -1,2,5

b6 -4
b7C -4

3. In September or October of 2002 FBI agents observed that a canine was used in an aggressive manner to intimidate detainee [    ] and, in November 2002, FBI agents observed Detainee [    ] after he had been subjected to intense isolation for over three months. During that time period, [    ] was totally isolated (with the exception of occasional interrogations) in a cell that was always flooded with light. By late November, the detainee was evidencing behavior consistent with extreme psychological trauma (talking to non-existent people, reporting hearing voices, crouching in a corner of the cell covered with a sheet for hours on end). It is unknown to the FBI whether such extended isolation was approved by appropriate DoD authorities.

b6 -2
b7C -2

These situations were referenced in a May 30, 2003 electronic communication (EC) from the Behavioral Analysis Unit of the FBI to FBI Headquarters. That EC attached, among other documents, a draft Memorandum for the Record dated 15 January 2003 from Capt [    ] (USAFR), that refers to the first two events among others in a time line of events related to discussions concerning the use of aggressive interrogation techniques. Marion Bowman of the FBI's Office of General Counsel discussed the contents of those communications with Mr. Dietz, Deputy General Counsel (Intelligence) and Mr. Del'Orto, Deputy General Counsel of DoD, around the time the EC was received. Although he was assured that the general concerns expressed, and the debate between the FBI and DoD regarding the treatment of detainees was known to officials in the Pentagon, I have no record that our specific concerns regarding these three situations were communicated to DoD for appropriate action.

2

DETAINEES-3824

SECRET

4623

OCT 27 2004    9 25A 1               SECRET                         ꞏ )      'IC 054    P 4

General Donald J. Ryder

If I can provide any further information to you, please do not hesitate to call.

Sincerely yours,

T.J. Harrington
Deputy Assistant Director
Counterterrorism Division

DETAINEES-3825

3

SECRET

4624