IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

ABDULLAH WAZIR ZADRAN, et al.,

    *Petitioners/Plaintiffs*,

v.

GEORGE W. BUSH, et al.,

    *Respondents/Defendants*.

Case No. 1:05-CV-2367 (RWR)

---

**REPLY BRIEF IN SUPPORT OF MOTION TO REINSTATE
TOORAN AMANNULLAH AS A PETITIONER IN THIS ACTION**

Respondents offer two arguments why the Court should not reinstate Tooran Mohammad Amannullah ("Mr. Amannullah") as a Petitioner in this action. The first is unsupported by any legal authority, and the second is untenable in light of recent holdings of this Court and the United States Supreme Court. Both arguments are aimed at ensuring that Mr. Amannullah does not communicate with his attorney for years to come.

Respondents first seek to trap Petitioner in a Catch-22: Respondents will not acquiesce in Mr. Amannullah's reinstatement until he is "identified" – by which Respondents apparently mean that they have revealed his Internment Serial Number, or ISN. Yet while he remains a non-party they have neither responded to a message providing additional information about him nor identified what additional information they want. Counsel's e-mail to Respondents of June 28, 2006, stating Petitioner's age, level of education, and the location and possible date of his

detention remains unanswered and unacknowledged. *See* Declaration of Rebecca P. Dick ("Dick Decl."), Ex. A.

Moreover, Protective Order procedures are the only mechanism by which Respondents permit detainees to communicate with counsel retained by their next friends. Until Mr. Amannullah is reinstated and his counsel becomes subject to its restrictions with respect to communications with him, he will be unable to correspond or meet with his attorney, or even to know that he has one, even after his ISN is identified.

Respondents' second objection to the reinstatement of Tooran Amannullah has already been expressly rejected by this Court on the basis of recent guidance from the Supreme Court:

> One of the disputed matters on appeal before the District of Columbia Circuit has been resolved by decision of the United States Supreme Court in *Hamdan v. Rumsfeld*, __U.S.__, 2006 WL 1764793 (June 29, 2006), where the Court made clear that this court retains jurisdiction over this habeas corpus petition.

*Hamoud v. Bush*, Civil No. 05-1894 (RWR) (D.D.C. July 5, 2006) at 1 n.1. *See* Dick Decl., Ex. B.

### I. Reinstatement of Mr. Amannullah Would Lead to His Identification by Respondents and Application of the Protective Order, Enabling Him to Communicate with Counsel

*A. There is uncontroverted record evidence that Mr. Amannullah is at Guantanamo*

The undisputed record evidence in this case is that Mr. Amannullah remains at Guantanamo. Attached to the original petition in this action on December 9, 2006, was a statement by Mr. Amannullah's next friend that Mr. Amannullah was being held at Guantanamo. This was supplemented by the declaration of counsel filed with the July 13, 2006, motion to reinstate Mr. Amannullah, which reported a more recent conversation with the next friend confirming that Mr. Amannullah remains at Guantanamo. Respondents have submitted no

2

evidence whatsoever. In the face of uncontroverted record evidence that Mr. Amannullah is being detained at Guantanamo, there is no basis for refusing to reinstate him into this case.

*B. Absent reinstatement, Respondents are unlikely to take steps that would enable Mr. Amannullah to meet with counsel*

Respondents assert that reinstating Mr. Amannullah would "serve no purpose." Respondents' Opposition to Petitioners' Motion for Reinstatement of Petitioner Tooran Mohammad Amannullah ("Brief in Opp.") at 2. But reinstatement would serve one immediate and critical purpose, among others – it would re-start the stalled process of determining Mr. Amannullah's ISN, a prerequisite to his receiving correspondence from, sending correspondence to, and meeting with his counsel.

While Mr. Amannullah has been absent from the case, counsel has contacted Respondents twice about Mr. Amannullah. One June 23, 2006, counsel inquired whether he could be detainee ISN 970, whose name is listed on Defense Department records as "Amanullah (Last Name Unknown)." Respondents answered that a name is insufficient for identification and demanded more information, without specifying what would be sufficient. When additional information was provided by counsel on June 28, 2006, however, Respondents were silent. They have never responded to counsel's last message.

According to a reputable news report, there are about 100 detainees from Afghanistan at Guantanamo. J. White, "Military Officials Cancel Guantanamo Visits by Lawyers and Journalists," Washington Post (June 15, 2006). *See* Dick Decl., Ex. C. Respondents claim to know enough about each of them to justify confining them indefinitely under harsh conditions. *See, e.g.*, Radio Interview with Secretary Rumsfeld and Fred Thompson, ABC News Radio: *Inside the Pentagon – A Conversation with Donald Rumsfeld – 4th of July Special* (July 4, 2006)

3

at 2, *available at* http://www.defenselink.mil/transcripts/2006/tr20060704-13405.html ("[T]he people that are in . . . Guantanamo, are terrorists. . . . These people are dedicated terrorists who are determined to kill Americans and our friends and allies around the world. And, if we treat them on a law enforcement basis, it would mean that they would be tried, put in prison and then let loose. And they'd go right back to the battlefield and kill additional Americans.") *See* Dick Decl., Ex. D.

While apparently there have been at least two detainees named Tooran Amannullah, there cannot have been a large number who are named Tooran Mohammad Amannullah, have a brother named Mirra Jaan, are in their fifties, were arrested in the town of Mandanshar reportedly on March 12, 2004, and have a high school education with some university training. Respondents have not stated that Mr. Amannullah is *not* at Guantanamo. Clearly, Mr. Amannullah's ISN is unlikely to be identified promptly unless he is part of a legal proceeding that compels Respondents' cooperation.

*C. Even with identification of Mr. Amannullah's ISN, counsel will be unable to communicate with him until he is reinstated*

The only way detainees are permitted by the Respondents to communicate with their attorneys is under the aegis of the Protective Order. Of course, that order does not apply to communications between counsel and non-parties. Until Mr. Amannullah is reinstated as a party in this case, he will be unable to communicate with his counsel, to or know that he has one, since no Protective Order procedure will be available to govern those communications.

*D. The federal rules establish a liberal standard for reinstatement under the circumstances of this case*

Federal Rule of Civil Procedure 21 provides that "parties may be dropped or added by order of the court on motion of any party." As with other amendments to the petition early in litigation, leave to amend is to be liberally granted. *See Hartford Ins. Co. v. Socialist People's Libyan Arab Jamahiriya*, 422 F. Supp. 2d 203, 206-07 (D.D.C. 2006) (finding no undue prejudice by addition of new plaintiffs); *In re Vitamins Antitrust Litigation*, 217 F.R.D. 34 (D.D.C. 2003) (permitting addition of new defendants despite plaintiffs' delay). Respondents have not identified any prejudice to them that would result from reinstating Mr. Amannullah at this time.

Moreover, Respondents cite no legal requirement that Mr. Amannullah's ISN be known prior to his becoming a party. Nor could there be such a requirement: neither the next friend who authorizes a Guantanamo *habeas* suit nor counsel knows a detainee's ISNs at the time of filing, since Respondents do not connect ISNs and particular detainees until after petitions are filed.[1]

When this petition was filed, none of the Petitioners had yet been identified by Respondents. Respondents did not assert that this prevented the filing of the case. Knowing they could be subject to court sanctions if they failed to cooperate, Respondents worked post-

---

[1] In response to a court order in a Freedom of Information Act case, Respondents released a list of detainee names and ISNs. Respondents' position apparently is that this list is not sufficient, without more, to identify reliably which detainee holds which ISN. List of Individuals Detained by the Department of Defense at Guantanamo Bay, Cuba from January 2002 through May 15, 2006, *available at* http://www.defenselink.mil/news/May2006/d20060515%20List.pdf) (last modified May 15, 2006). *See* Dick Decl., Ex. E.

5

filing with Petitioners to determine the ISNs of all of the Petitioners except Mr. Amannullah. If Mr. Amannullah is reinstated, he will be in the same position he held before he was dismissed without prejudice – he will be named in the Petition but not yet identified by Respondents.

Finally, Respondents will not be prejudiced by Mr. Amannullah's reinstatement. Progress on the merits of this litigation has been stayed pending certain decisions by the higher courts, so the reinstatement of Mr. Amannullah will not delay the case's resolution. Respondent have not claimed prejudice. Under the liberal standards governing the addition of a party early in litigation, he should be reinstated as a petitioner in this action.

## II. This Court Has Jurisdiction to Reinstate Mr. Amannullah

*A. Neither the Detainee Treatment Act nor* Hamdan *suggests that this Court lacks jurisdiction to reinstate Mr. Amannullah*

Respondents also contend that the Detainee Treatment Act of 2005, Pub. L. No. 109-148, tit. X, 119 Stat. 2680 ("DTA"), deprives this Court of jurisdiction to reinstate Mr. Amannullah. As this Court has recognized, however, *Hamdan v. Bush* holds otherwise. __U.S.__, 2006 WL 1764793 (June 29, 2006), *13-16 & n.15 ("we conclude that § 1005(e)(1) [of the Detainee Treatment Act] does not strip federal courts' jurisdiction over cases pending on the date of the DTA enactment"); *Hamoud v. Bush*, Civil No. 05-1894 (RWR) (D.D.C. July 5, 2006) at 1 n.1 ("the Court made clear that this court retains jurisdiction over this habeas corpus petition"). *See* Dick Decl., Ex. B.

*B. Regardless of the higher courts' reading of the DTA, Guantanamo detainees will retain the right to communicate with their attorneys*

As this Court has held, the Guantanamo detainees will retain the right to communicate with their counsel regardless of the outcome of pending litigation about aspects of that statute.

Respondents have not argued otherwise. *Said v. Bush*, Memorandum Order, No. 05-2384 (RWR) at 4 (D.D.C. May 23, 2006) ("[w]hatever forum is ultimately held to be the proper one to rule on a pre-DTA habeas petition, it is hardly sensible to withhold what no one disputes Petitioners will ultimately be likely to receive . . ."). See Dick Decl., Ex. F. There is no reason to delay reinstating Mr. Amannullah, a step that is a prerequisite invoking the Protective Order so that he can communicate with his counsel.

*C. Respondents seek to alter dramatically the terms of the current informal and partial stay*

Respondents cite the Supreme Court's unrelated observation in *Hamdan* it was not passing on whether some or any of the *habeas* cases pending when the DTA was enacted should be transferred to the Court of Appeals. Opp. Brief at 3, *citing Hamdan*, slip op. at 18, n.14. The Court merely makes the unremarkable observation that the effects of the DTA remain a matter of litigation. The high court's statement does not come close to providing authority for the immediate transfer of the Guantanamo *habeas* cases to the Court of Appeals or for their complete suspension until that step is taken.

The D.C. District Court has already decided how to proceed while open issues relating to the DTA are resolved. After the DTA was passed, the Court continued to observe a previously imposed partial stay and continued to manage pending *habeas* cases with respect to certain procedural matters, including access to counsel, while postponing progress on substantive issues. The informal, partial stay has permitted a variety of matters to be heard and decided. The Court has continued to enter Protective Orders and orders for 30 days' notice prior to the transfer of detainees, to decide next friend challenges, and to hear and resolve issues relating to detainee access to their attorneys. The present motion seeks only to have the Court continue to manage

procedural issues, including ones that relate in part to access to counsel. Respondents' argument constitutes an indirect and unwarranted attack on the terms of the stay currently in place and should be rejected.

## Conclusion

Reinstatement of Mr. Amannullah is sought, among other reasons, so that his ISN can be determined promptly and communications between him and his attorney can be governed by the Protective Order, steps that are necessary before he can open communications with his counsel. This Court retains jurisdiction to order his reinstatement. The motion to reinstate Tooran Mohammad Amannullah as a petitioner in this case should therefore be granted at once.

RESPECTFULLY SUBMITTED,

Dated: July 18, 2006

*/s/ Rebecca P. Dick*
Rebecca P. Dick
Peter M. Ryan
Carolyn M. Welshhans
DECHERT LLP
1775 I Street, N.W.
Washington, D.C. 20006
(202) 261-3300
Fax: (202) 261-3333

*Counsel for Petitioners*