IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

GHOLAM RUHANI,           )
                                     )
                                     )
          Petitioner,        )
                                     )
        v.                  )        Civil Action No. 05-2367 (RWR)
                                     )
GEORGE W. BUSH, *et al.*,   )
                                     )
          Respondents.     )
_____)

## DECLARATION OF DAVID N. COOPER

Pursuant to 28 U.S.C. § 1746, I, Lieutenant Colonel David N. Cooper, Judge Advocate General's Corps, United States Air Force Reserve , hereby state that to the best of my knowledge, information, and belief, the following is true, accurate and correct:

1.      I am the Legal Advisor to the Office for the Administrative Review of the Detention of Enemy Combatants at U.S. Naval Base Guantanamo Bay, Cuba (OARDEC). In that capacity I am an advisor to the Director, Combatant Status Review Tribunals.

2.      I hereby certify that the documents attached hereto constitute a true and accurate copy of the portions of the record of proceedings before the Combatant Status Review Tribunal related to petitioner Gholam Ruhani that are suitable for public release. The portions of the record that are classified or considered law enforcement sensitive are not attached hereto or were redacted by an OARDEC staff member. This staff member also redacted information that would personally identify certain U.S. Government personnel in order to protect the personal privacy and security of those individuals.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: _10 August 2006_                          

                                                 David N. Cooper
                                               Lt Col, JAG Corps, USAFR



# Department of Defense
## Director, Combatant Status Review Tribunals

OARDEC/Ser: 0 3 2 4
5 November 2004

FOR OFFICIAL USE ONLY

From:  Director, Combatant Status Review Tribunal

Subj:  **REVIEW OF COMBATANT STATUS REVIEW TRIBUNAL FOR DETAINEE ISN # 003**

Ref:    (a) Deputy Secretary of Defense Order of 7 July 2004
        (b) Secretary of the Navy Order of 29 July 2004

1. I concur in the decision of the Combatant Status Review Tribunal that Detainee ISN #003 meets the criteria for designation as an Enemy Combatant, in accordance with references (a) and (b).

2. This case is now considered final and the detainee will be scheduled for an Administrative Review Board.

J. M. McGARRAH
RADM, CEC, USN

Distribution:
NSC (Mr. John Bellinger)
DoS (Ambassador Prosper)
DASD-DA
JCS (J5)
SOUTHCOM (CoS)
COMJTFGTMO
OARDEC (Fwd)
CITF Ft Belvoir

4 Nov 04

MEMORANDUM

From: Legal Advisor
To:     Director, Combatant Status Review Tribunal

Subj:   LEGAL SUFFICIENCY REVIEW OF COMBATANT STATUS REVIEW TRIBUNAL
        FOR DETAINEE ISN # 003

Ref:    (a) Deputy Secretary of Defense Order of 7 July 2004
        (b) Secretary of the Navy Implementation Directive of 29 July 2004

Encl:   (1) Appointing Order for Tribunal #2 of 2 August 2004
        (2) Record of Tribunal Proceedings

1. Legal sufficiency review has been completed on the subject Combatant Status Review
Tribunal in accordance with references (a) and (b). After reviewing the record of the Tribunal, I
find that:

   a. The detainee was properly notified of the Tribunal process and made an unsworn
   statement at the Tribunal.

   b. The Tribunal was properly convened and constituted by enclosure (1).

   c. The Tribunal substantially complied with all provisions of references (a) and (b).

      1. Note that some information in exhibit R-3 was redacted. The FBI
      properly certified in exhibit R-2 that the redacted information would not
      support a determination that the detainee is not an enemy combatant.

      2. Tribunal expressed frustration and dissatisfaction with redactions made
      by the FBI in exhibit R-3. The Tribunal requested and obtained an
      unredacted copy of the exhibit from the Recorder. It was appropriate for
      the Tribunal to request the document, but it was inappropriate for the
      original document to be provided without the permission of the originating
      agency. While the Tribunal's frustration is understandable, they simply do
      not have the authority to override a Federal agency's decision to redact
      information from documents provided to the Tribunal – especially where
      the agency has provided a certification that the redacted information
      would not support a determination that the detainee is not an enemy
      combatant. The Tribunal Decision Report indicates that the original copy
      of the exhibit in question was appended to exhibit R-3, the redacted
      version. The original version is not contained in the Record of
      Proceedings, however. Whether it was never inserted or was either
      intentionally or inadvertently removed from the Record of Proceedings is

Subj:  LEGAL SUFFICIENCY REVIEW OF COMBATANT STATUS REVIEW TRIBUNAL
FOR DETAINEE ISN # 003

unclear.  I have not sought to re-insert the original document into the
record in order to comply with the FBI's request that the information not
be disseminated.  Since the Tribunal did not find the document persuasive,
there is no harm to the detainee by not including the document in the
Record.  Although it was an error to provide the document to the Tribunal,
there is no reason to return the Tribunal Report for further proceedings.

d.  The detainee made no requests for witnesses or other evidence.

e.  The Tribunal's decision that detainee # 003 is properly classified as an enemy
combatant was unanimous.

f.  Personal Representative was given the opportunity to review the record of proceedings
and declined to submit comments to the Tribunal.

2.  The proceedings and decision of the Tribunal are legally sufficient and no corrective action is
required.

3.  I recommend that the decision of the Tribunal be approved and the case be considered final.

JAMES R. CRISFIELD JR.
CDR, JAGC, USN

UNCLASSIFIED



Department of Defense
Director, Combatant Status Review Tribunals

2 August 2004

From: Director, Combatant Status Review Tribunals

Subj: APPOINTMENT OF COMBATANT STATUS REVIEW TRIBUNAL #2

Ref: (a) Convening Authority Appointment Letter of 9 July 2004

By the authority given to me in reference (a), a Combatant Status Review Tribunal established by "Implementation of Combatant Status Review Tribunal Procedures for Enemy Combatants Detained at Guantanamo Bay Naval Base, Cuba" dated 29 July 2004 is hereby convened. It shall hear such cases as shall be brought before it without further action of referral or otherwise.

The following commissioned officers shall serve as members of the Tribunal:

 <u>MEMBERS</u>:

, Colonel, U.S. Marine Corps; President

████████, Lieutenant Colonel, U.S. Army; Member (JAG)

████████, Lieutenant Colonel, U.S. Air Force; Member

J. M. McGARRAH
Rear Admiral
Civil Engineer Corps
U.S. Naval Reserve



**HEADQUARTERS, OARDEC FORWARD**
GUANTANAMO BAY, CUBA
APO AE 09360

17 September 2004

MEMORANDUM FOR DIRECTOR, CSRT

FROM: OARDEC FORWARD Commander

SUBJECT: CSRT Record of Proceedings ICO ISN# 003

1. Pursuant to Enclosure (1), paragraph (I)(5) of the *Implementation of Combatant Status Review Tribunal Procedures for Enemy Combatants Detained at Guantanamo Bay Naval Base, Cuba* dated 29 July 2004, I am forwarding the Combatant Status Review Tribunal Decision Report for the above mentioned ISN for review and action.

2. If there are any questions regarding this package, point of contact on this matter is the undersigned at DSN ███████.

DAVID L. TAYLOR
Colonel, USAF

SECRET//NOFORN//X1

**(U) Combatant Status Review Tribunal Decision Report Cover Sheet**

(U) This Document is UNCLASSIFIED Upon Removal of Enclosures (2) (3) and (4).

(U) TRIBUNAL PANEL: ___#2___

(U) ISN#: ___003___

Ref:  (a) (U) Convening Order for Tribunal #2 of 2 August 2004 (U)
     (b) (U) CSRT Implementation Directive of 29 July 2004 (U)
     (c) (U) DEPSECDEF Memo of 7 July 2004 (U)

Encl:  (1) (U) Unclassified Summary of Basis For Tribunal Decision (U)
     (2) (U) Classified Summary of Basis for Tribunal Decision (S/NF)
     (3) (U) Summary of Detainee/Witness Testimony (U/~~FOUO~~)
     (4) (U) Copies of Documentary Evidence Presented (S/NF)
     (5) (U) Personal Representative's Record Review (U)

1. (U) This Tribunal was convened on 31 August 2004 by references (a) and (b) to make a determination as to whether the detainee meets the criteria to be designated as an enemy combatant as defined in reference (c).

2. (U) On 31 August 2004 the Tribunal determined, by a preponderance of the evidence, that Detainee #003 is properly designated as an enemy combatant as defined in reference (c).

3. (U) In particular, the Tribunal finds that this detainee is a member of, or affiliated with, the Taliban, as more fully discussed in the enclosures.

4. (U) Enclosure (1) provides an unclassified account of the basis for the Tribunal's decision. A detailed account of the evidence considered by the Tribunal and its findings of fact are contained in enclosures (1) and (2).



Colonel, U.S. Marine Corps
Tribunal President

FOUO//LES

## Summarized Unsworn Detainee Statement, read by Personal Representative

Regarding the U.S. Government's Unclassified Summary of Evidence, dated 25 August 2004, defining that I am an enemy combatant, I, Gholam Ruhani, state the following:

I was forced into the Taliban Regime. The Taliban was the government. It was not pleasant for me to be there. I had a good life in the past. I had a store selling electrical equipment. My family and I worked in the shop.

The Taliban law was that young people had to join the Taliban. I had to join, but protested several times that I had an old father and I wanted to go back to my family.

I wasn't with the Taliban full-time; I was still running my store. I was required to check in with them every 10-15 days. One of the things I was required to do was to work security for a small group, but I had no position of authority or responsibility.

If I had not cooperated with the Taliban Intelligence service member, I would have been sent to the front lines. I was afraid I would be killed.

In order to cooperate with the Americans, I provided English to Pashtu translation at the 9 December 2001 meeting, during which I was captured. I thought it was a friendly meeting, of which I believed I was on the American's side.

Abdul Haq Wasiq and Haji Gholam Mohammad and an American called "Tony" were present at the meeting. I turned over my pistol and ammunition to the American, as an act of faith, because it was a friendly meeting. Everyone in Afghanistan carried a weapon at that time. I expected to leave the meeting and return to my life, my shop and my family. Instead, I was arrested.

## Summarized Unsworn Detainee Statement

This is the statement I wanted to present to the Tribunal, with the assistance of my Personal Representative.

The information he wanted to portray to the Tribunal was accurate.

I understand that all combatants against the United States were brought here. I never had a war against the United States and I am surprised I'm here.

This Tribunal was supposed to have happened 3 years ago. I have been here 3 years and I am not guilty.

My complaint is whether guilty or not, it [my case] is supposed to go to a Tribunal or court at the time of capture. I've been here 3 years and I'm going through the process now.

ISN# 003
Enclosure (3)
Page 1 of 6

FOUO//LES

FOUO//LES

I have no further statements, but am asking you to situate [evaluate] my situation.

## Summarized Answers to Questions by Tribunal Members

Q:      Did you grow up in Kabul?

A:      No, in a city called Ghazni.

Q:      Is that in Afghanistan?

A:      Yes.

Q:      Is the electronics shop where you work in Kabul?

A:      No, in my hometown, Ghazni.

Q:      How far is it from your town to Kabul?

A:      About 140 km.

Q:      How did you, from your town, end up working for the Taliban in Kabul, as opposed to in your own town?

A:      Only my name was with the Taliban group.  I didn't do anything with it.

Q:      I don't understand your answer.

A:      I was only with the Taliban system.  I had nothing to do with it.

Q:      When you registered with the Taliban, did you register in your town?

A:      I was working with them in Kabul only.

Q:      I still don't understand.  From your town, how did you end up working for the Taliban in Kabul?

A:      I was registered with the Taliban, but I didn't have anything to do with them.  I was just there, so I didn't go to the war.

Q:      Where did you register?

A:      In Kabul.

ISN# 003
Enclosure (3)
Page 2 of 6

FOUO//LES

Q:    When you registered, did they give you options as to how you would serve them?

A:    Like what?

Q:    Did they say you may have this job or that job?

A:    For the short time, I was doing deliveries for the Taliban.

Q:    When you went to the meeting where you were arrested, you had a pistol. Is that correct?

A:    Yes, all Afghan people carried a gun at that time.

Q:    Was that pistol your pistol, or was it provided to you by someone?

A:    It was my personal pistol.

Q:    Do you speak English or understand English?

A:    Yes, I do.

Q:    Did you provide translation services for either the Taliban or the Americans?

A:    I never translated for the Taliban.

Q:    In the summary of the evidence, it says that you served the Taliban Intelligence Service as a driver and as a clerk. Did you have any other responsibilities for them?

A:    I was not a cook or a translator. All I was, was delivery. For the short time I was only doing delivery. I wasn't translating or cooking either.

Q:    When you say delivery, what exactly do you mean?

A:    I had a small motorcycle…I was transporting small cars.

Q:    Give us an example of what you would deliver and to whom.

A:    I was transporting… the person that I was responsible, had a motorcycle…I was transporting, the guy that was the sponsor; I was transporting his car back and forth.

Q:    Would you transport people in the cars, as well?

FOUO//LES

FOUO//LES

A:    No.

Q:    It would appear to us that to work for the Taliban Intelligence Service is a position of trust.

A:    No, anybody can take the job out there.

Q:    Certainly the Taliban would not allow someone they did not trust to serve them in their Intelligence Service.

A:    I wasn't working as intelligence.  I was working in security.

Q:    Tell us more about your responsibilities in security.

A:    Those that lost their personal property, they were coming to complain, and I was looking for that... I'm sorry, I wasn't doing that.  The location that they come and report it, that's what they (inaudible).  Those people that lost personal stuff or whatever.

Q:    I'm not sure I quite understand the answer as it relates to my question.

A:    Can you repeat the question?

Q:    In the statement that you gave to us, through your Personal Representative, I believe you said that one of your responsibilities was that you provided security for a small group.

A:    I was working for a small district, and that was my responsibility for the security.

Q:    Did you have the responsibility to provide security for individuals?

A:    I wasn't the one doing that.  Our office handling the case, they were responsible for the area.  I wasn't the person doing it.

Q:    Did you carry your personal pistol whenever you were on duty?

A:    Even before I joined the Taliban, I still had my own personal gun.

Q:    Are you proficient in firing weapons?

A:    No.

Q:    Did the Taliban require you to use your weapon?

A:    No, I wasn't at war.

FOUO//LES

FOUO//LES

Q:    During the time when you were working for the Taliban, did you ever have to use your weapon?

A:    I never used my gun against anybody.

Q:    With your weapon, did you ever go to a firing range, a training range in Kabul?

A:    I never went to a firing range.

Q:    Your weapon was never fired, at all, in Kabul?

A:    No.

## Summarized Answers to Questions by Tribunal President

Q:    Where did you learn the English language?

A:    In the city of Ghazni, my hometown.

Q:    Was it at a school or college?

A:    It was personal courses.

Q:    Making reference again to the Unclassified Summary of Information, it indicates that when you were captured, you had in your possession ammunition.

A:    Yes, I had a gun and I turned it in to the Americans.

Q:    Besides the pistol, did you have any other weapons or ammunition in your possession?

A:    No.

Q:    Had you ever received training on any other weapon, besides the pistol?

A:    No, I didn't have any other training on other weapons.

Q:    Very well, thank you.

## Summarized Answers to Questions by Tribunal Members

Q:    What caliber was your pistol?

A:    The name was Makarov, I don't know the size of it.

FOUO//LES

Q:    How many years of formal education have you had?

A:    I only had 5 years.  Unfortunately I couldn't have any more.

Q:    What was the highest level you were able to attain?

A:    6th grade.

Q:    How old are you right now?

A:    About 26 years.

No further questions.

**Summarized Unsworn Detainee Statement**

I have no further statements.  All I want to say is that I am not guilty.  I am asking for your help.  I never was against the [United] States or [the Northern] Alliance.


**AUTHENTICATION**

I certify the material contained in this transcript is a true and accurate summary of the testimony given during the proceedings.



Colonel, U.S. Marine Corps
Tribunal President

ISN# 003
Enclosure (3)
Page 6 of 6

UNCLASSIFIED//~~FOUO~~

# UNCLASSIFIED SUMMARY OF BASIS FOR TRIBUNAL DECISION

### (Enclosure (1) to Combatant Status Review Tribunal Decision Report)

TRIBUNAL PANEL: _____#2_____

ISN #: _____003_____

## 1. Introduction

As the Combatant Status Review Tribunal (CSRT) Decision Report indicates, the Tribunal has determined that this detainee is properly classified as an enemy combatant and is a member of, or affiliated with, the Taliban. In reaching its conclusions, the Tribunal considered both classified and unclassified information. The following is an account of the unclassified evidence considered by the Tribunal and other pertinent information. Classified evidence considered by the Tribunal is discussed in Enclosure (2) to the CSRT Decision Report.

## 2. Synopsis of Proceedings

The unclassified summary of evidence presented to the Tribunal by the Recorder asserted that the Detainee admitted being a member of the Taliban. He was recruited into the Taliban by a supervisor in the Taliban Intelligence Service. The Detainee claimed to have worked as a driver and as a clerk from 1999 until his capture by U.S. forces. The Detainee was captured in the company of a senior Taliban intelligence member, Abdul Haq Wasiq, on 9 December 2001. The Detainee was in possession of 7.62 mm ammunition rounds when captured. The detainee chose to participate in the Tribunal process. He called no witnesses, requested no unclassified or classified documents be produced, and made an oral, unsworn statement.

The detainee, in his oral statement, admitted being a Taliban member but only admitted to performing low-level jobs and having minimal responsibilities. He denies having engaged in hostilities against the United States or the Northern Alliance.

## 3. Evidence Considered by the Tribunal

The Tribunal considered the following evidence in reaching its conclusions:

    a. Exhibits: D-a through D-d, R-1 through R-15

    b. Unsworn statements of the detainee

## 4. Rulings by the Tribunal on Detainee Requests for Evidence or Witnesses

The Detainee requested no witnesses nor requested any evidence be produced; therefore, no rulings on these matters were required.

UNCLASSIFIED//~~FOUO~~

UNCLASSIFIED//~~FOUO~~

**5. Discussion of Unclassified Evidence**

    a. The Tribunal found the following unclassified evidence persuasive in making its determinations:

        (1). Exhibit R-1, 25 August 2004, was partially persuasive in assisting the Tribunal in making its determination as to whether the Detainee was properly classified as an enemy combatant. The exhibit familiarized the Tribunal with the nature of the information concerning the Detainee, but was only partially persuasive because it was unsupported by any additional evidence.

        (2). See the Classified summary for discussion of Exhibit R-3, marked "For Official Use Only/Law Enforcement Sensitive ("FOUO/LES")

    b. The Tribunal found the following unclassified evidence unpersuasive in making its determinations:

        (1). Exhibit R-2, dated 6 August 2004, is a request by the Federal Bureau of Investigation (FBI) to redact information from the record of its interviews with the detainee. This interview is recorded on "FD Form 302" (in this case, dated 5 April 2002). The FBI asserts that the redacted information relates to the national security of the United States and that its inappropriate dissemination could damage the national security of the United States and compromise ongoing FBI investigations. Although the FBI provides an accompanying certification that the redacted information does not support a determination that the detainee is not an enemy combatant, it provides no justification or supporting evidence for this position. As such, this declaration, on its face, was not helpful to the Tribunal in reaching a determination as to whether the Detainee was properly classified as an enemy combatant.

        (2). Detainee Exhibit D-d (the Detainee's statement as introduced to the Tribunal by the Personal Representative) and the Detainee's statements at Enclosure 3 were, for the most part, not persuasive to the Tribunal, especially when the questions asked of the Detainee are included for consideration. Tribunal members were frustrated at the Detainee's nonresponsive answers to the questions posed to him. When these unclear answers kept occurring, and the Tribunal members verified that translation quality was not at issue, the Tribunal members gradually became convinced that the Detainee was intentionally not providing responsive answers to the questions that were asked.

The Tribunal also relied on certain classified evidence in reaching its decision. A discussion of the classified evidence is found in Enclosure (2) to the Combatant Status Review Tribunal Decision Report.

UNCLASSIFIED//~~FOUO~~

UNCLASSIFIED//~~FOUO~~

### 6. Consultations with the CSRT Legal Advisor

No issues arose during the course of this hearing that required consultation with the CSRT legal advisor.

### 7. Conclusions of the Tribunal

Upon careful review of all the evidence presented in this matter, the Tribunal makes the following determinations:

a. The detainee was mentally and physically capable of participating in the proceeding. No medical or mental health evaluation was requested or deemed necessary.

b. The detainee understood the Tribunal proceedings. He asked no questions regarding his rights and actively participated in the hearing.

c. The detainee is properly classified as an enemy combatant because he is a member of, or affiliated with, the Taliban.

### 8. Dissenting Tribunal Member's report

None. The Tribunal reached a unanimous decision.

Respectfully submitted,

Colonel, U.S. Marine Corps
Tribunal President

UNCLASSIFIED//~~FOUO~~

UNCLASSIFIED//~~FOUO~~

### Recorder Exhibit List
### For
### ISN █████████

| # | Title | Classification |
|---|-------|----------------|
| R1 | Unclassified Summary | UNCLASSIFIED |
| R2 | FBI Redaction Memo dtd 6 Aug 04 | UNCLASSIFIED |
| R3 | FBI 302 dtd 05 Apr 02 | FOUO, LES |
| R4 | CITF Form 40 dtd 06 May 04 | SECRET//NOFORN |
| R5 | JTF-GTMO Memorandum for Record dtd 02 Mar 02 | SECRET |
| R6 | JTF-GTMO Assessment Memo dtd 29 Mar 04 | SECRET |
| R7 | JTF-GTMO Memorandum for Record dtd 19 Feb 02 | SECRET/NOFORN |
| R8 | Polygraph Report of Examination dtd 19 Mar 04 | FOUO, LES |
| R9 | OSD/SOLIEC Review Checklist | SECRET/NOFORN |
| R10 | JTF-GTMO Baseball Card 000003 | SECRET/NOFORN |
| R11 | JTF-GTMO Baseball Card 000004 | SECRET/NOFORN |
| R12 | JDIMS Associated Persons for ISN 003 – Qari Ahmadullah | SECRET/NOFORN |
| R13 | CITF-CDR Memo dtd 26 Mar 2004 | SECRET/NOFORN |
| R14 | RFI 42 Reply for ISN 603 dtd 30 Aug 04 | SECRET/NOFORN |
| R15 | Flow Chart | SECRET/NOFORN |

**Combatant Status Review Board**

TO: Personal Representative

25 Aug 04

FROM: OIC, CSRT

Subject: Summary of Evidence for Combatant Status Review Tribunal – Detainee Ruhani, Gholam

1. Under the provisions of the Secretary of the Navy Memorandum, dated 29 July 2004, *Implementation of Combatant Status Review Tribunal Procedures for Enemy Combatants Detained at Guantanamo Bay Naval Base Cuba*, a Tribunal has been appointed to review the detainee's designation as an enemy combatant.

2. An enemy combatant has been defined as "an individual who was part of or supporting the Taliban or al Qaida forces, or associated forces that are engaged in hostilities against the United States or its coalition partners. This includes any person who committed a belligerent act or has directly supported hostilities in aid of enemy armed forces."

3. The United States Government has previously determined that the detainee is an enemy combatant. This determination is based on information possessed by the United States that indicates that he is a member of the Taliban.

    a.   Detainee is a member of the Taliban.

        1.   Detainee admitted being a member of the Taliban. A supervisor of Taliban Civilian Intelligence recruited the detainee into the Taliban.

        2.   Detainee served as the driver for a Taliban Intelligence Service member and performed clerical work for the Intelligence Service in Kabul, AF, from 1999 or 2000 until his capture by U.S. forces in December of 2001. The detainee was required to carry a pistol in this job.

        3.   Detainee was captured with a senior Taliban intelligence member, Abdul Haq Wasiq, by U.S. forces on 9 Dec 2001. Detainee was in possession of 7.62MM rounds when captured.

4. The detainee has the opportunity to contest his designation as an enemy combatant. The Tribunal will endeavor to arrange for the presence of any reasonably available witnesses or evidence that the detainee desires to call or introduce to prove that he is not an enemy combatant. The Tribunal President will determine the reasonable availability of evidence or witnesses.

*Lt Col [redacted]*
*28 Aug 04*
*Schedule 1st*
*Tribunal*

## Detainee Election Form

Date/Time: __27 AUG 04__
Start/End Time: __1550 - 1715__ *(1hr. 25 mins)*

ISN#: __003__

Personal Representative: __Lt Col [redacted]__
[Name/Rank]

Translator Required? __Yes__          Language? __Farsi (also speaks Pashtu + some English)__

CSRT Procedures Read to Detainee or Written Copy Read by Detainee? __Yes__

---------------------------------------------------------------------------------

Detainee Election:

☒ **Wants to Participate in Tribunal**

☐ **Affirmatively Declines to Participate in Tribunal**

☐ **Uncooperative or Unresponsive**

Personal Representative Comments:

*Detainee wants to make a statement through the PR. I took notes + reviewed the info. with the detainee. He was cooperative + understood the process. Schedule Tribunal soonest. No Final Session necessary.*



Personal Representative

*Exhibit D-a*



U.S. Department of Justice

Federal Bureau of Investigation

Washington, D. C. 20535-0001

August 6, 2004

REQUEST FOR REDACTION OF NATIONAL SECURITY INFORMATION

ISN **003**

Pursuant to the Secretary of the Navy Order of 29 July 2004, Implementation of Combatant Review Tribunal Procedures for Enemy Combatants Detained at Guantanamo Bay Naval Base, Cuba, Section D, paragraph 2, the FBI requests redaction of the information herein marked[1]. The FBI makes this request on the basis that said information relates to the national security of the United States[2]. Inappropriate dissemination of said information could damage the national security of the United States and compromise ongoing FBI investigations.

CERTIFICATION THAT REDACTED INFORMATION DOES NOT SUPPORT A DETERMINATION THAT THE DETAINEE IS NOT AN ENEMY COMBATANT

The FBI certifies the aforementioned redaction contains no information that would support a determination that the detainee is not an enemy combatant.

---

[1]Redactions are marked by means of pink/blue highlighter on the OARDEC provided FBI document.

[2]See Executive Order 12958

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.
Page ___1___ of ___1___                    Exhibit _R ~ 2_

PR-5
29 Aug 2004

UNCLASSIFIED

SUBJECT: Detainee statement to be presented through the Personal Representative at the Combatant Status Review Tribunal, 31 Aug 04

Relative to the US Government's Unclassified Summary of Evidence, dated 25 Aug 2004, determining that I am an Enemy Combatant, I, Gholam Ruhani, state the following:

I was forced into the Taliban Regime. The Taliban was the government. It was not pleasant for me to be there. I had a good life in the past. I had a store selling electrical equipment. My family and I worked in the shop. The Taliban law was that young people had to join the Taliban. I had to join but protested several times that I have an old father and I wanted to go back to my family. I wasn't with the Taliban full-time. I was still running my store. I was required to check in with them every ten to fifteen days. One of the things I was required to do was working security for a small group.

If I had not cooperated with the Taliban Intelligence Service member, I would have been sent to the front lines. I was afraid I would be killed. In order to help cooperate with the Americans, I provided English to Pashto translation at the 9 Dec 2001 meeting during which I was captured. I thought it was a friendly meeting at which I believed I was on the American's side. Abdul Haq Wasiq and Haji Olam Mohammed and an American called Tony were present at this meeting. I turned over my pistol and ammunition to the American as an act of faith because it was a friendly meeting. Everyone in Afghanistan carried a weapon at that time. I expected to leave the meeting and return to my life, my shop and my family. Instead, we were arrested.

_____
Gholam Ruhani

UNCLASSIFIED

EXHIBIT D-2

UNCLASSIFIED//~~FOUO~~

## Personal Representative Review of the Record of Proceedings

I acknowledge that on  September 2004 I was provided the opportunity to review the record of proceedings for the Combatant Status Review Tribunal involving ISN #003.

X I have no comments.

___ My comments are attached.

_____
Name

_____
Signature

2 Sep 04
_____
Date

ISN #003
Enclosure (5)

UNCLASSIFIED//~~FOUO~~