IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MOHAMMAD NABI OMARI,                    )
                                        )
                                        )
        Petitioner,                     )
                                        )
    v.                                  )        Civil Action No. 05-2367 (RWR)
                                        )
GEORGE W. BUSH, *et al.*,               )
                                        )
        Respondents.                    )
_____)

## DECLARATION OF DAVID N. COOPER

Pursuant to 28 U.S.C. § 1746, I, Lieutenant Colonel David N. Cooper, Judge Advocate General's Corps, United States Air Force Reserve , hereby state that to the best of my knowledge, information, and belief, the following is true, accurate and correct:

1.      I am the Legal Advisor to the Office for the Administrative Review of the Detention of Enemy Combatants at U.S. Naval Base Guantanamo Bay, Cuba (OARDEC).  In that capacity I am an advisor to the Director, Combatant Status Review Tribunals.

2.      I hereby certify that the documents attached hereto constitute a true and accurate copy of the portions of the record of proceedings before the Combatant Status Review Tribunal related to petitioner Mohammad Nabi Omari that are suitable for public release.  The portions of the record that are classified or considered law enforcement sensitive are not attached hereto or were redacted by an OARDEC staff member.  This staff member also redacted information that would personally identify certain U.S. Government personnel in order to protect the personal privacy and security of those individuals.

I declare under penalty of perjury that the foregoing is true and correct.


Dated: _10 August 2006_                    _____
                                           David N. Cooper
                                           Lt Col, JAG Corps, USAFR



# Department of Defense
## Director, Combatant Status Review Tribunals

OARDEC/Ser: **746**

**23 JAN 2005**

~~FOR OFFICIAL USE ONLY~~

From: Director, Combatant Status Review Tribunal

Subj: **REVIEW OF COMBATANT STATUS REVIEW TRIBUNAL FOR DETAINEE ISN # 832**

Ref:    (a) Deputy Secretary of Defense Order of 7 July 2004
        (b) Secretary of the Navy Order of 29 July 2004

1. I concur in the decision of the Combatant Status Review Tribunal that Detainee ISN #832 meets the criteria for designation as an Enemy Combatant, in accordance with references (a) and (b).

2. This case is now considered final and the detainee will be scheduled for an Administrative Review Board.

J. M. McGARRAH
RADM, CEC, USN

Distribution:
NSC (Mr. John Bellinger)
DoS (Ambassador Prosper)
DASD-DA
JCS (J5)
SOUTHCOM (CoS)
COMJTFGTMO
OARDEC (Fwd)
CITF Ft Belvoir

~~FOR OFFICIAL USE ONLY~~

UNCLASSIFIED

19 Jan 05

MEMORANDUM

From: Assistant Legal Advisor
To:    Director, Combatant Status Review Tribunal
Via:   Legal Advisor

Subj: LEGAL SUFFICIENCY REVIEW OF COMBATANT STATUS REVIEW TRIBUNAL
      FOR DETAINEE ISN # 832

Ref:  (a) Deputy Secretary of Defense Order of 7 July 2004
      (b) Secretary of the Navy Implementation Directive of 29 July 2004

Encl: (1) Appointing Order for Tribunal #19 of 4 November 2004
      (2) Record of Tribunal Proceedings

1. Legal sufficiency review has been completed on the subject Combatant Status Review
Tribunal in accordance with references (a) and (b). After reviewing the record of the Tribunal, I
find that:

    a. The detainee was properly notified of the Tribunal process and elected to participate.
*See* exhibit D-a. The detainee also made an unsworn statement in a question and answer
format. *See* enclosure (3). The Tribunal considered the statement in its deliberations.

    b. The Tribunal was properly convened and constituted by enclosure (1).

    c. The Tribunal substantially complied with all provisions of references (a) and (b).
Note that some information in exhibit R-5 was redacted. The FBI properly certified in
exhibit R-2 that the redacted information would not support a determination that the
detainee is not an enemy combatant.

    d. The detainee did not request that any witnesses or evidence be produced.

    e. The Tribunal's decision that detainee #832 is properly classified as an enemy
combatant was unanimous.

2. The proceedings and decision of the Tribunal are legally sufficient and no corrective action is
required.

3. I recommend that the decision of the Tribunal be approved and the case be considered final.

PETER C. BRADFORD
LT, JAGC, USNR

UNCLASSIFIED



Department of Defense
Director, Combatant Status Review Tribunals

4 Nov 04

From:  Director, Combatant Status Review Tribunals

Subj:  APPOINTMENT OF COMBATANT STATUS REVIEW TRIBUNAL #19

Ref:   (a) Convening Authority Appointment Letter of 9 July 2004

By the authority given to me in reference (a), a Combatant Status Review Tribunal
established by "Implementation of Combatant Status Review Tribunal Procedures for
Enemy Combatants Detained at Guantanamo Bay Naval Base, Cuba" dated 29 July 2004
is hereby convened.  It shall hear such cases as shall be brought before it without further
action of referral or otherwise.

The following commissioned officers shall serve as members of the Tribunal:

MEMBERS:

██████████████, Colonel, U.S. Army; President

██████████████, Commander, U.S. Navy; Member

██████████████, Major, JAGC, U.S. Army Reserve; Member
(JAG)


J. M. McGARRAH
Rear Admiral
Civil Engineer Corps
United States Navy



# HEADQUARTERS, OARDEC FORWARD
GUANTANAMO BAY, CUBA
APO AE 09360

27 December 2004

MEMORANDUM FOR DIRECTOR, CSRT

FROM: OARDEC FORWARD Commander ICO ISN 832

1. Pursuant to Enclosure (1), paragraph (I)(5) of the *Implementation of Combatant Status Review Tribunal Procedures for Enemy Combatants Detained at Guantanamo Bay Naval Base, Cuba* dated 29 July 2004, I am forwarding the Combatant Status Review Tribunal Decision Report for the above mentioned ISN for review and action.

2. If there are any questions regarding this package, point of contact on this matter is the undersigned at DSN ███████.

for

CHARLES E. JAMISON
CAPT, USN

SECRET//NOFORN//X1

## (U) Combatant Status Review Tribunal Decision Report Cover Sheet

(U) This Document is UNCLASSIFIED Upon Removal of Enclosures (2) and (4).

(U) TRIBUNAL PANEL: ___#19___

(U) ISN#: ___832___

Ref:   (a) Convening Order for Tribunal #19 of 04 November 2004 (U)
      (b) CSRT Implementation Directive of 29 July 2004 (U)
      (c) DEPSECDEF Memo of 7 July 2004 (U)

Encl:  (1) Unclassified Summary of Basis for Tribunal Decision (U/FOUO)
      (2) Classified Summary of Basis for Tribunal Decision (S//NF)
      (3) Summary of Detainee/Witness Testimony (U//FOUO)
      (4) Copies of Documentary Evidence Presented (S//NF)
      (5) Personal Representative's Record Review (U)

(U) This Tribunal was convened by references (a) and (b) to make a determination as to whether the Detainee meets the criteria to be designated as an enemy combatant as defined in reference (c).

(U) The Tribunal has determined that Detainee #832 is properly designated as an enemy combatant as defined in reference (c).

(U) In particular, the Tribunal finds that this Detainee is a member of, or affiliated with, al Qaida and the Taliban, as more fully discussed in the enclosures.

(U) Enclosure (1) provides an unclassified account of the basis for the Tribunal's decision. A detailed account of the evidence considered by the Tribunal and its findings of fact are contained in enclosures (1) and (2).

Colonel, U.S. Army
Tribunal President

SECRET//NOFORN//X1

UNCLASSIFIED/~~FOUO~~

# UNCLASSIFIED SUMMARY OF BASIS FOR TRIBUNAL DECISION

**(Enclosure (1) to Combatant Status Review Tribunal Decision Report)**

TRIBUNAL PANEL: _____ #19 _____
ISN #: _____ 832 _____

## 1. Introduction

As the Combatant Status Review Tribunal Decision Report indicates, the Tribunal has determined that this Detainee is properly classified as an enemy combatant and is a member of, or affiliated with, al Qaida and the Taliban. In reaching its conclusions, the Tribunal considered both classified and unclassified information. The following is an account of the unclassified evidence considered by the Tribunal. Any classified evidence considered by the Tribunal is discussed in Enclosure (2) to the Combatant Status Review Tribunal Decision Report.

## 2. Synopsis of Proceedings

The unclassified evidence presented to the Tribunal by the Recorder indicated that the Detainee is a member of the Taliban and associated with al Qaida. The Detainee is associated with Hizb-l lslami Gulbuddin. Hizb-l lslami Gulbuddin is a terrorist organization associated with al Qaida. The Detainee was the Chief of Border Department for the Taliban. The Detainee was the Taliban's Chief of Communication. The Detainee fought in the Russian jihad. The Detainee assisted in the exfiltration of al Qaida members from Afghanistan to Pakistan. The Detainee has passed messages to senior al Qaida members. The Detainee's name and phone number were discovered in a senior al Qaida member's house. The Detainee has participated in meetings with senior members of al Qaida and the Taliban. The Detainee chose to participate in the Tribunal process. The Detainee did not call any witnesses nor did he request that any classified or unclassified documents be produced and made an oral, unsworn statement. The Detainee, in his oral statement, denied being an al Qaida or Taliban member.

## 3. Evidence Considered by the Tribunal

The Tribunal considered the following evidence in reaching its conclusions:

    a. Exhibits: D-a, R-1 through R-15

    b. Testimony of the following persons: None

    c. Unsworn statement of the Detainee.

UNCLASSIFIED/~~FOUO~~

**4. Rulings by the Tribunal on Detainee Requests for Evidence or Witnesses**

The Detainee requested no witnesses and requested no additional evidence be produced; therefore, no rulings on these matters were required.

**5. Discussion of Unclassified Evidence**

The Tribunal considered the following unclassified evidence in making its determinations:

a. The recorder offered Exhibits R-1 and R-2 into evidence during the unclassified portion of the proceeding. Exhibit R-1 is the Unclassified Summary of Evidence. While this summary is helpful in that it provides a broad outline of what the Tribunal can expect to see, it is not persuasive in that it provides conclusory statements without supporting unclassified evidence. Exhibit R-2 provided no usable evidence. Exhibit R-3 is the U.S. Department of Homeland security, "Terrorist Organization Reference Guide". Accordingly, the Tribunal had to look to classified exhibits for support of the Unclassified Summary of Evidence.

b. Essentially the only unclassified evidence the Tribunal had to consider was the Detainee's sworn testimony. A summarized transcript of the Detainee's sworn testimony is attached as CSRT Decision Report Enclosure (3). In sum, the Detainee stated that he did work for the government of the Taliban. The Detainee stated that he was the Chief of the Border, in charge of border security about two and a half years before the Americans came. The Detainee stated that he was not helping nor did he know any al Qaida members. The Detainee stated that he did not belong to Hizb-L-Islami Gulbuddin. The Detainee stated that he worked for the U.S. government for 5 to 6 months and that the name of his point of contact was "Mark".

The Tribunal also relied on certain classified evidence in reaching its decision. A discussion of the classified evidence is found in Enclosure (2) to the Combatant Status Review Tribunal Decision Report.

**6. Consultations with the CSRT Legal Advisor**

No issues arose during the course of this hearing that required consultation with the CSRT legal advisor.

**7. Conclusions of the Tribunal**

Upon careful review of all the evidence presented in this matter, the Tribunal makes the following determinations:

a. The Detainee was mentally and physically capable of participating in the proceeding. No medical or mental health evaluation was deemed appropriate.

UNCLASSIFIED/~~FOUO~~

UNCLASSIFIED/~~FOUO~~

b. The Detainee understood the Tribunal proceedings. The Detainee asked no questions regarding his rights and actively participated in the hearing, as indicated in Exhibit D-a.

c. The Detainee is properly classified as an enemy combatant and is a member of, or affiliated with al Qaida and the Taliban.

## 8. Dissenting Tribunal Member's report

None. The Tribunal reached a unanimous decision.

Respectfully submitted,



Colonel, U.S. Army
Tribunal President

UNCLASSIFIED/~~FOUO~~

UNCLASSIFIED//~~FOUO~~

## Summarized Unsworn Detainee Statement

*The Tribunal President was explaining the hearing instructions to the Detainee. The Tribunal President asked the Detainee if he had any questions about the Tribunal process.*

Detainee: When you spoke about the witnesses, I did not understand that part.

Tribunal President: That your Personal Representative asked you whether you had any witnesses for this Tribunal.

Detainee: What for?

Tribunal President: It was an option if you wanted to address any of the issues on the unclassified summary of evidence.

Detainee: I don't know if I should present my witnesses here or in Afghanistan or where?

Tribunal President: That was an option we had. To be honest, we place a lot of weight on your oral statement.

Detainee: Basically, you should explain to me what would I need the witnesses for. I cannot have witnesses present here in Cuba.

Tribunal President: Most of the people that request witnesses do so to collaborate their story or to specifically address a point of the unclassified summary of evidence.

Detainee: I understand.

*The Detainee elected not to take an oath but chose to make a statement.*

Detainee: I speak but I don't swear.

Tribunal President: That's fine. You may begin.

Detainee: May I start now?

Tribunal President: Yes.

Detainee: In the name of Allah, the compassionate, the merciful. I am very happy to see you, that you took an oath in front of me and I the trust on that oath and if you don't do what you swear to, may Allah punish you.

ISN# 832
Enclosure (3)
Page 1 of 5

UNCLASSIFIED//~~FOUO~~

If anyone could prove that I was a member of the Hizb-I Islami Gulbuddin or if I had any involvement with that organization, then I am guilty. If anyone could prove that I reported to any al Qaida leaders or if I had any connections with al Qaida, I am guilty again. If anyone could give you proof that I helped al Qaida or members in any way to go from Afghanistan to Pakistan then I am guilty as charged.

I did the job that was given to me by an American. I went to Pakistan and I tried very hard. Anything I did in Pakistan, Mark is a witness. Mr. Mark.

I did work for the government of the Taliban, I confessed it and I will confess again. I don't see anything wrong with it. The charges that you are telling me that I was in charge of the border. I was, but that was before the Americans came to Afghanistan.

I don't want to make it too long because for the past two and one-half years, we were speaking with the interrogators about the ten charges. The interrogators were telling me that I was with al Qaida and I was trying to tell them that I was not. They did not give me any benefit from what I told them and I don't think without making this longer, that I will get any benefit in the future.

The things are against me now are because I helped the government of Afghanistan and I helped the United States of America. I don't know that much where you can be charging me about helping al Qaida or to be a Hizb-I Islami Gulbuddin or that I did anything against the Americans. I don't know about these charges.

Now I am detained here and I think I will be detained here for a long time to come. There will be a time when you realize that keeping me here or what benefits I have for you or what benefits for you if my enemies are charging me with wrong accusations. You will all realize in the future. If this is guilt, that you give me a job to go find out about al Qaida, I tell you that yes, I went and I wanted to find out about al Qaida for you.

There are lots of good people and bad people that are in Kwost. You asked all of the bad people and did not ask any of the good people in Kwost about me. This Tribunal, I think that probably in 10 years time will be finished. I think it will never be finished.

I am here for this Tribunal for you to decide if I am guilty. You will tell me for how many years I will be here and if I am not proven guilty you should tell me that someday I might go home.

If you are here to decide to make a judgment about me or against me, I want you to use your humanity towards another human being. That is all I want from you. I'm sorry for taking your time and I'm sorry if I said something wrong.

Tribunal President: You covered some of the points on the unclassified summary, do you want to address each one with your Personal Representative?

ISN# 832
Enclosure (3)
Page 2 of 5

UNCLASSIFIED//~~FOUO~~

Detainee: I don't want, but if you want, I don't have any problem with it. If she has any proof then she could interrogate.

Tribunal President: Let me tell you at this point, this unclassified summary of evidence is the only piece of evidence that this Tribunal panel has seen about you. We look at two things when we come into a Tribunal. One of the things that we look at is the information that the Recorder presents to us (unclassified summary of evidence), and the second thing is your statement. We may have some questions for you at this time. Will you be willing to answer our questions?

Detainee: Yes.

### Tribunal Members' Questions to Detainee

Q:     One of the allegations here, sir, is that your name and phone number was discovered in a senior member al Qaida's house?

A:     Like whom?

Q:     At this point that is the only information that we have. Based on that information, do you have any reason to believe that it may be true?

A:     First, I don't believe my telephone number was found in anybody's house. Second, even if it was found, you provided the telephone number. The American made it up because everybody wants to be connected to one person or one group.

Q:     Are you saying that you worked for the United States?

A:     I think my file is full of these kinds of things.

Q:     Do you have a point of contact that you actually made contact with while working for the United States?

A:     I said previously that his name was Mark and that he was an American.

Q:     And when was this?

A:     Five to six months prior to my capture.

Q:     And you were specifically doing what with this person named Mark?

A:     I think that you are trying to make me tell you what's already in all my files. If you want, I will do it. If you want to give me something to do again, I'll try.

Q:     So you'll give me the information to this Mark person?

ISN# 832
Enclosure (3)
Page 3 of 5

UNCLASSIFIED//FOUO

A:    Yes. After that Mark was gone from Kwost and after Mark left the job our connection was with another individual by the name of Nasir to Mark.

Q:    Do you know what organization Mark worked for in the US?

A:    I don't know but he was working in the province of Kwost.

### Tribunal Members' Questions to Detainee

Q:    Is it ever OK for a Muslim not to tell the truth?

A:    No. For an infidel and for a Muslim, it's no good to tell a lie.

Q:    Do you know any al Qaida members?

A:    No. I swear to Allah that I don't know members of al Qaida. I heard the name al Qaida and I heard the name Bin Laden but I do not know.

Q:    Have you ever worked with the organization Hizb-I Islami Gulbuddin?

A:    I never did. If anyone can prove that I did work for that organization, then I am guilty.

Q:    Have you ever belong to any organization or charity group?

A:    At the time of the Jihad, at the time of the refuge, I belonged to a group called Haraket-e-Inqlab-e-Islami.

Q:    Was this the Jihad against the Russians?

A:    This was during the time of the refuge. The wounds on my body don't mean that I was part of Gulbuddin and the Jihad against the Russians. At that time I was a young boy, but I wish I fought against the Russians.

Q:    I understand. I was trying to find out when did you belong to the organization.

A:    That was during the time when President Rabani was in power of Afghanistan. That was long before the Taliban come.

Q:    Do you have the spelling of the charity group?

A:    Haraket-e-Inqlab-e-Islami.

ISN# 832
Enclosure (3)
Page 4 of 5

UNCLASSIFIED//FOUO

**Tribunal Members' Questions to Detainee**

Q: When you worked for the Taliban, what did you do? How did you support the Taliban?

A: I was sitting in an office and working in an office.

**AUTHENTICATION**

I certify the material contained in this transcript is a true and accurate summary of the testimony given during the proceedings.

[redacted]

Colonel, U.S. Army
Tribunal President

UNCLASSIFIED//FOUO

## DETAINEE ELECTION FORM

|  |  |
|---|---|
| **Date:** | 23 Nov 04 |
| **Start Time:** | 08:30 |
| **End Time:** | 09:00 |

**ISN#:** _____ 832 _____

**Personal Representative:** ████████████ MAJ., USAF

**Translator Required?** YES    **Language?** _____ PASHTU _____

**CSRT Procedure Read to Detainee or Written Copy Read by Detainee?** _____ YES

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**Detainee Election:**

[X]   **Wants to Participate in Tribunal**

[ ]   **Affirmatively Declines to Participate in Tribunal**

[ ]   **Uncooperative or Unresponsive**

**Personal Representative Comments:**

Detainee will speak to each piece of evidence.
Detainee requests PR read each piece of evidence one at a time and he will respond to each.
Detainee will not take the oath.
Detainee did not request any witnesses.
Detainee did not request any documentary evidence.

Personal Representative: ████████████████████

UNCLASSIFIED//FOUO                              Exhibit D-a

UNCLASSIFIED

**Combatant Status Review Board**

TO: Personal Representative

FROM: OIC, CSRT (16 November 2004)

Subject: Summary of Evidence for Combatant Status Review Tribunal – OMARI, Mohammad Nabi.

1. Under the provisions of the Secretary of the Navy Memorandum, dated 29 July 2004, *Implementation of Combatant Status Review Tribunal Procedures for Enemy Combatants Detained at Guantanamo Bay Naval Base Cuba*, a Tribunal has been appointed to review the detainee's designation as an enemy combatant.

2. An enemy combatant has been defined as "an individual who was part of or supporting the Taliban or al Qaida forces, or associated forces that are engaged in hostilities against the United States or its coalition partners. This includes any person who committed a belligerent act or has directly supported hostilities in aid of enemy armed forces."

3. The United States Government has previously determined that the detainee is an enemy combatant. This determination is based on information possessed by the United States that indicates that the detainee is a member of the Taliban, associated with al Qaida, and has participated in hostilities against the United States or its coalition partners.

- The detainee is a member of the Taliban and associated with al Qaida:

    1. The detainee is associated with Hizb-l lslami Gulbuddin.

    2. Hizb-l lslami Gulbuddin is a terrorist organization associated with al Qaida.

    3. The detainee was the Chief of Border Department for the Taliban.

    4. The detainee was the Taliban's Chief of Communication.

    5. The detainee fought in the Russian jihad.

    6. The detainee assisted in the exfiltration of al Qaida members from Afghanistan to Pakistan.

    7. The detainee has passed messages to senior al Qaida members.

    8. The detainee's name and phone number was discovered in a senior al Qaida member's house.

    9. The detainee has participated in meetings with senior members of al Qaida and the Taliban.

4. The detainee has the opportunity to contest his designation as an enemy combatant. The Tribunal will endeavor to arrange for the presence of any reasonably available witnesses or evidence that the detainee desires to call or introduce to prove that he is not an enemy combatant. The Tribunal President will determine the reasonable availability of evidence or witnesses.

UNCLASSIFIED

**Memorandum**



---

To    :    Department of Defense                    Date  11/15/2004
           Office of Administrative Review
           for Detained Enemy Combatants
           Capt. Charles Jamison, OIC, CSRT

From  :    FBI GTMO
           Counterterrorism Division ▮▮▮▮▮▮▮▮
           Asst. Gen. Counsel▮▮▮▮▮▮▮▮

Subject    REQUEST FOR REDACTION OF
           NATIONAL SECURITY INFORMATION
           ▮▮▮▮▮▮▮▮▮▮▮▮▮

          Pursuant to the Secretary of the Navy Order of 29 July
2004, Implementation of Combatant Review Tribunal Procedures for
Enemy Combatants Detained at Guantanamo Bay Naval Base, Cuba,
Section D, paragraph 2, the FBI requests redaction of the
information herein marked[1].  The FBI makes this request on the
basis that said information relates to the national security of
the United States[2].  Inappropriate dissemination of said
information could damage the national security of the United
States and compromise ongoing FBI investigations.

CERTIFICATION THAT REDACTED INFORMATION DOES NOT SUPPORT A
DETERMINATION THAT THE DETAINEE IS NOT AN ENEMY COMBATANT

          The FBI certifies the aforementioned redaction contains
no information that would support a determination that the
detainee is not an enemy combatant.

          The following documents relative to ISN 832 have been
redacted by the FBI and provided to the OARDEC:

FD-302 dated 10/31/02

---

[1]Redactions are blackened out on the OARDEC provided FBI document.

[2]See Executive Order 12958

PS1-12                    22

Memorandum from ██████████ to Capt. Charles Jamison
Re:  REQUEST FOR REDACTION, 11/15/2004


        If you need additional assistance, please contact Asst.
Gen. Counsel ███████████████████████, ███████████████ or Intelligence Analyst (IA)
████████ IA ████████████████████████████████████████████████████

-2-

Pg 20 of 2



U.S. Department of Homeland Security
U.S. Customs and Border Protection
Office of Border Patrol

# Terrorist Organization
# Reference Guide

**January 2004**



43. Army for the Liberation of Rwanda (ALIR) ................................................. 44
44. Cambodian Freedom Fighters (CFF) ...................................................... 45
45. Communist Party of Nepal (Maoist)/ United People's Front ................... 46
46. Continuity Irish Republican Army (CIRA) ............................................... 47
47. Eastern Turkistan Islamic Movement (ETIM) ......................................... 47
48. First of October Antifascist Resistance Group (GRAPO) ...................... 48
49. Harakat ul-Jihad-I-Islami (HUJI) .......................................................... 49
50. Harakat ul-Jihad-I-Islami/Bangladesh (HUJI-B) ................................... 50
51. Hizb-I Islami Gulbuddin (HIG) .............................................................. 50
52. Hizb ul-Mujahedin (HM) ....................................................................... 51
53. Irish Republican Army (IRA) ................................................................. 52
54. Islamic Army of Aden (IAA) .................................................................. 53
55. Islamic International Peacekeeping Brigade (IIPB) ............................... 54
56. Jamiat ul-Mujahedin (JUM) .................................................................. 55
57. Japanese Red Army (JRA) ................................................................... 55
58. Kumpulan Mujahidin Malaysia (KMM) ................................................. 56
59. Libyan Islamic Fighting Group ............................................................. 57
60. Lord's Resistance Army (LRA) ............................................................. 58
61. Loyalist Volunteer Force (LVF) ............................................................ 58
62. Moroccan Islamic Combatant Group (GICM) ....................................... 59
63. New Red Brigades/Communist Combatant Party (BR/PCC) ................ 60
64. People Against Gangsterism and Drugs (PAGAD) .............................. 61
65. Red Hand Defenders (RHD) ................................................................ 62
66. Revolutionary Proletarian Initiative Nuclei (NIPR) ............................... 62
67. Revolutionary United Front (RUF) ....................................................... 63
68. Riyadus-Salikhin Reconnaissance and Sabotage Battalion of Chechen Martyrs  64
69. Sipah-I-Sahaba/Pakistan (SSP) .......................................................... 65
70. Special Purpose Islamic Regiment (SPIR) .......................................... 65
71. The Tunisian Combatant Group (TCG) ................................................ 66
72. Tupac Amaru Revolutionary Movement (MRTA) .................................. 67
73. Turkish Hizballah ................................................................................. 68
74. Ulster Defense Association/Ulster Freedom Fighters (UDA/UFF) ........ 68

    Terrorist Exclusion List ....................................................................... 71

    Mexican Insurgent/Guerrilla Organizations ......................................... 77

    End Notes ............................................................................................ 84

pg 2 of 4

**Location/Area of Operation**

Pakistan and Kashmir. Trained members in Afghanistan until fall of 2001.

**External Aid**

Specific sources of external aid are unknown.

## 50.  Harakat ul-Jihad-I-Islami/Bangladesh (HUJI-B) (Movement of Islamic Holy War)

**Description**

The mission of HUJI-B, led by Shauqat Osman, is to establish Islamic rule in Bangladesh. HUJI-B has connections to the Pakistani militant groups Harakat ul-Jihad-i-Islami (HUJI) and Harak ul-Mujahidin (HUM), who advocate similar objectives in Pakistan and Kashmir.

**Activities**

HUJI-B was accused of stabbing a senior Bangladeshi journalist in November 2000 for making a documentary on the plight of Hindus in Bangladesh. HUJI-B was suspected in the July 2000 assassination attempt of Bangladeshi Prime Minister Sheikh Hasina.

**Strength**

HUJI-B has an estimated cadre strength of more than several thousand members.

**Location/Area of Operation**

Operates and trains members in Bangladesh, where it maintains at least six camps.

**External Aid**

Funding of the HUJI-B comes primarily from madrassas in Bangladesh. The group also has ties to militants in Pakistan that may provide another funding source.

## 51.  Hizb-I Islami Gulbuddin (HIG)

**Description**

Gulbuddin Hikmatyar founded Hizb-I Islami Gulbuddin (HIG) as a faction of the Hizb-I Islami party in 1977, and it was one of the major mujahedin groups in the war against the Soviets. HIG has long-established ties with Bin Ladin. In the early 1990s,

Hikmatyar ran several terrorist training camps in Afghanistan and was a pioneer in sending mercenary fighters to other Islamic conflicts. Hikmatyar offered to shelter Bin Ladin after the latter fled Sudan in 1996.

**Activities**

HIG has staged small attacks in its attempt to force US troops to withdraw from Afghanistan, overthrow the Afghan Transitional Administration (ATA), and establish a fundamentalist state.

**Strength**

HIG possibly could have hundreds of veteran fighters to call on.

**Location/Area of Operation**

Eastern Afghanistan (particularly Konar and Nurestan Provinces) and adjacent areas of Pakistan's tribal areas.

**External Aid**

Unknown.

## 52.   Hizb ul-Mujahidin (HM)

**Description**

Hizb ul-Mujahidin, the largest Kashmiri militant group, was founded in 1989 and officially supports the liberation of Kashmir and its accession to Pakistan, although some cadres are proindependence. The group is the militant wing of Pakistan's largest Islamic political party, the Jamaat-i-isiami. It currently is focused on Indian security forces and politicians in Kashmir and has conducted operations jointly with other Kashmiri militants. It reportedly operated in Afghanistan through the mid-1990s and trained alongside the Afghan Hizb-I- Islami Gulbuddin (HIG) in Afghanistan until the Taliban takeover. The group, led by Syed Salahuddin, is made up primarily of ethnic Kashmiris. Currently, there are visible splits between Pakistan-based commanders and several commanders in Indian-occupied Kashmir.

**Activities**

Has conducted a number of operations against Indian military targets in Kashmir. The group also occasionally strikes at civilian targets in Kashmir but has not engaged in terrorist acts elsewhere.

UNCLASSIFIED//~~FOUO~~

## Personal Representative Review of the Record of Proceedings

I acknowledge that on *02 December* November 2004 I was provided the opportunity to review the record of proceedings for the Combatant Status Review Tribunal involving ISN #832.

_✓_ I have no comments.

____ My comments are attached.



Maj[redacted], USAF          2 Dec 04
Name                          Date

Signature

ISN #832
Enclosure (5)

UNCLASSIFIED//~~FOUO~~