IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ABDULLAH MUSAHID, | ) | |
| | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-2367 (RWR) |
| | ) | |
| GEORGE W. BUSH, *et al.,* | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

### DECLARATION OF DAVID N. COOPER

Pursuant to 28 U.S.C. § 1746, I, Lieutenant Colonel David N. Cooper, Judge Advocate General's Corps, United States Air Force Reserve , hereby state that to the best of my knowledge, information, and belief, the following is true, accurate and correct:

1.      I am the Legal Advisor to the Office for the Administrative Review of the Detention of Enemy Combatants at U.S. Naval Base Guantanamo Bay, Cuba (OARDEC).  In that capacity I am an advisor to the Director, Combatant Status Review Tribunals.

2.      I hereby certify that the documents attached hereto constitute a true and accurate copy of the portions of the record of proceedings before the Combatant Status Review Tribunal related to petitioner Abdullah Musahid that are suitable for public release.  The portions of the record that are classified or considered law enforcement sensitive are not attached hereto or were redacted by an OARDEC staff member. This staff member also redacted information that would personally identify certain U.S. Government personnel in order to protect the personal privacy and security of those individuals.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: _10 August 2006_

_____
David N. Cooper
Lt Col, JAG Corps, USAFR



# Department of Defense
## Director, Combatant Status Review Tribunals

OARDEC/Ser: 9 0 0

L 9 FEB 2005

~~FOR OFFICIAL USE ONLY~~

From: Director, Combatant Status Review Tribunal

Subj: **REVIEW OF COMBATANT STATUS REVIEW TRIBUNAL FOR DETAINEE ISN #1100**

Ref: (a) Deputy Secretary of Defense Order of 7 July 2004
(b) Secretary of the Navy Order of 29 July 2004

1. I concur in the decision of the Combatant Status Review Tribunal that Detainee ISN #1100 meets the criteria for designation as an Enemy Combatant, in accordance with references (a) and (b).

2. This case is now considered final and the detainee will be scheduled for an Administrative Review Board.

J. M. McGARRAH
RADM, CEC, USN

Distribution:
NSC (Mr. John Bellinger)
DoS (Ambassador Prosper)
DASD-DA
JCS (J5)
SOUTHCOM (CoS)
COMJTFGTMO
OARDEC (Fwd)
CITF Ft Belvoir



### Department of Defense
#### Director, Combatant Status Review Tribunals

9 Dec 04

From: Director, Combatant Status Review Tribunals

Subj: APPOINTMENT OF COMBATANT STATUS REVIEW TRIBUNAL #26

Ref: (a) Convening Authority Appointment Letter of 9 July 2004

By the authority given to me in reference (a), a Combatant Status Review Tribunal established by "Implementation of Combatant Status Review Tribunal Procedures for Enemy Combatants Detained at Guantanamo Bay Naval Base, Cuba" dated 29 July 2004 is hereby convened. It shall hear such cases as shall be brought before it without further action of referral or otherwise.

The following commissioned officers shall serve as members of the Tribunal:

MEMBERS:

████████████████████, Colonel, U.S. Air Force; President

███████████████, Commander, U.S. Navy; Member (JAG)

████████████████, Major, U.S. Air Force; Member

J. M. McGARRAH
Rear Admiral
Civil Engineer Corps
United States Navy



**HEADQUARTERS, OARDEC FORWARD**
GUANTANAMO BAY, CUBA
APO AE 09360

14 January 2005

MEMORANDUM FOR DIRECTOR, CSRT

FROM:  OARDEC FORWARD Commander ICO ISN 1100

1. Pursuant to Enclosure (1), paragraph (I)(5) of the *Implementation of Combatant Status Review Tribunal Procedures for Enemy Combatants Detained at Guantanamo Bay Naval Base, Cuba* dated 29 July 2004, I am forwarding the Combatant Status Review Tribunal Decision Report for the above mentioned ISN for review and action.

2. If there are any questions regarding this package, point of contact on this matter is the undersigned at DSN █████████.

CHARLES E. JAMISON
CAPT, USN

~~SECRET//NOFORN//X1~~

## (U) Combatant Status Review Tribunal Decision Report Cover Sheet

(U) This Document is UNCLASSIFIED Upon Removal of Enclosures (2) and (4).

(U) TRIBUNAL PANEL: ___#26___

(U) ISN#: ____1100____

Ref:    (a) (U) Convening Order for Tribunal #26 of 9 December 2004 (U)
      (b) (U) CSRT Implementation Directive of 29 July 2004 (U)
      (c) (U) DEPSECDEF Memo of 7 July 2004 (U)

Encl:   (1) (U) Unclassified Summary of Basis for Tribunal Decision (U/~~FOUO~~)
      (2) (U) Classified Summary of Basis for Tribunal Decision (S/NF)
      (3) (U) Summary of Detainee/Witness Testimony (U/~~FOUO~~)
      (4) (U) Copies of Documentary Evidence Presented (S/NF)
      (5) (U) Personal Representative's Record Review (U/~~FOUO~~)

1. (U) This Tribunal was convened by references (a) and (b) to make a determination as to whether the detainee meets the criteria to be designated as an enemy combatant as defined in reference (c).

2. (U) On 17 December 2004 the Tribunal determined, by a preponderance of the evidence, that Detainee #1100 is properly designated as an enemy combatant as defined in reference (c).

3. (U) In particular, the Tribunal finds that this detainee is a member of, or affiliated with, al Qaida, as more fully discussed in the enclosures.

4. (U) Enclosure (1) provides an unclassified account of the basis for the Tribunal's decision. A detailed account of the evidence considered by the Tribunal and its findings of fact are contained in enclosures (1) and (2).



, Colonel, USAF
Tribunal President

UNCLASSIFIED

25 Jan 05

MEMORANDUM

From:  Assistant Legal Advisor
To:    Director, Combatant Status Review Tribunal
Via:   Legal Advisor    ~SRC~

Subj:  LEGAL SUFFICIENCY REVIEW OF COMBATANT STATUS REVIEW TRIBUNAL
       FOR DETAINEE ISN # 1100

Ref:   (a) Deputy Secretary of Defense Order of 7 July 2004
       (b) Secretary of the Navy Implementation Directive of 29 July 2004

Encl:  (1) Appointing Order for Tribunal #26 of 9 December 2004
       (2) Record of Tribunal Proceedings

1.  Legal sufficiency review has been completed on the subject Combatant Status Review
Tribunal in accordance with references (a) and (b).  After reviewing the record of the Tribunal, I
find that:

    a.  The detainee was properly notified of the Tribunal process and elected to participate.
*See* exhibit D-a.  The detainee also provided the Tribunal with a written statement.  *See*
exhibit D-b.  Additionally, the detainee provided the Tribunal with a sworn oral statement
in question and answer format.  *See* enclosure (3).  The Tribunal considered the written
and sworn oral statement in its deliberations.

    b.  The Tribunal was properly convened and constituted by enclosure (1).

    c.  The Tribunal substantially complied with all provisions of references (a) and (b).

    d.  The detainee requested 8 witnesses and documentary evidence be produced:

        i.  The Tribunal President determined that three of the four witnesses the detainee
requested were relevant, but allowed their testimony by alternate means (a written
format) to be presented by the detainee's Personal Representative to the Tribunal. *See*
D-c through D-e.  The Tribunal properly considered the written testimony of the
witnesses.

        ii.  The Tribunal President determined that the testimony of the fourth detainee
witness was not relevant since the testimony was of a duplicative nature.  In my
opinion, the Tribunal should not have deemed the witness testimony duplicative;
however, the Tribunal properly determined that the detainee was an enemy combatant
absent this witness testimony.

UNCLASSIFIED

UNCLASSIFIED

Subj:  LEGAL SUFFICIENCY REVIEW OF COMBATANT STATUS REVIEW TRIBUNAL
       FOR DETAINEE ISN # 1100

      iii.  The detainee requested four non-local witnesses to testify. The Tribunal President determined that the witnesses were relevant, and requested that the Assistant Legal Advisor, based in Guantanamo Bay, Cuba, assist the detainee in locating the requested four witnesses. The Assistant Legal Advisor contacted the Afghan government authorities to provide information on the witnesses' Whereabouts. After a reasonable amount of time had elapsed with no response from the Afghan government, the Tribunal President determined that the four requested witnesses were not reasonably available. In my opinion, the Tribunal acted properly in determining the witnesses were not reasonably available.

      iv.  The detainee also requested documents from the Afghan government. The Tribunal President determined that the documents were relevant, and requested assistance from the Afghan government in locating them. The Tribunal President ruled that the documents were not reasonably available after a reasonable amount of time elapsed with no response from the Afghan government. In my opinion, the Tribunal acted properly in determining the documents were not reasonably available.

  e. The Tribunal's decision that detainee 1100 is properly classified as an enemy combatant was unanimous.

2. The proceedings and decision of the Tribunal are legally sufficient and no corrective action is required.

3. I recommend that the decision of the Tribunal be approved and the case be considered final.

                    *Peter C. Bradford*
                    PETER C. BRADFORD
                    LT, JAGC, USNR

UNCLASSIFIED

UNCLASSIFIED//~~FOUO~~

## UNCLASSIFIED SUMMARY OF BASIS FOR TRIBUNAL DECISION

### (Enclosure (1) to Combatant Status Review Tribunal Decision Report)

TRIBUNAL PANEL: _____#26____
ISN #: _____1100___

### 1. Introduction

As the Combatant Status Review Tribunal (CSRT) Decision Report indicates, the Tribunal has determined that this detainee is properly classified as an enemy combatant and is a member of, or affiliated with, al Qaida. In reaching its conclusions, the Tribunal considered both classified and unclassified information. The following is an account of the unclassified evidence considered by the Tribunal and other pertinent information. Classified evidence considered by the Tribunal is discussed in Enclosure (2) to the CSRT Decision Report.

### 2. Synopsis of Proceedings

The unclassified evidence presented to the Tribunal by the Recorder indicated that the detainee had served as a police force commander in Gardez, Afghanistan until he was fired due to suspicions of collusion with anti-government forces. The unclassified evidence also indicated the detainee was a member the Harakat-e-Mulavi (HeM) extremist group that is known to have ties with al Qaida and the Taliban. The unclassified evidence provided by the Recorder further identifies the detainee as being responsible for an attack on U.S. Forces in the vicinity of Gardeyz City, Afghanistan. The detainee chose to participate in the Tribunal process. He called eight witnesses, requested no U.S. government document be produced, made a sworn verbal statement, and provided a written statement. The Tribunal President determined four of the requested witnesses would provide redundant testimony and approved three. These three witnesses provided testimony by alternate means when they were not able to attend the hearing due to force security reasons. The Tribunal President also found another four witnesses would provide relevant testimony but were not reasonably available and alternative means of producing the witness's testimony were not reasonably available. The detainee made a general request for unspecified documents from the Afghanistan Department of Ministry. The detainee, in his verbal statement, claimed that he was not fired from his position in Gardez but was actually promoted to another position in Kabul. The detainee also admitted to being a member of HeM during the Russian conflict but did not claim any current association. And the detainee denied any involvement in any attack against U.S. Forces instead stating that there were no hostile activities against U.S. Forces in Gardez during his 18 month tenure as the police force commander. The Tribunal President's evidentiary and witness rulings are explained below.

### 3. Evidence Considered by the Tribunal

The Tribunal considered the following evidence in reaching its conclusions:

    a. Exhibits: D-a through D-e and R-1 through R-20.

UNCLASSIFIED//~~FOUO~~

UNCLASSIFIED//~~FOUO~~

    b. Testimony of the following persons:
          Said Mohammed Ali Shah (Detainee #1154)
          Haji Mohammed Aktiar (Detainee #1036)
          Mohammed Aman (Detainee #1074)

    c. Sworn statement of the detainee.

    d. Written statement of the detainee.

## 4. Rulings by the Tribunal on Detainee Requests for Evidence or Witnesses

The Detainee requested the following witnesses be produced for the hearing:

| Witness | President's Decision | Testified? |
|---|---|---|
| 1. Said Mohammed Ali Shah (Detainee #1154) | Alternative means available (note 1) | yes |
| 2. Haji Mohammed Aktiar (Detainee #1036) | Alternative means available (note 1) | yes |
| 3. Mohammed Aman (Detainee #1074) | Alternative means available (note 1) | yes |
| 4. Mohammed Mousa | Redundant testimony | No (note 2) |
| 5. Shahzdeh Masoud | Not reasonably available | No (note 3) |
| 6. Gulltay Deh | Not reasonably available | No (note 3) |
| 7. Haji Saifullah | Not reasonably available | No (note 3) |
| 8. Ali Ahmed Jalali (note4) | Not reasonably available | No (note 3) |

Notes
1. The Tribunal President was informed that force protection considerations precluded witnesses 1 through 3 from testifying in person. The President then directed that an alternative form of testimony be considered. The Personal Representative (PR) then met with each witness and asked each if they wished to provide testimony. These witnesses agreed to provide testimony and the PR obtained their sworn responses to questions from the detainee. After reviewing these statements, the detainee requested the PR submit them to the Tribunal as Exhibits D-b, D-c, and D-d.

2. Another Tribunal President initially ruled the testimony from witnesses 1 through 4 would be relevant but that they were also be redundant. He approved 3 of the 4 of the witnesses. The Personal Representative coordinated with the detainee who selected 3 witnesses to request testimony. Prior to the Tribunal hearing, the presiding Tribunal President affirmed the previously assigned President's ruling. The detainee was informed of the ruling on the record. The detainee affirmed during the open session that the expected testimony from witness 4 was the same general testimony provided by witnesses 1, 2 and 3.

3. The Tribunal President explained to the detainee, on the record, he had determined these witnesses' testimony would be relevant, and asked the U.S. Government attempt to produce

UNCLASSIFIED//~~FOUO~~

UNCLASSIFIED//~~FOUO~~

them. The CSRT legal advisor then used standard CSRT procedures to request the U.S. Department of State attempt to contact these individuals through the Afghanistan Government. The Department of State subsequently informed the CSRT legal advisor that they had formally requested that government on or about 26 November 2004 to locate these individuals. That government did not respond to the request after a reasonable amount of time had elapsed. Therefore, lacking the cooperation of the foreign government, the Tribunal President was forced to find these witnesses not reasonably available. Also during the open session, the detainee described the expected testimony of these witnesses.

4. During the hearing, the name of witness 8 was provided by the detainee. Prior to the hearing, the witness had only been identified as the Minister of the Interior of Afghanistan. The President did not find this late identification to be a factor in the process of locating the witness.

The detainee requested no additional evidence be produced from the U.S. Government. However, the detainee requested documents from the Afghanistan Government.

| Evidence | President's Decision | Produced? |
|---|---|---|
| Unspecified papers related to detainee's assignments to police/security posts in Gardez and Kabul | Not reasonably available | No* |

* The request for documents from the Afghan Interior Ministry was made within the detainee's request for testimony from the Afghanistan Minister of the Interior. The detainee claimed the Minister could provide unspecified papers that would prove that the detainee was not "fired" from his position as a police force commander in Gardez, Afghanistan. The President ruled these documents were not reasonably available based on the Afghanistan Government's lack of cooperation in contacting the Interior Minister. Furthermore, the President noted that the request appeared to be untimely and not specific.

## 5. Discussion of Unclassified Evidence

The Tribunal considered the following unclassified evidence in making its determinations:

a. The recorder offered Exhibits R-1 into evidence during the unclassified portion of the proceeding. Exhibit R-1 is the Unclassified Summary of Evidence. While this summary is helpful in that it provides a broad outline of what the Tribunal can expect to see, it is not persuasive in that it provides conclusory statements without supporting unclassified evidence. Accordingly, the Tribunal had to look to classified exhibits (as well as the detainee's and his witnesses' statements) for support of the Unclassified Summary of Evidence.

b. Essentially the only unclassified evidence the Tribunal had to consider was the detainee's sworn testimony and the written witness testimony. A summarized transcript of the detainee's sworn testimony is attached as CSRT Decision Report Enclosure (3) and the written statements are provided within Enclosure (4). In sum, the detainee testified that he was not fired from his government position as the police force commander for the city of Gardez. The

UNCLASSIFIED//~~FOUO~~

UNCLASSIFIED//FOUO

detainee stated that he asked by the Afghan Minister of the Interior to assume the position of commander of security for Kabul which included responsibility for roads and highways. The detainee admitted he was a member of Harakat-e-Mulavi (HeM) for about 4 years during the time of the Soviet occupation but was not currently an active member. Finally the detainee stated that there were never any attacks against U.S forces in Gardez.

The Tribunal also relied on certain classified evidence in reaching its decision. A discussion of the classified evidence is found in Enclosure (2) to the Combatant Status Review Tribunal Decision Report.

## 6. Consultations with the CSRT Legal Advisor

The CSRT Assistant Legal Advisor was consulted regarding the witness issue discussed above.

## 7. Conclusions of the Tribunal

Upon careful review of all the evidence presented in this matter, the Tribunal makes the following determinations:

    a. The detainee was mentally and physically capable of participating in the proceeding. No medical or mental health evaluation was deemed necessary.

    b. The detainee understood the Tribunal proceedings. He indicated that he understood the proceedings, fully participated in his hearing, asked relevant questions, and provided helpful information during his sworn statement.

    c. The detainee is properly classified as an enemy combatant and is a member of, or affiliated with, al Qaida.

## 8. Dissenting Tribunal Member's Report

None. The Tribunal reached a unanimous decision.

Respectfully submitted,



, Colonel, USAF

Tribunal President

UNCLASSIFIED//FOUO

UNCLASSIFIED/FOUO

## Summarized Unsworn Detainee Statement

*The Tribunal President read the hearing instructions to the detainee. The detainee confirmed that he understood the process and had no questions.*

*The Recorder presented Exhibits R-1 into evidence and gave a brief description of the contents of the Unclassified Summary of Evidence (Exhibit R-1).*

*The Recorder confirmed that he had no further unclassified evidence or witnesses and requested a closed Tribunal session to present classified evidence.*

*Tribunal President stated that the detainee has requested eight witnesses.*

Tribunal President: Your Personal Representative has advised me that you had requested eight witnesses. Those witnesses, I'd like for you to confirm their identification at this time. The first was Said Mohammed Ali Shah, is that correct?

Detainee: Yes.

Tribunal President: The second was, Haji Mohammed Aktiar.

Detainee: Yes.

Tribunal President: The third was Mohammed Aman.

Detainee: Yes.

Tribunal President: The fourth is identified as Mohammed Musa.

Detainee: Yes.

Tribunal President: Other witnesses you also requested was, Shahzdeh Masoud, the Security Minister and advisor to Karzai. Okay, do you concur with that?

Detainee: Yes, Sir.

Tribunal President: Gulltay Deh, the representative of Defense Ministry, also from the city of Gardez.

Detainee: Haji Sufullah?

Tribunal President: That's later, the one I was trying to refer to was Gulltay Deh.

Detainee: Yes, the Defense Department?

Tribunal President: Yes. Also, Haji Saifullah?

UNCLASSIFIED/FOUO

UNCLASSIFIED/~~FOUO~~

Detainee: Yes.

Tribunal President: The fourth, the last, of the eight witness you requested was not by name, but the Minister of Interior, Interior Ministry, Office of Pzhanton?

Detainee: The Interior of Ministry.

Tribunal President: Right. The Minister of the Interior. You just wished whoever was holding that post, was that my understanding?

Detainee: My records are over there. If you want you can ask them for anything. They will give you any information about me.

Tribunal President: I'm a little confused with this last witness request. Was it a request for a person from that office, or just information about you at this office?

Detainee: They have my work history, you know. My files are in there; you guys need to contact them to get information from them. You can verify it from them.

Tribunal President: Then I understand that you were not asking for an individual, you were asking for, directing us, to documentations regarding you and your work history. Thank you.

Detainee: Yes, you can find that out from the Ministry.

Tribunal President: Okay, I understand that the last witness was not actually a witness, it was a direction for finding documentation and regarding that point, I will take that under advisement and if I believe that this tribunal would find that documentation useful, we could request it at a later date from, I believe the Afghanistan government, particularly, the city of Gardez.

Detainee: Yes.

Tribunal President: Just a moment, I'd like to confer with my panel member. (A brief pause) Thank you for your patience. Regarding that last point I'd like to formally note that at this time, I'm denying the request for documents for a number of reasons. First, the documents weren't specific, in terms of exactly what was requested and what they would provide us. And, another reason was that it's a little untimely notification to this panel. That denial is provided with the option for the tribunal to change that ruling at a later date if we find it necessary to have, for making a critical decision regarding your classification as an enemy combatant. Abdullah Mujahid, I appreciate you clarifying the information at this time and we will consider this information at a later time.

Detainee: Thank you very much.

Tribunal President: I need to address the other witnesses that you called, the seven other witnesses at this time. Of the seven witnesses, three were identified to be in Afghanistan. From

UNCLASSIFIED/~~FOUO~~

UNCLASSIFIED/~~FOUO~~

the information provided by the Personal Representative, I have determined that these witnesses would provide relevant testimony. I directed the United States government contact these individuals through the Afghanistan government. I was advised that the Afghan government was contacted on or about 26 November 2004. As of this date, the Afghanistan government has not responded to our request. This has been a reasonable amount of time for the foreign government to respond to our properly made request. Without the cooperation of that government, we are unable to contact those witnesses and to obtain the testimony you requested. Therefore, I make the ruling that I'm forced to find these witnesses are not reasonably available. And I would ask the Personal Representative to remind this Tribunal to ask the detainee to state what these witnesses would've provided if we had been able to contact them.

Personal Representative: Sir, do you want me to ask him, or do you...?

Tribunal President: Just at a later time. Make sure it's appropriate when we receive that information.

Personal Representative: Okay Sir.

Tribunal President: Of the remaining four called witnesses, I understood that all four would provide similar testimony and requested that the Personal Representative ask and get a prioritization of which ones would be preferred out of the four. I approved three of the four witnesses that will provide testimony today. Those witnesses' were Said Mohammed Ali Shah, Haji Mohammad Aktiar, and Mohammed Aman. Those three witnesses are in U.S. custody, but the responsible organization has informed me that these witnesses cannot attend this hearing due to Force Protection reasons. I requested an alternate form of testimony be considered. I understand that an alternate method was used for these witnesses' testimonies. Personal Representative, please inform the Tribunal of these witnesses testimony and describe how they were obtained.

Personal Representative: Yes, Sir. Upon notification of the approval of the three witnesses, I scheduled the interviews with each of them, initially on the 24th of November 2004. All three of the witnesses I met with. During those meeting I asked the following questions: If they knew Abdullah Mujahid, if they would wish to participate in his tribunal, and if they would be willing to take an oath, and swear on it. All three of them said affirmatively that they did want to participate, that they did know Abdullah and they did say that they would swear to tell the truth. I conducted a follow up in more detail interview with each of the detainees on the 16 December 2004, to obtain specific information to help Abdullah dispute the evidence against him. I had a follow up meeting after the interview with the witnesses. That follow up meeting was with Abdullah. We read in his language, each of the witness statements, gave him the opportunity to respond to each of those statements. He has approved that all three statements be submitted to this Tribunal today. Sir, just as a side note on the witness request for the Minister of Interior, the witness request was actually for the current position of the Minister of Interior. For clarification, the witness data worksheet stated that the Ministry of Interior could provide the documented papers as you previously mentioned. It also stated that the Minister of Interior attended his change of post ceremony when he left as the commander as police to go to be the chief of highways.

UNCLASSIFIED/~~FOUO~~

UNCLASSIFIED/FOUO

Detainee: Yes.

Personal Representative: The request also stated as he relayed to me that that Minister of Interior gave him an automobile for that new position.

Detainee: Yes.

Personal Representative: The minister can also explain that Abdullah was not fired from his appointed position due to suspicions of collusion with anti-government forces as indicated on the unclassified summary.

Detainee: Yes.

Personal Representative: Finally, as Abdullah had explained to me that that minister could also put light on the allegations that he had attacked U.S. Forces in the vicinity of Gardez and help to negate that piece of evidence. So, Sir, you were correct, it was both documentation and also the position that the witness could testify to this.

Tribunal President: (To the detainee) You did not have the name of that minister?

Detainee: Ali Ahmad Jalali.

Tribunal President: I have reviewed my notes and I did note that the United States Government did request the Afghan government help us contact the Minister of the Interior for the office, for the city of Gardez. So, there is still a proper request for that witness, but like I said before, we have no response from the Afghan government.

Detainee: Excuse me; the law in Afghanistan is like this. Just like how the system works here, like this Tribunal, it has a President, just over there too, everything is connected with the Ministry. The Minister has the authority to give out the information if asked.

Tribunal President: Thank you for that information.

Detainee: You're welcome.

Tribunal President: Abdullah Mujahid, you may now present any evidence you have to this Tribunal. Your Personal Representative may assist you if you wish. I understand that you wish to make a statement today, is that true?

Detainee: With your permission, I would like to speak a little about the allegations again.

Tribunal President: But first, I would like to ask you if you would like to make your statement under oath?

UNCLASSIFIED/FOUO

UNCLASSIFIED/~~FOUO~~

Detainee: It's up to you Sir; if you want me to take the oath I'll take the oath. If I have to, I'll do it.

Tribunal President: It is your choice as we gave you instructions before, it is not a requirement, and you may make your statement under oath or not under oath. An oath is a promise to tell the truth. We have a prepared Muslim oath if you would like to use that. It is your choice.

Detainee: Like I told you before, if you want me to take the oath, I'll take the oath, you know, what I'm telling you, what I'm telling you here is going to be the truth, and nothing but the truth and if you want me to, I'll take the oath.

Tribunal President: I understand that you have made your own personal oath to tell us the truth and that is fine with us. Please proceed.

Detainee: That's fine too, thank you very much.

*The Detainee did not take the Muslim oath, but made a personal oath instead.*

*The Personal Representative read the accusations to the detainee so that he could respond to the allegations. The allegations appear in italics, below.*

*3.a.  The detainee is associated with al Qaida.*

*3.a.1.  After the fall of the Taliban, the detainee served as police force commander in Gardez, Afghanistan.*
*3.a.2.  The detainee was fired from his appointed position due to suspicions of collusion with anti-government forces.*

Detainee:    After the fall of the Taliban government, we started an uprising against the Taliban. The things that we do are known to everybody in Paktia, which is a city in Afghanistan, and to the people. For a while, there wasn't a government present there. The people of that city elected (appointed) me as the one of the security officers. In Gardez, somebody by the name of Haji Pachakhan (ph) was trying to become the governor for three provinces. Paktia, Patika and Khost. He had a problem with the people's delegation. After a few arguments, they sent in a new government from Kabul, from the Karzai government. His name was Taj Mohammed Wareak. For a while, we didn't have a security commander there. I was just an officer. He appointed me to be the security commander for there. When I was hired, I served for about eighteen months as the security commander in Gardez.

I then got transferred from Gardez to Kabul. When I went to Kabul, the Interior of Ministry gave me a car as a gift of appreciation for accepting the new job. My title was Commander of the City of Kabul, including roads and highways. When I got transferred to Gardez, there were three delegations that came from the government. One of these people was Shahzdeh Masoud, and he's from the Karzai government. The representative from the Defense Department that came also was Gulltay Deh. And from the Interior of Ministry was Haji Saifullah. These people were present when the Interior of Ministry presented me with that car. For about fifty days, I was just

UNCLASSIFIED/~~FOUO~~

UNCLASSIFIED/FOUO

trying to gather my required paper work so I didn't work the position that was given to me. One of the government officials sent a couple of people and myself to Gardez to bring some people back, because the Interior of Ministry wanted to see them. When I went to Gardez, my cousin's wedding was going on, so I stayed there for four days. My plan was that after the wedding I would take the elderly people back to the city. I was at home in the morning, eating my breakfast, when someone asked about me. My father came in to inform me that there are some people there that want to speak to me. When I went outside, I saw one translator and three or four Americans. I greeted them, and invited them in to have tea. They said if tea is ready, we'll drink it right now, if not, then when we go over there we'd drink it then. Nobody else was with me, so I sat in the car alone with them. I never had any problem when I went to the camp before, so I thought I would just go and come back. When I went there, one of the Americans asked me if knew anyone by the name of Shireen, and the other one Ziaduian. Both of these people were in Gardez, one of them was a commander of the military post, the other one was also a commander on that post. I told them, that yes, they are there. They asked me what kind of people are they and I told them they are good people. I told them these people are good people and they asked for my watch, so I gave my watch to him. They told me if someone steals your watch, is that a good person? I told them that they personally have not stolen anything from me. While I was the Security commander in Gardez I did not hear anything about them. If they did something bad to somebody, maybe that person should come forward and make a complaint, because this has nothing to do with me. He told me that I wasn't telling the truth about these people, so you belong to Cuba. It appears that the decision was made to send me to Cuba already, before I even went there. I was working and helping with the Americans, I'm not al Qaida, I'm not a terrorist, I didn't do anything wrong, I did not hurt anybody, so I was surprised. Sorry I talk too much, I promise to keep my answers short as I can.

Tribunal President: We appreciate the statement and look forward to hearing more about the unclassified summary.

Personal Representative: Sir, for your information at the appropriate time, I will be submitting a written statement as a piece of evidence written by the detainee that specifically addresses each one of the points on the unclassified summary of evidence.

Tribunal President: Thank you.

*3.a.3. The detainee has been a member of Harakat-e-Mulavi for at least the last four years.*
*3.a.4. Harakat-e-Mulavi is an extremist group that is known to have ties with al Qaida and the Taliban.*

Detainee: When the Russians came to Afghanistan, I was about sixteen years old when I started a Jihad against them. I didn't know anybody, you know, like Mulavi or the other people with power. I only knew one person who was the leader of our group. His name was Abdul Sami. He was from Gardez and he was with the organization, group that I was with. There was a big age difference between Mulavi and I. I had no ties with him, I didn't know him, and I didn't speak or talk with him. After the fall of the communist regime, Majieullah, I had no ties or no contact with Mulavi. If he, his son, or any member of his family, had ties with al Qaida, that has nothing to do with me. After the fall of the Majieullah government, I did not have any ties with

UNCLASSIFIED/FOUO

UNCLASSIFIED/~~FOUO~~

them; I did not work for them. I had a small store, so I went back working at my store. I also did some police work as a low ranking police officer. When the Americans came to Afghanistan, I joined and we fought along side each other in Shaikote. There were hundreds of others and myself; we fought against this organization (a Muslim organization -inaudible) and against al Qaida.

*3.b. The detainee participated in military operations against the United States or its coalition partners.*
*3.b.1. The detainee was responsible for an attack on US Forces in the vicinity of Gardeyz City, Afghanistan. (Also spelled Gardez)*
*3.b.2. The detainee was responsible for this attack in retaliation for being fired.*

Detainee: There was never any fighting in Gardez against Americans. Like I said before, I was not fired, I was transferred. I got a better job. We did not fight with the Americans in Gardez, even al Qaida or Taliban did not fight with Americans in Gardez, for as long as I was there. If you want, you can find proof, you can ask some people if there has been any fighting in Gardez or not.

*3.b.3. The detainee was captured by U.S. Forces in July 2003.*

Tribunal President: (Referring to an earlier statement by the detainee addressing his capture by U.S. Forces) I think you already did, but, please continue.

Detainee: I would like to add something more to the prior question, and then I'll answer this one. I just wanted to state that I had very close ties with the American camp that was in Gardez, except, for that one person who interrogated me, who asked me questions, other than that, with everybody else, I had worked with them, we had a good relationship.

To answer the question, I was not caught in a mountain, and I was not caught in a battlefield. They came and asked me to go with them to ask me some questions. They wanted me to prove that some people were thieves. I did not see or hear anything so how could I say such a thing? Then, there was tension built up, and I raised my voice, and they raised their voice, and that's how we got in trouble. They sent me to Cuba. When the Taliban was in power in Afghanistan, most of the time, I had either fled from them, or they had arrested me. I was released because of the elders from the village. They promised the Taliban that I did have anything to do, you guys, that I'm not going to fight against you, or do this or that, and they put me under house arrest. I met with the American forces in Lowgar (ph). I invited them to come to Gardez, and I even rented the camp that they are in right now. I rented that camp for them. I helped. And, instead of appreciation, or thankfulness, they punish me, and I get sent to Cuba. I'm sorry if I talk too much, you know, from here on, it's your turn.

Tribunal President: Abdullah Mujahid, I appreciate your comments and does that conclude your statement at this time?

Detainee: Not right now. I don't have anything else to add.

UNCLASSIFIED/~~FOUO~~

UNCLASSIFIED/~~FOUO~~

Tribunal President: We will shortly be moving to a point where we will be asking questions. And, you are reminded that you don't have to answer if you wish, but it is your option to provide us answers and we would appreciate any information you can give us.

Detainee: If I can answer the questions, I'll answer.

*The Personal Representative at this time provides the Tribunal President with unclassified exhibits D-b, D-c, D-d, and D-e. Exhibit D-b is the detainee's written statement, and the last three exhibits are the witnesses written statements. The Tribunal President states that there will be a brief pause so that the Tribunal team can review these exhibits. Before the pause the detainee makes the following statement.*

Detainee: I just want to make sure [of] one thing. Mulavi, it has been fourteen years since his death. He died fourteen years ago.

Tribunal President: Oh, the leader of that organization. Thank you for that information.

*Tribunal panel reviews written statements.*

Personal Representative: Thank you for your patience in letting us review those documents.

Detainee: You're welcome.

Tribunal President: Personal Representative, will you please assist us in reviewing the testimony, or possible testimony of the people who could not attend today. Starting with Mohammed Musa. If the detainee could tell us what he would've expected Mohammed Musa to have told us if he was here today. What do you think he would testify too?

Interpreter: Let me clarify the question for him.... I don't think he understood it.

Tribunal President: Let me do that, please. I understand that Mohammed Musa would've provided the same general testimony as the other three witnesses whose testimonies we just read. Items I believe were, that they knew him, that he wasn't against the U.S., and if the Personal Representative can remind me what else...

Personal Representative: It said that he was the commander of the Police force, not prior to the transfer or promotion.

Detainee: He can testify that I was against al Qaida, I wasn't with al Qaida or that I was fighting with al Qaida and that I was transferred, not fired from my position. He can testify to all of those.

Tribunal President: Okay, thank you. I'd like to review the other three, or four, witnesses that were from Afghanistan that were not able to attend today. I believe you mentioned that they were all part of your ceremony, where you received a car as a reward for assuming the position in Kabul. Is that what they would provide? I want to confirm that.

UNCLASSIFIED/~~FOUO~~

UNCLASSIFIED/~~FOUO~~

Detainee: Yes, they can testify about the promotion that I got, they were present for that promotion. My replacement in Gardez, he was present at that meeting. The Interior of Ministry told me that when you accept this job, by the time you accept this job, the road between Kabul and Kandahar will be paved, and you will have the security of this road.

Tribunal President: Thank you, I just wanted to review what they would provide us.

Detainee: Thank you.

Tribunal President: Personal Representative, do you have any questions for the detainee?

Personal Representative: Just a couple Sir. I've been reviewing the notes from our subsequent meetings that we had, and in our follow up meeting, on 18 November 2004, you had stated to me, made comments about the communists and the communists making false allegations against you. In that those wrong reports, is what brought you here to Cuba.

Detainee: Yes, that is true.

Personal Representative: Is there anything additional you would like to tell the Tribunal regarding this?

Detainee: When the communists were in power, the Mujadeen were fighting against them. They were trying to, after the fall of the communist regime, sell some of the communists' possessions. The government, they were doing some kind of work that they were doing before. Now they have a personal vendetta against the Mujadeen who used to fight against them. Also, the other problem is that the people in Afghanistan, some of the people in Afghanistan are narrow-minded. They don't want to see some people succeed in life. The position that I had, that was one of the reasons that had gotten me in trouble. Since I got that position, there were a lot of people who didn't want me to have that position.

Personal Representative: When you were captured in July 2003, what was your position at that time?

Detainee: I was Security Commander for the cities and roads of Afghanistan.

Personal Representative: In Kabul?

Detainee: Yeah, yeah, at the Interior of Ministry in Kabul.

Personal Representative: So, you were still holding your current job, the job that you were promoted too when you were captured?

Detainee: I was in the process of transferring, and that's why I went to Gardez to bring some people from the city of Gardez to the Interior of Ministry.

UNCLASSIFIED/~~FOUO~~

UNCLASSIFIED/FOUO

Personal Representative: This transfer, from Gardez, Chief of Police, to Kabul, that was in July 2003?

Detainee: When I got captured, I was transferred about one month and twenty days prior to that.

Personal Representative: Okay, and the last question I have for you is you had told me in an interview that you were with Harakat-e-Mulavi, you were sixteen or seventeen years old.

Detainee: Yes, I was sixteen years old; I was in the seventh grade in school.

Personal Representative: How old was he?

Detainee: An old man, grey hair.

Personal Representative: Lastly, you told me that you hated that organization. Were you ever a member of it?

Detainee: Now I hate them, because they did a lot of bad things to Afghanistan. They sold everything to Pakistan, they even sold school equipment, trees, whatever they could find. This was years, years after that, so many years after when they were fighting. Most of the people in Afghanistan are illiterate, they can't read or write, because of these people. They continue the war, and people don't have a chance to go to school to get an education.

Personal Representative: Thank you. I've reviewed the content of our session notes, and we have covered everything that we discussed in those two meetings.

*The Personal Representative and the Recorder had no further questions.*

Tribunal Members' questions

Q. Could you go back and answer the question of were you ever a member of the Harakat-e-Mulavi organization?
A. During the Jihad, against the Russians, I was with a small group, which was called the Abdul Sammed's group. That group belonged to the Mulavi. But, I personally was not with the Harakat-e-Mulavi.

Q. Have you been to any of their meetings in the past four years?
A. Just the four years that I mentioned, the four years that I was in Jihad with them. No, I did not attend any meetings because of my age. I was so young, and they were much older, and I wasn't allowed to go to the meetings. After, when I get out, I grew a beard and I have no ties with them.

Q. Can you tell me some of the names of the communist conspirators who possibly turned you in?
A. I don't have any exact or specific names but I can think of one name that's Aktar Gul. He was working for the security organization/agency. He could be one of the people. I can't

UNCLASSIFIED/FOUO

UNCLASSIFIED/FOUO

think of anybody else, you know, because there were other organizations but I don't have any problem with them and they didn't have any problem with me.

Q. During the time of the Taliban what was your employment?
A. In the beginning, for a couple months I was in jail, they arrested me. Then I was running away from them, I was in Kabul, but I was running away from the Taliban. This was at the beginning of the Banez (ph) government. After the fall of the Banez (ph) government, I went to Pakistan for twenty or thirty days. When I came back to Afghanistan, I was arrested, and one of the elders, my uncle, vouched for me that I would not do anything from then on. No ties with any other organization or anything like that, I would just stay home.

Q. What did you do to make money?
A. I was living with my family and we have a few acres of land and also we have a couple of shops. We were buying and selling goods. I wasn't working, but everybody else was working, that's how we were supported. I'm not tired of the life I have here, but I was tired of my life back there.

Q. When the Taliban fled Gardez, you were appointed head of security, was that head of security for Gardez, or the Paktia province?
A. First, the city of Gardez and for the Paktia province too. There was a meeting in Germany, prior to choosing the new government for Afghanistan, Pachakhan was there and also another person was there, Momen, and, they offered him the job.

Q. When you were in charge of security of Gardez, whom did you report to?
A. I was reporting to someone named Haji Saifullah.

Q. When you became in charge of security for Paktia province, whom did you report to?
A. Same person, Haji Saifullah.

Q. What was General Aziah Oden's role in this?
A. He was a commander for a military base.

Q. Where?
A. In Gardez.

Q. Mohammed Aman, did he work for you?
A. No, he wasn't working for me, he was working with the military department.

Q. Did he work for General Oden?
A. Yes, he was working for Atculah Lewdon (ph), he was the commander of the military post.

Q. When you went to Kabul, whom did you report to?
A. That would be the Afghanistan Interior of Ministry department. I was answering to them.

Q. Was there a particular person then?
A. They have different department heads in that agency. I don't have a specific name.

UNCLASSIFIED/FOUO

UNCLASSIFIED/~~FOUO~~

Q. Lastly, who replaced you as head of security in Gardez?
A. I was transferred by the Interior Minister, himself.

Q. Right, but who took over for you as head of security for Gardez?
A. Ayagul (ph) was my replacement.

Q. A few questions from me. A follow up to a previous board's question regarding what kind of transition you had with your replacement in Gardez.
A. I didn't know him; I knew he was a one time prior commander of security of Gardez, and Igebulistan/Nygebulistan (ph). I only saw him at the transferring. When I left, he came. I saw him at that time and then another time I saw him. The last time, he came to my house. We needed to talk about a few things, work related things that he told me. He said he would come to my house for dinner and we can talk about it then.

Q. Last question, hopefully an easy one. How old are you now?
A. I was thirty-two when I got arrested, now, it's been about a year and half or two years, so, maybe, you can figure out the rest.

Tribunal President: Thank you. Abdullah Mujahid, do you have any other evidence to present to this tribunal?

Detainee: No, I have said and presented all the things that I have. But, if you want, I can bring the whole city of Gardez here as a witness. My Personal Representative advised me that I have enough witnesses. Otherwise, I could've brought a hundred or two hundred witnesses.

Tribunal President: I appreciate those comments, especially from the Personal Representative. We have received very helpful information, and we thank you for that.

Detainee: Thank you.

*The Tribunal President confirms that the detainee had no further evidence or witnesses to present to the Tribunal. The Tribunal President explains the remainder of the Tribunal process to the detainee and adjourns the Tribunal.*

## AUTHENTICATION

I certify the material contained in this transcript is a true and accurate summary of the testimony given during the proceedings.



, Colonel, USAF
Tribunal President

# DETAINEE ELECTION FORM

**Date:** 15 November 2004

**Start Time:** 0915 hrs

**End Time:** 1015 hrs

ISN#: 1100

**Personal Representative:** ▉▉▉▉▉▉▉▉▉ MAJOR, USAF
(Name/Rank)

**Translator Required?** YES          **Language?** PERSIAN

**CSRT Procedure Read to Detainee or Written Copy Read by Detainee?** YES

## Detainee Election:

[X] **Wants to Participate in Tribunal**

[ ] **Affirmatively Declines to Participate in Tribunal**

[ ] **Uncooperative or Unresponsive**

## Personal Representative Comments:

Detainee desires to participate in the Tribunal. Detainee requests 4 detainee witnesses and 4 of non-detainee witnesses from Afghanistan. Detainee requested that he be given the opportunity to address each of the items of evidence via written statement. He will also provide the witness contact information. The detainee and I agreed that we will hold a follow-up interview in approximately 2 days time. Upon receipt of his written statement, PR will submit the witness relevancy request to the Tribunal President.

Personal Representative: ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

IN-CAMP WITNESS REQUSTS (THOS IN BOLD WERE APPROVED)
1. **SAID MOHAMMED ALI SHAH (Dr.) - ISN 1154DP**
2. **HAJI MOHAMMED AKTIAR - ISN 1036DP**
3. **MOHAMMED AMAN - ISN 1074DP**
4. MOHAMMED MOUSA (PR unable to find this or similar variant)

Exhibit D-a

UNCLASSIFIED//FOUO

## DETAINEE ELECTION FORM

### Approved Out-of-camp Witness Requests for ISN 1100

SHAHZDEH MASOUD
Security Ministry (Advisor for
Karzai)
City of Gardez, Afghanistan

GULLTAY DEH
Representative of Defense
Ministry
City of Gardez, Afghanistan

HAJI SAIFULLAH
Representative of Interior
Ministry
City of Gardez, Afghanistan

(Governor of Wardak Province)

Minister of Interior
Interior Ministry
Office of Pzhanton
City of Gardez, Afghanistan

UNCLASSIFIED

**Combatant Status Review Board**

TO: Personal Representative

FROM: OIC, CSRT (15 October 2004)

Subject: Summary of Evidence for Combatant Status Review Tribunal – MUJAHID, Abdullah.

1. Under the provisions of the Secretary of the Navy Memorandum, dated 29 July 2004, *Implementation of Combatant Status Review Tribunal Procedures for Enemy Combatants Detained at Guantanamo Bay Naval Base Cuba*, a Tribunal has been appointed to review the detainee's designation as an enemy combatant.

2. An enemy combatant has been defined as "an individual who was part of or supporting the Taliban or al Qaida forces, or associated forces that are engaged in hostilities against the United States or its coalition partners. This includes any person who committed a belligerent act or has directly supported hostilities in aid of enemy armed forces."

3. The United States Government has previously determined that the detainee is an enemy combatant. This determination is based on information possessed by the United States that indicates the detainee is associated with al Qaida and engaged in hostilities against the United States or its coalition partners:

   a. The detainee is associated with al Qaida:

      1. After the fall of the Taliban, the detainee served as a police force commander in Gardez, Afghanistan.

      2. The detainee was fired from his appointed position due to suspicions of collusion with anti-government forces.

      3. The detainee has been a member of Harakat-e-Mulavi for at least the last four years.

      4. Harakat-e-Mulavi is an extremist group that is known to have ties with al Qaida and the Taliban.

   b. The detainee participated in military operations against the United States or its coalition partners.

      1. The detainee was responsible for an attack on US Forces in the vicinity of Gardeyz City, Afghanistan.

      2. The detainee was responsible for this attack in retaliation for being fired.

      3. The detainee was captured by U.S. forces in July 2003.

4. The detainee has the opportunity to contest his designation as an enemy combatant. The Tribunal will endeavor to arrange for the presence of any reasonably available witnesses or evidence that the detainee desires to call or introduce to prove that he is not an enemy combatant. The Tribunal President will determine the reasonable availability of evidence or witnesses.

Exhibit _R 1_

UNCLASSIFIED

_1 of 1_

*ISN 1100*
*WRITTEN STATEMENT*

1. Actually after the fall of the Taliban government.  I was one of the first who attacked the Taliban and Al-Qaida in the city of Gardez, finally they abandoned the city and escaped.  The control of Paktia Province fell in hands of elected council of deferent tribes.  The elected council appointed me as security director and later, based on my excellent service in the establishment of security of the area, executive council recommended me as security commander.  Upon the completion of legal procedures through the chief of internal ministry, I got the conformation of a promotion from the governor of Paktia.  I have all the documents to prove the above statement.

2. It's well known to everyone that I was elected by the tribe leaders and appointed by the interim government of Afghanistan.  I haven't been terminated but transferred to higher positions.  You can ask our internal ministry about it.

3. During the communist regime until the victory of Mujahedeen approximately for 4 years I have lived in the area called Zurmat.  Which was under the control of Gardezi Movement and Abdul samay was the head of that movement and they were connected to the Mowlowi.  In that time I was too young and didn't have any connection with that group, and Mowlowi was killed in the first year of Mujahedeens's power.  Personally I have nothing to do with these groups, or any anti U.N., anti current government groups.  I hate them.

4. Mowlowi relations with Al-Qaida or Taliban have nothing to do with me.  I hate them and actually myself and hundred of others fought against them in areas of Sharri Kot.  I have always fought against them.

5. I never been engaged in any anti U.S. hostilities infact I always served and helped U.S. forces against the oppositions.

6. There never been any anti coalition attacks in the city of Gardez.  I have been involved in establishment of security in deferent locations while maintaining very friendly relationships with the responsible campaign Authorities in Gardez.  They were showing their satisfaction and appreciations to me all the times.  You can inquire about this matter from the authorities of that time.

7. I never had any desire for revenge against U.S., U.N. forces or current government forces in Afghanistan nor I had any problems with them.  I haven't been removed or terminated from my positions; in fact I was legally transferred and got promoted to a higher position in Kabul.  I don't have any animosity against any body.  This all was the result of conspiracy from some communist, who had very intensive activities in our city and unfortunately they have achieved their goals and based on their falls statement I ended up here.  You have noticed my cooperation and hopefully I have earned your trust during my detention.  I so far have good memories from all the interrogators and M.P.'s

Exhibit  *D-b*

WITNESS STATEMENTS
FOR
ABDULLAH MUJAHID – (ISN 1100)

WITNESS: MOHAMMED AMAN
WITNESS ISN:  1074 (FARSI)
DATE OF WITNESS INTERVIEWS:  24 Nov 04 and 1⅝/Dec 04
TODAY'S DATE:  14 Dec 04
PR:  097

NOTE:  Comments from the 24 Nov witness statement were made with the
understanding that this detainee would be physically present at ISN 1100's tribunal.
However, a 13 Dec 04 Joint Detainee Operations Group (JDOG) policy now forbids
cross-camp witnesses between Camps 1, 2, and 3 with those detainees from Camp 4.  As
a result, PR 97 requested that he re-interview the witness in order to obtain more details
since now only a written statement would be allowed at the tribunal.  The second
interview was conducted on 14 Dec 04.

WITNESS INTERVIEW NOTES FROM 24 NOV 04:

On 24 Nov 04 ISN 1074 stated that he knew Abdullah Mujahid (ISN 1100) and
affirmatively elected to participate in ISN 1100's tribunal.  He understood that the PR,
Recorder, and Tribunal members could ask him questions and expressed a willingness to
accept questions and tell the truth.  ISN 1074 stated that he knew ISN 1100 for 12 or 13
years and that is occupation was Head of Security in the province of Paktia Afghanistan
(AF).

WITNESS INTERVIEW NOTES FROM 1⅝/DEC 04:

ISN 1074 stated that he was from the Village of Malek Khil, Afghanistan (AF) which is
about 20 minutes by foot from ISN 1154's village of Karmoshi.  He knows ISN 1154 as
the son of Haji Hassan (Abdullah Mujahid's father) and has known him for 12 or 13
years, attending funerals, weddings and other events between different villages.  ISN
1074 worked for the Defense Department and ISN 1100 was the Chief of Police, both of
which fall under the Ministry of Interior.

ISN 1074 said that ISN 1100 was brought to Cuba because he started the first fight
against the Taliban.  There was an American operation in Sharrikot and ISN 1100 was
helping the Americans.  ISN 1074 continued by saying that the problem in AF is that
those who do good things get punished.  Because he was fighting against al Qaida those
near him were jealous because he (ISN 1100) was doing good things and might easily be
promoted to a higher rank.

ISN 1074 said that he (1074) was not a political person and had no political purposes.  He
was a clerk and had no ties with any party.  He didn't like fighting, but only went to

Witness Statement of ISN 1074 to Support ISN 1100's Tribunal
1 of 3

Exhibit  D-C  p 10/1

school and just worked. He was a simple person but people back in AF plotted a conspiracy because they don't like some people who were to succeed. He stated that he was an ally of the Americans and hopeful that America will actually stay so Afghanies could get used to culture.

ISN 1074 was a low-ranking clerk doing office work while ISN 1100 was a high ranking Police Chief who had little contact with ISN 1100 with the exception of knowing him because of the proximity of their villages, seeing one another at events and often times at the bazaar. ISN 1074 was brought to Cuba approximately 1 to 2 months before ISN 1100.

When asked what ISN 1074 did when the Taliban was in power, he stated that he was an office worker doing paperwork in a personnel office. He was forced by Taliban to work for them when they came to power. The (Taliban) asked ISN 1074 to work for them but he refused. The Taliban wanted ISN 1074 to work in security then in a law agency— both times ISN 1074 refused, as he was just a clerk and the work was not related to his field. He said that he would work in the Interior Ministry as a clerk. He said that it was a very small place and that there was no fighting in Gardez—all the fighting was North of AF. His job was to keep track of military people (e.g., promotion letters, transfer requests, etc.) His salary was the equivalent of approximately $20.00 (US dollars)/month. He said the Taliban had much money, power, cars, and did not obey the rules.

When asked if ISN 1074 and 1100 had the opportunity to see one another in their work, ISN 1074 sated that he did not see ISN 1100 for work-related areas. ISN 1100's brother had a shop at a bazaar and they would sometimes see one another in that location. ISN 1074 also said that ISN 1100 was arrested once or twice while the Taliban was in power but released because village elders vouched for him.

When asked if ISN 1074 knew if ISN 1100 was a member of any organizations, he replied that ISN 1100 was a part of the "Gardez Group" which fought against the Russians. The Group's leader was killed and the group was taken over by the deceased leader's son, Samay. All this took place when the communist were in power.

When asked if ISN 1074 knew if ISN 1100 ever got fired as CMDR of police, he replied, "no, he got transferred, not fired." When asked when ISN 1074 knew about the transfer, he stated that he knew of the transfer while they were in Afghanistan and that ISN 1074 was arrested from his home about 5 – 7 days after ISN 1100's transfer to Kabul.

ISN 1074 said that he and others (including ISN 1100) where brought here on false reports and that people should not be falsely arrested. The false report should first be looked into to see if the report is truthful. He said that he was saddened.

He concluded by saying that he is happy the Americans are rebuilding his country. He worked for 1.5 years for the government and never got paid; hopefully, the Americans will stay with our Army.

1 of 2

Lastly, he is 100% certain he and ISN 1100 were brought to Cuba based on false reports.

1063

WITNESS STATEMENTS
FOR
ABDULLAH MUJAHID – (ISN 1100)

WITNESS: SAID MOHAMMED ALI SHAH (DR.)
WITNESS ISN: 1154 (PERSIAN)
DATE OF WITNESS INTERVIEWS: 24 Nov 04 and 15 Dec 04
TODAY'S DATE: 14 Dec 04
PR: 097

NOTE: Comments from the 24 Nov witness statement were made with the understanding that this detainee would be physically present at ISN 1100's tribunal. However, a 13 Dec 04 Joint Detainee Operations Group (JDOG) policy now forbids cross-camp witnesses between Camps 1, 2, and 3 with those detainees from Camp 4. As a result, PR 97 requested that he re-interview the witness in order to obtain more details since now only a written statement would be allowed at the tribunal. The second interview was conducted on 14 Dec 04.

WITNESS INTERVIEW NOTES FROM 24 NOV 04:

On 24 Nov 04 ISN 1154 stated that he knew Abdullah Mujahid (ISN 1100) and affirmatively elected to participate in ISN 1100's tribunal. He understood that the PR, Recorder, and Tribunal members could ask him questions and expressed a willingness to accept questions and tell the truth. ISN 1154 stated that he knew ISN 1100 for nearly 15 years and that is occupation was in security in the province of Paktia Afghanistan (AF).

WITNESS INTERVIEW NOTES FROM 14 DEC 04:

Regarding ISN 1154's relationship with Abdullah Mujahid (ISN 1100), 1154 stated that they had a big difference in age. When they got to fighting the Mujahadeed during the Jihad against the Russians 1154 did not know 1100 very well because 1100 was a much lower rank and did not have much of an important job, but he knew of him.

When 1154 was asked about his work and circumstances of capture he said he was a Peoples Representative of the City of Gardez (capital city of the Province of Pakita) working for the Karzai government; he was attending the National Assembly at the time of his capture (ref: 1154). Regarding the reasons behind their capture, he expressed that there was a conspiracy involving people from the current government. He went on to highlight three aspects of the conspiracy:
1) **Afghanie communists**: 1154 stated that the communists in the AF government were working for the Soviets and did not want the new government to succeed, but Karzai took control, and the communist wanted revenge. Because the communists were working in AF intelligence agencies and had previously worked with the KGB, they had experience with report writing and access to other

organizations and could make others look bad. Additionally they knew the key points to what the coalition was looking for.

2) **Ethnic animosity**. The dominant language in the City of Gardez and the province of Paktia is Pashtu. There are 14 villages in the city of Gardez, 12 of which are Pashtu; the other two Farci. Likewise, the predominant language in the Province of Paktia is Pashtu. According to ISN 1154 he is from one of the two Farci villages, Khwaja Hassam and ISN 1100 is from the second Farci village, Karhoshi. ISN 1100 went on further to say that the animosity was also caused by the firing of then Governor Pachakhan by the Karzai government. Pachakhan was governor of three provinces: Paktia, Khost, Paktika. He was fired by Karzai and began to retaliate against the new government but the people of Gardez supported the new government and fought against Pachakhan and his people. Pachakhan met with ISN 1154 at the National Assembly, saying to ISN 1154 that he (Pachakhan) had two enemies which were the people from the two Farci villages (Khwaja Hassam and Karhoshi—the two villages where ISN 1100 and 1154 lived)

3) **Envy** of ISN 1100: ISN 1100 was helping the Karzai government fight against terrorist organizations such as al Qaida and Taliban, thieves, warlords, and drug dealers. ISN 1100 was young, strong, and a good fighter. Because of this there was prejudice against him. When 1100 later became a high ranking leader (CMDR of Police) others were prejudiced and didn't accept him since he was outranked during the Russian Jihad, but now ISN 1100 was in charge. The conspirators wanted to get 1100 out of Gardez and got him to be transferred to Kabul. Additionally, Governor Pachakhan was replaced by Taj Mohammed Wardak and Mr. Wardak later became the Minister of Interior and gave support to ISN 1100 because ISN 1100 kept peace in Gardez (little problems). After a new Minister took over from Wardak, there were many changes in the AF government. After ISN 1100 was given his new position in Kabul, a new CMDR of Police was appointed, a Pashtu communist. When asked, ISN 1154 stated that the Karzai government had openly invited all other factions (communists, Taliban, others) to join the Karzai government so long as they supported the new government.

ISN 1154 went on to say that ISN 1100 was an excellent security officer and brought peace to the area; by taking him it was a loss for the coalition forces.

PR FOLLOW-ON INTERVIEW QUESTIONS

Q: When Taliban was in control, what were you (ISN 1154) doing?
A: Paraphrased: When the Russians invaded AF, ISN 1154 went to Iran where he studied to become a doctor—he came back to AF several times as a Mujahadeen fighter. After the Mujahadeen took control from the Russians, ISN 1154 went back to Iran; he considers himself a refugee for some 25 years, since 1980.

Q: How were you elected to the National Assembly when you were a refugee for some 25 years?

D-d 2of 3

A: Paraphrased: ISN 1154 defended AF for 13 or 14 years against communist governments and kept in contact with his home village; plus he was well known and educated.

D-d 3of3

WITNESS STATEMENTS
FOR
ABDULLAH MUJAHID – (ISN 1100)

WITNESS: HAJI MOHAMMED AKITAR (PASHTU)
WITNESS ISN: 1036
DATE OF WITNESS INTERVIEWS: 24 Nov 04 and 14 Dec 04
TODAY'S DATE: 14 Dec 04
PR: 097

NOTE: Comments from the 24 Nov witness statement were made with the understanding that this detainee would be physically present at ISN 1100's tribunal. However, a 13 Dec 04 Joint Detainee Operations Group (JDOG) policy now forbids cross-camp witnesses between Camps 1, 2, and 3 with those detainees from Camp 4. As a result, PR 97 requested that he re-interview the witness in order to obtain more details since now only a written statement would be allowed at the tribunal. The second interview was conducted on 14 Dec 04.

WITNESS INTERVIEW NOTES FROM 24 NOV 04:

On 24 Nov 04 ISN 1036 stated that he knew Abdullah Mujahid (ISN 1100) and affirmatively elected to participate in ISN 1100's tribunal. He understood that the PR, Recorder, and Tribunal members could ask him questions and expressed a willingness to accept questions and tell the truth. ISN 1036 stated that he knew ISN 1100 for approximately 10 years and that his occupation was CMDR of Police in Paktia Afghanistan (AF). He said that ISN 1100 was not a member of any organization (e.g., al Qaida or Taliban), but only hired by the Karzai government. Her further said that when the Taliban took over, both he and ISN 1100 ran away together from the Taliban and that ISN 1100 was the first to fight against al Qaida. On two separate occasions, ISN 1036 had asked ISN 1100 for a job.

WITNESS INTERVIEW NOTES FROM 14 DEC 04:

ISN 1036 said that ISN 1100 was a good CMDR who maintained the peace in the Pakita province.

When asked if he knew if ISN 1100 was a member of Taliban or al Qaida, he stated, "no, both of us ran from the Taliban." ISN 1036 stated that when the Taliban captured Kabul ISN 1100 returned to Paktia and he (ISN 1036) returned to Pakistan (where he lived). He said the Taliban arrested ISN 1100, put him in jail, but did not know for how long. ISN 1036 was surprised that ISN 1100 was arrested because it was the Americans and Karzai government that gave him his position as CMDR of Police, then a better position in Kabul when he was put in charge of AF highways. After ISN 1100's transfer to Kabul, five communists were given positions in Paktia (to include the CMDR of Police). Apparently, he—the new CMDR of Police—was a friend Dotsdum. ISN 1036 said that

Exhibit D-E p. 1062

others in power told lies about 1100 and 1036 because there were lots of communists who made false allegations on them and others because in the past both 1100 and 1036 fought against the communists.

ISN 1036 said he was a high-ranking military officer with the Rabanni government prior to the Taliban. After the Taliban defeat, ISN 1036 returned to Paktia to join the new government; however, the district of Sayed Karem was still controlled by the Taliban and its followers. ISN 1036 was arrested and put in prison for one month; he was released because of pressures from Tribunal Chiefs. Prior to his release, he had to sign a statement that he would not accept any positions for 9 months, due to false charges made against him. After 9 months, ISN 1036 took a position as a General of a military unit supporting Karzai. He said that he (ISN 1036), Dr Said Mohammed Ali Shah (ISN 1154), and Abdullah Majahid (ISN 1100) were considered threats to the communists in the government who were holding a 25-year grudge and, as such, the communists made false charges against them.

D-E p 2of 2

UNCLASSIFIED//~~FOUO~~

## Personal Representative Review of the Record of Proceedings

I acknowledge that on  December 2004 I was provided the opportunity to review the record of proceedings for the Combatant Status Review Tribunal involving ISN #1100.

_____ have no comments.

_____ My comments are attached.



_____, Major, USAF

_21 DEC 04_
Date

ISN #1100
Enclosure (5)

UNCLASSIFIED//~~FOUO~~