IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MOHAMED RAHIM, )
)
)
Petitioner, )
)
v. ) Civil Action No. 05-2367 (RWR)
)
GEORGE W. BUSH, et al., )
)
Respondents. )
)

## DECLARATION OF DAVID N. COOPER

Pursuant to 28 U.S.C. § 1746, I, Lieutenant Colonel David N. Cooper, Judge Advocate General's Corps, United States Air Force Reserve, hereby state that to the best of my knowledge, information, and belief, the following is true, accurate and correct:

1. I am the Legal Advisor to the Office for the Administrative Review of the Detention of Enemy Combatants at U.S. Naval Base Guantanamo Bay, Cuba (OARDEC). In that capacity I am an advisor to the Director, Combatant Status Review Tribunals.

2. I hereby certify that the documents attached hereto constitute a true and accurate copy of the portions of the record of proceedings before the Combatant Status Review Tribunal related to petitioner Mohamed Rahim that are suitable for public release. The portions of the record that are classified or considered law enforcement sensitive are not attached hereto or were redacted by an OARDEC staff member. This staff member also redacted information that would personally identify certain U.S. Government personnel in order to protect the personal privacy and security of those individuals.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: 10 August 2006

David N. Cooper
Lt Col, JAG Corps, USAFR



# Department of Defense
### Director, Combatant Status Review Tribunals

OARDEC/Ser: 782

27 JAN 2005

FOR OFFICIAL USE ONLY

From: Director, Combatant Status Review Tribunal

Subj: **REVIEW OF COMBATANT STATUS REVIEW TRIBUNAL FOR DETAINEE ISN #1104**

Ref: (a) Deputy Secretary of Defense Order of 7 July 2004
(b) Secretary of the Navy Order of 29 July 2004

1. I concur in the decision of the Combatant Status Review Tribunal that Detainee ISN #1104 meets the criteria for designation as an Enemy Combatant, in accordance with references (a) and (b).

2. This case is now considered final and the detainee will be scheduled for an Administrative Review Board.

J. M. McGARRAH
RADM, CEC, USN

Distribution:
NSC (Mr. John Bellinger)
DoS (Ambassador Prosper)
DASD-DA
JCS (J5)
SOUTHCOM (CoS)
COMJTFGTMO
OARDEC (Fwd)
CITF Ft Belvoir

FOR OFFICIAL USE ONLY

UNCLASSIFIED

22 Jan 05

MEMORANDUM

From: Assistant Legal Advisor
To:   Director, Combatant Status Review Tribunal
Via:  Legal Advisor

Subj: LEGAL SUFFICIENCY REVIEW OF COMBATANT STATUS REVIEW TRIBUNAL FOR DETAINEE ISN #1104

Ref:  (a) Deputy Secretary of Defense Order of 7 July 2004
      (b) Secretary of the Navy Implementation Directive of 29 July 2004

Encl: (1) Appointing Order for Tribunal #19 of 4 Nov 2004
      (2) Record of Tribunal Proceedings

1. Legal sufficiency review has been completed on the subject Combatant Status Review Tribunal in accordance with references (a) and (b). After reviewing the record of the Tribunal, I find that:

   a. The detainee was properly notified of the Tribunal process and originally elected to participate in the CSRT. However, one hour prior to the Tribunal proceeding, the detainee voluntarily elected not to participate. *See* Exhibit D-a. *See also* Enclosure (1) to Encl. (2), p. 2. The detainee affirmatively declined to attend the Tribunal, and declined to personally provide a statement. The detainee did request that his personal representative provide detainee's unsworn statement to the CSRT on the detainee's behalf, and the personal representative did so. *See* Enclosure (3) to Encl. (2).

   b. The Tribunal was properly convened and constituted by enclosure (1).

   c. The Tribunal substantially complied with all provisions of references (a) and (b).

   d. Exhibits R-2 through R-4, R-18 and R-24 contain handwritten notes in the margins. These notes appear to be aids in directing the Tribunal to the source of information contained in the Unclassified Summary provided to the detainee. These notes do not alter the evidence, nor do they affect the legal sufficiency of the evidence.

   e. The detainee did not request that any documentary evidence be produced, but did request that four witnesses, including three from his home village in Afghanistan, be called to testify on his behalf. The Tribunal deemed relevant the proffered testimony of Mohammad Ibrahim, whom the detainee stated worked at the same company that bought and transported goods, which would support the detainee's case. The CSRT determined that the witness was relevant, and forwarded a request to produce the witness to Afghanistan through the U.S. Department of State. However, the Afghani government

UNCLASSIFIED

Subj:  LEGAL SUFFICIENCY REVIEW OF COMBATANT STATUS REVIEW TRIBUNAL FOR DETAINEE ISN #1104

failed to respond to the initial request of 9 Nov 04, and to the two follow-up requests of 22 and 30 November 04, to produce the requested witness. Consequently, the CSRT determined that the witness was not reasonably available, and determined that no reasonably available substitute for his testimony was available either. *See* Enclosure (1) to Encl. (2), p. 3. This determination was proper.

The detainee proffered that the remaining three witnesses could attest to the fact that they live in the same village as the detainee, and each know him well; and, they will support detainee's testimony that he was a farmer, and will describe the work he did for the company who employed him. *See* Enclosure (1) to Encl. (2), pp. 2-4. The CSRT determined that the proffered testimony would not be relevant to the determination of whether the detainee was an enemy combatant, and even if the witnesses were called, they could not testify regarding "the detainee's conduct/or involvement with the Taliban." Therefore, these witnesses were not called to testify. This evidentiary ruling was proper as well.

Specifically, references (a) and (b) clearly provide that the Tribunal has the discretion to determine what evidence it deems relevant, that it is "not bound by the rules of evidence such as would apply in a court of law," and that it "may consider any information it deems relevant and helpful to a resolution of the issues before it." As a corollary, the converse must be true that the Tribunal may refuse to consider any evidence it does not deem "relevant and helpful" to their determination.

Here, it appears from a clear review of the record that the Tribunal considered the proffered testimony of each witness, and determined that, even if the witnesses had been called and their testimonies true, the CSRT would have reached the same determination that the detainee was an enemy combatant because the preponderance of the evidence supports the Tribunal's determination. Therefore, the Tribunal's ruling did not appear to prejudice the detainee

f. The Tribunal's decision that detainee #1104 is properly classified as an enemy combatant was unanimous.

g. The detainee's Personal Representative was given the opportunity to review the record of proceedings, and declined to submit post-tribunal comments to the Tribunal.

2. The proceedings and decision of the Tribunal are legally sufficient and no corrective action is required.

3. I recommend that the decision of the Tribunal be approved and the case be considered final.

KAREN M. GIBBS
CDR, JAGC, USNR



Department of Defense
Director, Combatant Status Review Tribunals

4 Nov 04

From: Director, Combatant Status Review Tribunals

Subj: APPOINTMENT OF COMBATANT STATUS REVIEW TRIBUNAL #19

Ref: (a) Convening Authority Appointment Letter of 9 July 2004

By the authority given to me in reference (a), a Combatant Status Review Tribunal established by "Implementation of Combatant Status Review Tribunal Procedures for Enemy Combatants Detained at Guantanamo Bay Naval Base, Cuba" dated 29 July 2004 is hereby convened. It shall hear such cases as shall be brought before it without further action of referral or otherwise.

The following commissioned officers shall serve as members of the Tribunal:

**MEMBERS**:

███████████████; Colonel, U.S. Army; President

███████████████; Commander, U.S. Navy; Member

███████████████; Major, JAGC, U.S. Army Reserve; Member
(JAG)

J. M. McGARRAH
Rear Admiral
Civil Engineer Corps
United States Navy



**HEADQUARTERS, OARDEC FORWARD**
GUANTANAMO BAY, CUBA
APO AE 09360

27 December 2004

MEMORANDUM FOR DIRECTOR, CSRT

FROM: OARDEC FORWARD Commander ICO ISN 1104

1. Pursuant to Enclosure (1), paragraph (I)(5) of the *Implementation of Combatant Status Review Tribunal Procedures for Enemy Combatants Detained at Guantanamo Bay Naval Base, Cuba* dated 29 July 2004, I am forwarding the Combatant Status Review Tribunal Decision Report for the above mentioned ISN for review and action.

2. If there are any questions regarding this package, point of contact on this matter is the undersigned at DSN ███.

CHARLES E. JAMISON
CAPT, USN

SECRET//NOFORN//X1

### (U) Combatant Status Review Tribunal Decision Report Cover Sheet

(U) This Document is UNCLASSIFIED Upon Removal of Enclosures (2) and (4).

(U) TRIBUNAL PANEL: ___#19___

(U) ISN#: ___1104___

Ref:  (a) (U) Convening Order for Tribunal #19 of 4 November 2004 (U)
      (b) (U) CSRT Implementation Directive of 29 July 2004 (U)
      (c) (U) DEPSECDEF Memo of 7 July 2004 (U)

Encl: (1) (U) Unclassified Summary of Basis for Tribunal Decision (U/FOUO)
      (2) (U) Classified Summary of Basis for Tribunal Decision (S/NF)
      (3) (U) Summary of Detainee/Witness Testimony (U/FOUO)
      (4) (U) Copies of Documentary Evidence Presented (S/NF)
      (5) (U) Personal Representative's Record Review (U/FOUO)

1. (U) This Tribunal was convened on 2 December 2004 by references (a) and (b) to make a determination as to whether the Detainee meets the criteria to be designated as an enemy combatant, as defined in reference (c).

2. (U) On 2 December 2004 the Tribunal determined, by a preponderance of the evidence, that Detainee #1104 is properly designated as an enemy combatant as defined in reference (c).

3. (U) In particular, the Tribunal finds that this Detainee is a part of, or supporting the Taliban, as more fully discussed in the enclosures.

4. (U) Enclosure (1) provides an unclassified account of the basis for the Tribunal's decision. A detailed account of the evidence considered by the Tribunal and its findings of fact are contained in enclosures (1) and (2).



Colonel, U.S. Army
Tribunal President

DERV FM: Multiple Sources      SECRET//NOFORN//X1
DECLASS: X1

UNCLASSIFIED//~~FOUO~~

# UNCLASSIFIED SUMMARY OF BASIS FOR TRIBUNAL DECISION

(Enclosure (1) to Combatant Status Review Tribunal Decision Report)

TRIBUNAL PANEL: #19
ISN #: 1104

## 1. Introduction

As the Combatant Status Review Tribunal (CSRT) Decision Report indicates, the Tribunal has determined that this Detainee is properly classified as an enemy combatant and is a member of, or supporting, the Taliban forces that were engaged in hostilities against the U.S. or its coalition partners. In reaching its conclusions, the Tribunal considered both classified and unclassified information. The following is an account of the unclassified evidence considered by the Tribunal and other pertinent information. Classified evidence considered by the Tribunal is discussed in Enclosure (2) to the CSRT Decision Report.

## 2. Synopsis of Proceedings

The unclassified evidence presented to the Tribunal by the Recorder indicated that the Detainee is a member of the Taliban. The Detainee was the chief of logistics for a company providing support directly to the Taliban government. The Detainee worked for the Taliban Intelligence Office. The Detainee controlled a large weapons cache, including 122mm rockets, 122mm artillery rounds, and 140mm rockets.

Originally, the Detainee chose to participate in the Tribunal process. However, just prior to the Tribunal he told the Personal Representative that he was ill and therefore would not participate. He requested four witnesses and requested no documents be produced. The Tribunal President found three witnesses to be not relevant to the Detainee's case, and one witness not reasonably available, and that alternative means of producing the witness's testimony were also not reasonably available. The Tribunal President's evidentiary and witness rulings, to include the Detainee's absence, are explained below.

## 3. Evidence Considered by the Tribunal

The Tribunal considered the following evidence in reaching its conclusions:

    a. Exhibits: D-a and R-1 through R-25.

    b. Testimony of the following persons: None.

    c. Statement of the Detainee: The Tribunal considered a statement presented by the Personal Representative on behalf of the Detainee.

### 4. Rulings by the Tribunal on Detainee Requests for Evidence or Witnesses

a. Moments prior to the start of proceedings, the Personal Representative informed the Tribunal that the Detainee had just stated that he was "not feeling well", and therefore would not participate in the Tribunal. The Detainee explained to the Personal Representative that the Personal Representative could represent him before the Tribunal. The Detainee complained of hurt and/or discomfort in the following areas: 1) his head; 2) one of his eyes; 3) one of his ears; and, 4) his stomach. The Detainee first mentioned this alleged physical discomfort when the Personal Representative told him that his approved witness, Mohammad Ibrahim, was not reasonably available. See paragraph (4)(b) for further discussion concerning this witness. According to the Personal Representative, when the Detainee spoke, he "was animated and used energy". Additionally, the Detainee sat upward in his chair while actively conversing with the Personal Representative, which included coherent responses to specific questions. In fact, the Personal Representative even "had trouble getting him (the Detainee) to quit talking". On a prior occasion (30 October 2004), the Detainee had made similar complaints of physical discomfort to the Personal Representative. Based upon the totality of these facts and circumstances, the Tribunal President determined that the Detainee had knowingly declined to participate in the Tribunal. As a precautionary measure, the Tribunal President instructed the Personal Representative to later communicate with the appropriate medical personnel as to whether the Detainee would have been able to participate in the proceedings. If a qualified medical provider would opine that the Detainee had been unable to participate in the proceedings because of his alleged physical discomfort; then, the Tribunal President would later decide whether to reopen the unclassified portion of the proceedings to allow him to participate. The Tribunal then proceeded in absentia.

During a recess in the proceedings, the Personal Representative contacted the Senior Medical Officer over Detainee Operations. This physician told the Personal Representative that the Detainee had no chronic condition that would preclude his attendance at the Tribunal. This expert opinion was based upon a review of the Detainee's medical records, which included a report from a 10 November 2004 examination.

b. The Detainee requested four witnesses to be produced for the hearing:

| Witness | President's Decision | Testified? |
|---|---|---|
| Pir Mohammad | not relevant | no* |
| Dawlat Khan | not relevant | no* |
| Mohammad Wali | not relevant | no* |
| Mohammad Ibrahim | not reasonably available | no** |

* The Detainee requested the production of three witnesses from his home village of Safari Khail in Afghanistan. The Detainee proffered that each proposed witness would

testify, if called, that he lives in the same village as the Detainee and knows him well. The Detainee further proffered that each would testify that the Detainee was a farmer and regarding what he did for the company that he worked for. The Tribunal President found that the testimony was not relevant. Even it true, such testimony has no bearing on the statements contained in the Unclassified Summary of evidence and cannot provide any useful information regarding the Detainee's alleged actions as an enemy combatant. At best, such testimony is in the nature of character evidence, which is not relevant to one's actions as an enemy combatant. Even if the witnesses know the Detainee well, they cannot speak to the Detainee's conduct and/or involvement with the Taliban.

** The Tribunal President deemed that the Detainee's request for this witness was relevant to the Detainee's status as an enemy combatant. The Department of State was contacted on 9 November, with follow-up attempts made on 22 November and 30 November. As of 2 December 2004, the Department of State had received no response from Afghanistan as to the status of this witness request. Therefore, the Tribunal President made the determination that based on the attempt to contact and lack of response; the witness was not reasonably available.

The Detainee requested no additional evidence be produced.

### 5. Discussion of Unclassified Evidence

The Tribunal considered the following unclassified evidence in making its determinations:

    a. The recorder offered Exhibits R-1 and R-2 into evidence during the unclassified portion of the proceeding. Exhibit R-1 is the Unclassified Summary of Evidence. While this summary is helpful in that it provides a broad outline of what the Tribunal can expect to see, it is not persuasive in that it provides conclusory statements without supporting unclassified evidence. Exhibit R-2 provided no usable evidence. Accordingly, the Tribunal had to look to classified exhibits for support of the Unclassified Summary of Evidence.

    b. Essentially the only unclassified evidence the Tribunal had to consider was the Detainee's statement as presented by the personal representative. In sum, the Personal Representative explained that the Detainee stated the following: He worked for a company that bought and transported goods, which he sold to the Taliban Government. The Detainee first said that he would work for a few months in this capacity before he went back to farming and then back again to the Taliban connected position. The Detainee later said that he was drafted by the Taliban Government to work in this position, which he did consecutively for a 2-3 year time period. He was an innocent poor man. He was scared and did not want to fight. He knew nothing about intelligence. The allegation concerning a large weapons cache did not make sense. He had no information

on these weapons. He was uneducated. He did not go to school. He was not a liar. He did not know how to lie.

The Tribunal also relied on certain classified evidence in reaching its decision. A discussion of the classified evidence is found in Enclosure (2) to the Combatant Status Review Tribunal Decision Report.

### 6. Consultations with the CSRT Legal Advisor

No issues arose during the course of this hearing that required consultation with the CSRT legal advisor.

### 7. Conclusions of the Tribunal

Upon careful review of all the evidence presented in this matter, the Tribunal makes the following determinations:

    a. The Detainee was mentally and physically capable of participating in the proceeding. No medical or mental health evaluation was deemed necessary.

    b. The Detainee understood the Tribunal proceedings. The Detainee chose not to participate in the Tribunal process, as indicated in Exhibit D-a. For further information concerning his lack of participation, see paragraph (4)(a) of this Unclassified Summary.

    c. The Detainee is properly classified as an enemy combatant and is a member of, or affiliated with, the Taliban and was part of or supporting associated forces engaged in hostilities with the U.S. or its coalition partners.

### 8. Dissenting Tribunal Member's report

None.

Respectfully submitted,

[signature redacted]

Colonel, U.S. Army
Tribunal President

UNCLASSIFIED/~~FOUO~~

### Summarized Unsworn Personal Representative Statement with absent Detainee

*Personal Representative states Detainee declined to participate in Tribunal proceedings.*

*Personal Representative states the Detainee was advised of his right to be present during all open sessions of the hearing; advised of his right to make a statement; under oath or unsworn; advised of his right to representation by a Personal Representative; advised of his right to provide evidence and present witnesses on his behalf; and advised of his right to examine and review all unclassified evidence/documents. Personal Representative stated the Detainee indicated he did understand the Tribunal process.*

*The Personal Representative submits the Detainee Election form D-A.*

*The Recorder presented Exhibits R-1 into evidence and gave a brief description of the contents of the Unclassified Summary of Evidence (Exhibit R-1).*

*The Recorder confirmed that he had no further unclassified evidence or witnesses and requested a closed Tribunal session to present classified evidence.*

*President was convinced Detainee was aware of his rights and had an understanding of the Tribunal process. President announced Tribunal hearing would proceed without the presence of the Detainee.*

Tribunal President: Originally the detainee requested three witnesses. Basically they were from his home village in Afghanistan. The detainee offered that the proposed witnesses would testify that he lived in the village and they knew him well. If that is true, it is in the nature of a character witness; so deemed that is not relevant. My understanding is you went back to and told him that decision and he asked for another witness named Mohammed Ibrahim to testify for him. We did deem that the testimony would be relevant to his case on the points of the unclassified summary and we forwarded that to the Department of State on the 9th of November. The Department of State did follow up attempts to try to contact his country on the 22nd and the 30th of November. As of this date, the Department of State has not received any response as to the status to this witness request, therefore the Tribunal President made the determination that based on the attempt of contact and the lack of response, the witness is not reasonably available. Should that testimony become available at a later date, as a tribunal we will decide if we should reopen his case or not.

*The Personal Representative read the accusations and followed each allegation up with a response from the detainee at a previous meeting. The allegations appear in italics, below.*

*3.1. The detainee was the chief of logistics for a company providing support directly to the Taliban government.*

Detainee Statement: This is false; I did work for a company that transported goods like groceries, toothbrushes and daily use items. I would buy them at a bizarre at a low price and take them back to a store. It is a government store. It sells the products to the government employees at a lower price then what they can get it at a local market. This company had two stores. The company had workers that worked for the old government, and maybe some of them drove for the Taliban, but I don't know.

Personal Representative: He told me that his stores did not sell clothes, shoes or weapons. He didn't know or remember how long he worked for them. He said he would work for a month, and then he would go back to Kabul where he lived. So he would go work at the store for a month then go home and work on the farm for a month. He told me this morning that he did this for about 2-3 years. He also told me how it came to be that he worked for the company. He said the Taliban came and took him out of his house and drafted him. They wanted him to go to the battlefield to fight. The district officer of Taliban took him to Ghazni province where he spent the night. In the morning they took him by bus with about 15 other people to Kabul. In Kabul, the military division of Taliban took everybody but him to fight because he was sick. So they put him to work for some division of the government. He told me about how the Taliban used 2% of the workers salary to buy goods from the market to supply the government's store where he worked. He would get a list of goods to buy, like soap, and then transport them back to the store. This morning he told me when he went back home that he was a farmer and he had land and a garden where he grew wheat, corn, barley and apricots.

*3.2. The detainee worked for the Taliban Intelligence Office.*

Detainee Statement: This is false; I am a very innocent poor man. I don't know why they put these allegations on me. I was scared and didn't want to fight when the Taliban came for me. If I didn't work for the company, they would have sent me to fight. I don't know anything about the Taliban intelligence office. This is outrageous; I am innocent.

*3.3. The detainee controlled a large weapons cache including 122MM rockets, 122MM Artillery rounds, and 140MM rockets.*

Detainee Statement: This doesn't make sense; I was captured in my house. I have no information on these weapons.

Personal Representative: I then asked him is there anything that he wants to add onto your statement.

Detainee Statement: I am uneducated, I didn't go to school and I told you the truth. I worked two to three years for the company every other month. I am not a liar; I don't know how to lie. I trust my Personal Representative.

Personal Representative: I did tell him I am not a liar; I am not his enemy, or his friend. I will just tell you what he told me. That is what I have done here today.

UNCLASSIFIED/~~FOUO~~

*The Personal Representative had nothing further on the behalf of the detainee for this unclassified session of the tribunal.*

*The Tribunal President concludes the open tribunal session.*

## AUTHENTICATION

I certify the material contained in this transcript is a true and accurate summary of the testimony given during the proceedings.

Colonel, United States Army
Tribunal President

UNCLASSIFIED//FOUO

# DETAINEE ELECTION FORM

Date: 30 Oct 2004
Start Time: 1245
End Time: 1325

ISN#: 1104

Personal Representative: ███████, MAJOR, USAF
(Name/Rank)

Translator Required? YES      Language? PASHTO

CSRT Procedure Read to Detainee or Written Copy Read by Detainee? YES

**Detainee Election:**

[X]  Wants to Participate in Tribunal

[ ]  Affirmatively Declines to Participate in Tribunal

[ ]  Uncooperative or Unresponsive

**Personal Representative Comments:**

Detainee wants to participate and make an oral statement.
Detainee requests one off-island witness.
Witness worked at same company as detainee (responds to allegation 3.1 in unclassified summary).
Detainee did not request any documentary evidence.

Note: When I met with 1104 at the final interview (1 Hr prior to his Tribunal) detainee decided not to participate. This was just after I told him that his witness was ruled not reasonably available. 3 Dec 04

Personal Representative: ███████

UNCLASSIFIED//FOUO

Exhibit D-a

UNCLASSIFIED

**Combatant Status Review Board**

TO: Tribunal Members

FROM: OIC, CSRT (12 October 2004)

Subject: Summary of Evidence for Combatant Status Review Tribunal – RAHIM, Mohamed.

1. Under the provisions of the Secretary of the Navy Memorandum, dated 29 July 2004, *Implementation of Combatant Status Review Tribunal Procedures for Enemy Combatants Detained at Guantanamo Bay Naval Base Cuba*, a Tribunal has been appointed to review the detainee's designation as an enemy combatant.

2. An enemy combatant has been defined as "an individual who was part of or supporting the Taliban or al Qaida forces, or associated forces that are engaged in hostilities against the United States or its coalition partners. This includes any person who committed a belligerent act or has directly supported hostilities in aid of enemy armed forces."

3. The United States Government has previously determined that the detainee is an enemy combatant. This determination is based on information possessed by the United States that indicates that he is a member of the Taliban.

   The detainee is a member of the Taliban:

   1. The detainee was the chief of logistics for a company providing support directly to the Taliban government.

   2. The detainee worked for the Taliban Intelligence Office.

   3. The detainee controlled a large weapons cache, including 122mm rockets, 122mm artillery rounds, and 140mm rockets.

4. The detainee has the opportunity to contest his designation as an enemy combatant. The Tribunal will endeavor to arrange for the presence of any reasonably available witnesses or evidence that the detainee desires to call or introduce to prove that he is not an enemy combatant. The Tribunal President will determine the reasonable availability of evidence or witnesses.

UNCLASSIFIED

Exhibit R-1

## Personal Representative Review of the Record of Proceedings

I acknowledge that on __6__ December 2004 I was provided the opportunity to review the record of proceedings for the Combatant Status Review Tribunal involving ISN #1104.

__✓__ I have no comments.

____ My comments are attached.

Major ████████, USAF
Name

Signature

6 Dec 2004
Date

ISN #1104
Enclosure (5)